IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

In re:                        :   Chapter 11

                                  :

MILLENNIUM LAB HOLDINGS II, LLC, <u>et al.</u>,   :   Case No. 15-12284 (___)

                                  :

             Debtors.[1]         :   Joint Administration Pending

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 363, 502, 503, AND 507, FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014 AND DEL. BANKR. L.R. 4001-2 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION CREDIT PARTIES; (III) ALLOWING SUBROGATION CLAIM AND GRANTING SUBROGATION CLAIM LIEN; (IV) SCHEDULING A FINAL HEARING; <u>AND (V) GRANTING RELATED RELIEF</u>**

         The debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"), hereby move (the "<u>Motion</u>") this Court for entry of an interim order (the "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>"), pursuant to sections 105, 361, 363, 502, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>") (i) authorizing the Debtors to use cash collateral, (ii) granting adequate protection to the Prepetition Credit Parties (as defined below), (iii) allowing subrogation claim of Debtors' prepetition equity holders and granting superpriority lien to secure the same; (iv) scheduling a final hearing (the "<u>Final Hearing</u>") for approval of the Final Order,

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Millennium Lab Holdings II, LLC (5299); Millennium Health, LLC (5558); and RxAnte, LLC (0219). The Debtors' address is 16981 Via Tazon, San Diego, California, 92127.

and (v) granting related relief. In support of this Motion, the Debtors rely upon and incorporate

by reference the Declaration of William Brock Hardaway in Support of the Debtors' Chapter 11

Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently

herewith. In further support of this Motion, the Debtors, by and through their proposed

undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion

in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 105, 361, 363, 502,

503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and

Local Bankruptcy Rule 4001-2.

3.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of

a final judgment or order with respect to this Motion if it is determined that this Court would lack

Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

**A.      The Chapter 11 Cases and the Debtors' Business**

4.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by

filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11

Cases").

5.      The Debtors continue to manage and operate their business as debtors in

possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      The Debtors' business is focused on utilizing the science of toxicology and pharmacogenetics to assist healthcare professionals with identifying and managing patient utilization of prescription and non-prescription drugs.  The Debtors offer a suite of innovative, industry-leading solutions including urine drug testing, pharmacogenetic testing, and predictive analytics, which together provide customers with an end-to-end, personalized solution for improving medication use.

8.      Contemporaneous with the commencement of the Chapter 11 Cases, the Debtors filed their joint prepackaged plan of reorganization (the "Plan"). The Plan provides for payment of the Debtors' obligations under their settlement agreements with the United States of America as well as a financial restructuring that will significantly reduce the Debtors' funded indebtedness and place the Debtors in a stronger financial position for the future. The Plan has been overwhelmingly accepted by the single impaired class that is entitled to vote with approximately 99% of the outstanding claims voting and more than 93% of those claims who voted voting in favor. Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, their capital raising and restructuring activities and the events leading to the Debtors' decision to file the Chapter 11 Cases, is set forth in detail in the First Day Declaration.[2]

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**B.**     **The Debtors' Prepetition Secured Debt**

9.      As detailed in the First Day Declaration, the Debtors' prepetition funded debt consists of two facilities: (a) a secured credit facility issued in April 2014 in the original principal amount of $1.825 billion (the "2014 Credit Facility") and (b) a priming, first-lien credit facility in the principal amount of $50 million executed on November 9, 2015 to certain Prepetition Lenders in connection with the Debtors' prepetition solicitation (the "Early Commitment Facility" and, together with the 2014 Credit Facility, the "Prepetition Credit Facilities").

*(i)*      *The 2014 Credit Facility*

10.     As part of the April 2014 recapitalization transactions described in the First Day Declaration, the Debtors entered into the 2014 Credit Facility, consisting of a $1.775 billion term loan and a $50 million revolving credit facility. The revolving credit facility commitments were terminated in June 2015, leaving only the term loan outstanding. As of the Petition Date, the outstanding principal balance of the 2014 Credit Facility was approximately $1.753 billion (together with all accrued interest, fees, and other amounts due and payable thereunder, other than the Prior Agent Indemnity Claims, the "2014 Credit Agreement Claims").

11.     The 2014 Credit Facility is governed by that certain Credit Agreement among Millennium Lab Holdings II, LLC, Millennium Laboratories, LLC, as borrower, the several lenders from time to time party thereto (the "2014 Credit Facility Lenders"), and Wilmington Savings Fund Society, FSB, as successor administrative agent (the "2014 Credit Facility Agent" and together with the 2014 Credit Facility Lenders, the "2014 Credit Parties"), dated as of April 16, 2014 (the "2014 Credit Agreement"), as amended by that certain Consent and First Amendment to Credit Agreement dated as of November 9, 2015.

12.     To secure the 2014 Credit Agreement Claims, the Debtors entered into that certain Guarantee and Collateral Agreement made by Millennium Lab Holdings II, LLC,

4

Millennium Laboratories, LLC, and certain of its subsidiaries in favor of the 2014 Credit Facility Agent, dated as of April 16, 2014 (the "2014 Security Agreement"). Pursuant to the 2014 Security Agreement, the Debtors granted security interests (the "2014 Credit Facility Liens") in substantially all of their assets (the "Collateral") to the 2014 Credit Parties. The Collateral includes cash that is property of the Debtors and that constitutes "cash collateral" as defined by section 363(a) of the Bankruptcy, including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of any Collateral that is property of the Debtors (the "Cash Collateral").

### *(ii)     The Early Commitment Facility*

13.     To encourage the 2014 Credit Facility Lenders to promptly consent to the Out-of-Court Transaction and accept the Plan, the Debtors agreed in the RSA to lenders who promptly consented to the Out-of-Court Transaction and voted to accept the Plan their pro rata share of a $50 million Early Commitment Facility. Specifically, the Early Commitment Facility was available to any 2014 Credit Facility Lender that (a) consented to the Out-of-Court Transaction, including the Out-of-Court Releases, (b) voted to accept the Plan, and (c) consented to the Existing Credit Agreement Amendments (the "Early Commitment Lenders") by November 6, 2015 (, the "Early Commitment Deadline").[3] To effectuate the Early Commitment Facility, the Company solicited consents to an amendment to the 2014 Credit Agreement (the "Solicitation Amendment") to (x) allow the Debtors to enter into the Early Commitment Facility and (y) subordinate the 2014 Credit Facility Liens to the liens securing the Early Commitment Facility.

---

[3]     The Debtors originally established November 5 as the Early Commitment Deadline but subsequently extended the deadline to November 6.

Sufficient 2014 Credit Facility Lenders consented to the Solicitation Amendment to effectuate the Early Commitment Facility.

14.    Thus, on November 9, 2015, the Debtors entered into that certain Credit Agreement (the "Early Commitment Credit Agreement") among Millennium Lab Holdings II, LLC, Millennium Health, LLC, as borrower, the Early Commitment Lenders, and Wilmington Savings Fund Society, FSB, as administrative agent (the "Early Commitment Agent" and, together with the Early Commitment Lenders, the "Early Commitment Credit Parties"),[4] dated as of November 9 2015. The terms of the Early Commitment Credit Agreement are substantially similar to those of the 2014 Credit Agreement, including with respect to interest, prepayment rights, and covenants, except to the extent changes are necessary due to the nature of the obligations under the Early Commitment Facility. As of the Petition Date, the Early Commitment Facility had an outstanding principal balance of $50 million (together with any and all accrued interest, fees, and other amounts due and payable thereunder, the "Early Commitment Facility Claims").

15.    The Early Commitment Facility Claims are secured by liens on the Collateral (the "Early Commitment Liens" and, together with the 2014 Credit Facility Liens, the "Prepetition Liens") granted pursuant to that certain Guarantee and Collateral Agreement made by Millennium Lab Holdings II, LLC, Millennium Health, LLC, and certain of its subsidiaries in favor of the Early Commitment Facility Agent, dated as of November 9, 2015 (the "Early Commitment Security Agreement").

*(iii)*    ***The Subordination Agreement***

---

[4]    The 2014 Credit Parties and the Early Commitment Credit Parties are collectively referred to herein as the "Prepetition Credit Parties".

16.     As noted above, sufficient 2014 Credit Facility Lenders agreed during the Debtors' prepetition solicitation to subordinate the 2014 Credit Facility Liens to the Early Commitment Liens. To effectuate the subordination of the 2014 Credit Facility Liens, the 2014 Credit Facility Agent and the Early Commitment Agent (together, the "<u>Prepetition Agents</u>") entered into that certain Subordination Agreement date November 9, 2015 (the "<u>Subordination Agreement</u>"). The Subordination Agreement provides that the 2014 Credit Facility Liens rank junior in all respects to the Early Commitment Liens.

**C.     The Subrogation Claims**

17.     On October 16, 2015, the Debtors entered into the USA Settlement Agreements to resolve pending billing and administrative issues between the USA Settlement Parties and the Debtors. Upon execution of the definitive documentation, the Debtors paid a $50 million Initial USA Settlement Deposit to the USA Settlement Parties. As required by the USA Settlement Agreements and the RSA, TA, and MLH severally guaranteed the Initial USA Settlement Deposit pursuant to a Guarantee Agreement dated as of October 16, 2015 (the "<u>Guarantee Agreement</u>"). The USA Settlement Parties insisted on this guarantee out of concern that Millennium's payment of the Initial USA Settlement Deposit might be avoided or disgorged in bankruptcy.

18.     The RSA provides that MLH and TA will have a subrogation claim (the "<u>Subrogation Claim</u>") against the Debtors for the full amount, if any, actually paid under the Guarantee Agreement. Under the RSA, the Subrogation Claim will be treated as follows: First, the Subrogation Claim will be an allowed claim against the Debtors in these Chapter 11 Cases.

Second, the Consenting Lenders[5] will, severally and not jointly, assign to MLH and TA a portion of any cash distribution the Consenting Lenders receive from the Debtors' estates equal to 50% of any amounts paid by MLH and TA under the Guarantee Agreement, not to exceed $25 million in the aggregate. Third, the Subrogation Claim will be secured by a superpriority lien (the "Subrogation Claim Lien") on the proceeds of any avoidance action recoveries from the United States, up to the lesser of $25 million or 50% of the Subrogation Claim. The RSA requires that the Debtors file a motion on the Petition Date to allow the Subrogation Claim and approve the Subrogation Claim Lien.

## RELIEF REQUESTED

19.    By this Motion, the Debtors request entry of an Interim Order (attached as **Exhibit A** hereto) and a Final Order (in the form to be filed in advance of the Final Hearing) pursuant to Bankruptcy Code sections 105, 361, 363, 502, 502, 503, and 507, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Bankruptcy Rule 4001-2 (a) authorizing the Debtors to use Cash Collateral; (b) providing adequate protection to the Prepetition Credit Parties; (c) allowing the Subrogation Claim and granting the Subrogation Claim Lien in favor of MLH and TA; (d) scheduling a Final Hearing; and (e) granting related relief.

20.    Summarized below are the essential terms of the proposed Interim Order, with references to the applicable sections of the relevant documents, in accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2.

| **Entities with Interest in the Cash Collateral** *Bankruptcy Rule* | The Prepetition Credit Parties *Interim Order ¶ 4(f)* |
|---|---|

---

[5]    The Consenting Lenders are those 2014 Credit Facility Lenders who approved the Out-of-Court Transaction and Out-of-Court Releases and voted to accept the Plan.

| | |
|---|---|
| *4001(b)(1)(B)(i)* | |
| **Use of Cash Collateral**<br>*Bankruptcy Rule*<br>*4001(b)(1)(B)(ii)*<br>*Local Bankruptcy Rule*<br>*4001-2(a)(ii)* | The Cash Collateral shall be used for working capital, general corporate purposes, and administrative costs and expenses of the Debtors.<br><br>*Interim Order ¶ 6* |
| **Material Terms and Duration of Use of Cash Collateral**<br>*Bankruptcy Rule*<br>*4001(b)(1)(B)(iii)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | Subject to the terms and conditions of the Interim Order, the Debtors' right to use the Cash Collateral shall automatically terminate (the date of any such termination, the "<u>Termination Date</u>") without further notice or court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (i) below (such events, collectively, the "<u>Termination Events</u>"). As used herein, "<u>Required Lenders</u>" means, as of any date of determination, lenders constituting "Required Lenders" pursuant to, and as defined in, each of the Prepetition Credit Agreements.<br><br>(a)    thirty-five (35) days after entry of the Interim Order if no Final Order has been entered on or before such date;<br><br>(b)    December 30, 2015 (unless extended with the written consent of the Required Lenders, which extension thereof shall be effective without further application to or approval by the Court);<br><br>(c)    (i) any of the Chapter 11 Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in any of the Chapter 11 Cases, or (ii) the Debtors seek entry of an order accomplishing any of the foregoing;<br><br>(d)    (i) other than the Interim Order and the Final Order, an order is entered granting another claim or lien *pari passu* with or senior to the Adequate Protection Liens or Adequate Protection Claims (each as defined below) granted to the Prepetition Credit Parties under the Interim Order or (ii) an order of the Court is entered reversing, staying for a period in |

|  | | excess of five business days, vacating or otherwise amending, supplementing, or modifying the Interim Order in a manner materially adverse to the Prepetition Credit Parties, in each case without the written consent of the Required Lenders; |
|  | (e) | (i) any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenge to Adequate Protection Liens or Adequate Protection Claims or (y) any relief under section 506(c) of the Bankruptcy Code with respect to any Collateral, including the Cash Collateral; (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Credit Parties; or (iii) any party-in-interest files or commences any motion, pleading, or proceeding described in clauses (i) or (ii) above and the Court enters a final order granting the relief requested in such motion, pleading, or proceeding; |
|  | (f) | any "Material Adverse Event" as defined in the RSA and listed on Exhibit 3 thereto occurs and continues for five business days following notice thereof from the Prepetition Agents to the Debtors; |
|  | (g) | the Debtors undertake any action set forth on Annex E to the "Restructuring Term Sheet" attached to the RSA without the consent of the Ad Hoc Group being delivered in accordance with such Annex E; |
|  | (h) | the RSA terminates, other than by a termination caused by the breach or non-performance of any Prepetition Credit Party of its obligations thereunder; |
|  | (i) | the later of (i) the effective date of any confirmed chapter 11 plan for the Debtors or (ii) the date the Restructuring Transactions (as defined in the Plan) are consummated; or |

| | |
|---|---|
| | (j)    the entry of a subsequent order of the Court terminating the Debtors' use of Cash Collateral.<br><br>*Interim Order ¶ 8* |
| **Adequate Protection Provided to Prepetition Credit Parties for Use of Collateral**<br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | As adequate protection for any diminution in value of the Prepetition Credit Parties' interest in the Collateral, the Prepetition Credit Parties shall receive the following (collectively, the "Adequate Protection Obligations"):<br><br>(a)    Valid, enforceable, non-avoidable, perfected security interests in and liens on (the "Adequate Protection Liens") all Adequate Protection Collateral (as defined in the Interim Order),[6] which liens and security interests shall be senior to any and all other liens and security interests, subject only to (i) the Carve-Out, (ii) the Subrogation Claim Lien, and (iii) any liens permitted under the Prepetition Agreement;<br><br>(b)    Allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, as provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which claims shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 552 (subject to entry of the Final Order), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom (a "Successor Case"), subject and subordinate only to the Carve-Out and the Subrogation Claim. The Adequate |

---

[6]    As set forth in greater detail in the Interim Order, the Adequate Protection Collateral consists of substantially all property of the Debtors' estates, including causes of action under chapter 5 of the Bankruptcy Code.

|  | Protection Claims shall be allowed claims jointly and severally against each Debtor; |
|---|---|
|  | (c) The payment of postpetition interest, as provided for in the Prepetition Agreements, at the non-default rate; and |
|  | (d) The reasonable and documented fees and expenses incurred in connection with these Chapter 11 Cases by (i) each of the Prepetition Agents (including the reasonable and documented fees and expenses of counsel and advisors) and (ii) the Ad Hoc Group (including the reasonable and documented fees and expenses of Brown Rudnick LLP, Delaware co-counsel, and FTI Consulting, Inc.). Payment of any such fees and expenses shall be made in cash by the Debtors within ten (10) calendar days of delivery of an invoice, and shall not be conditioned on the provision of time records and invoices compliant with U.S. Trustee guidelines or in any particular format; *provided*, *however*, that the Court shall resolve any disputes as to the reasonableness of any payment request. |
|  | The Interim Order also requires that the Debtors regularly provide certain financial reports to the Prepetition Agents and the Ad Hoc Group. |
|  | *Interim Order ¶¶ 14, 17* |
| **Professional Expense Carve-Out** *Local Bankruptcy Rule 4001-2(a)(ii)* | For purposes hereof, the "<u>Carve-Out</u>" shall mean (a) any fees payable to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, (b) allowed, accrued, and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Court) of professionals retained by order of the Court (or whose application for retention is then pending, provided such application is ultimately approved), incurred on or prior to the occurrence of a Carve-Out Event (as defined below), (c) up to $3,500,000 of allowed and unpaid fees and expenses, regardless of when such fees and expenses become allowed by order of the Court, of professionals authorized to be retained by the Court, incurred after the occurrence of a Carve-Out Event, and (d) any and all reasonable fees and |

<table>
<tr><td></td><td>expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $50,000. For the purposes hereof, a "<u>Carve-Out Event</u>" shall occur upon the occurrence and during the continuance of a Termination Event (as defined below) and upon delivery of a written notice thereof by the Prepetition Agents to the Debtors (a "<u>Carve-Out Notice</u>"). So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses, and disbursements of professionals retained by order of this Court allowed by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code. Upon the delivery of a Carve-Out Notice, the right of the Debtors to pay professional fees incurred under clause (c) above without reduction of the Carve-Out in clause (c) above shall terminate, and upon receipt of such notice, the Debtors shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals is subject to the Carve-Out. A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Court, as the same may be due and payable, without reducing the Carve-Out.

*Interim Order ¶ 7*</td></tr>
<tr><td>**Waiver of Automatic Stay**<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)(iv)*</td><td>The proposed Interim Order provides that, subject to certain terms and conditions, the Debtors' authority to use Cash Collateral shall automatically terminate upon the occurrence of a Termination Event unless such Termination Event is waived in writing by the Required Lenders, all without further order or relief from the Court. The automatic stay under section 362 of the Bankruptcy Code is hereby vacated and modified to the extent necessary to permit the Prepetition Agents and the Prepetition Credit Parties to exercise, upon five business days' prior written notice (the "<u>Waiting Period</u>") to the Debtors (with a copy to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee) given upon the occurrence or during the continuance of a Termination Event, all rights and remedies against the Collateral, including the Cash Collateral, provided for in the Interim Order, the Prepetition Agreements, and applicable law, unless the Court has determined that a Termination Event has not occurred and/or is not continuing. During the</td></tr>
</table>

<table>
<tr><td></td><td>Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to contest in good faith whether a Termination Event has occurred and/or is continuing. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief. In no event shall any of the Prepetition Credit Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.<br><br>*Interim Order ¶ 9*</td></tr>
</table>

21.     In addition, in compliance with Bankruptcy Rule 4001(1)(B) and Local Bankruptcy Rule 4001-2(a)(i), the Debtors call attention to the following provisions of the proposed Interim Order:

(a)     ***Debtors' Stipulations.*** Pursuant to paragraph 4 of the proposed Interim Order, the Debtors stipulate to the validity and enforceability of the claims and liens of the Prepetition Credit Parties. The Interim Order provides that these stipulations will bind all parties in interest in the Chapter 11 Cases unless a Challenge is commenced prior to the tenth day preceding the date originally scheduled for the confirmation hearing. This deadline is reasonable given that the Debtors and their principal stakeholders seek to consummate the Debtors' consensual, prepackaged plan, overwhelmingly accepted by the only voting class, as expeditiously as possible and, in any event, well before the end of the 60 and 75 day periods contemplated in the Local Rules. The Debtors note that general unsecured creditors (the usual beneficiaries of "challenge period" litigation) are unimpaired under the proposed Plan. *See* Interim Order ¶ 4.

(b)     ***Section 506(c) Waiver.*** Under the Interim Order, the Debtors waive their right to "surcharge" the Prepetition Credit Parties' Collateral under section 506(c) of the Bankruptcy

Code. This waiver is customary and represents an appropriate and reasonable concession in exchange for consensual use of Cash Collateral. *See* Interim Order ¶ 11.

(c)     ***Liens on Avoidance Actions.*** As noted above, the Adequate Protection Collateral to which the Prepetition Credit Parties' Adequate Protection Liens will attach consists of substantially all property of the Debtors' estates, including causes of action under chapter 5 of the Bankruptcy Code. The Debtors believe the scope of the Adequate Protection Collateral is appropriate given that the Plan leaves general unsecured claims unimpaired. The Interim Order further provides that MLH and TA will receive a superpriority lien on up to $25 million in proceeds of avoidance actions against the United States with respect to the Initial USA Settlement Agreement. As discussed further below, the Subrogation Claim Lien is an essential element of the global settlement embodied in the RSA and should be approved. *See* Interim Order ¶¶ 14, 16.

(d)     ***Equities of the Case Waiver.*** The "equities of the case" provision of Bankruptcy Code section 552(b) is an equitable exception to the general rule that a secured creditor's prepetition security interests extend to property of the debtor acquired after the petition date that constitutes proceeds of prepetition collateral. Under the Interim Order, the Debtors waive the right to assert equitable arguments of this nature. Such waivers are customary and an appropriate concession for consensual use of Cash Collateral. *See* Interim Order ¶ 12.

(e)     ***Waiver of the Automatic Stay.*** The proposed Interim Order grants the Prepetition Credit Parties prospective relief from the automatic stay under section 362 of the Bankruptcy to the extent necessary to exercise remedies against the Collateral following a Termination Event. The Prepetition Credit Parties must provide five business days' notice to the Debtors, any Committee, and the U.S. Trustee before exercising such remedies, however. During this

"Waiting Period," the Debtors may use Cash Collateral only as necessary to preserve going concern value and to contest in good faith whether a Termination Event has occurred. During the Waiting Period, the Debtors may seek a determination from the Court that no Termination Event has occurred. Provisions of this nature are conventional in postpetition financing and cash collateral orders. The Debtors believe that the terms of the stay waiver, including the five business day Waiting Period, provide the Debtors sufficient opportunity to protect the interests of their estates. *See* Interim Order ¶ 9.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

### A.    Use of Cash Collateral

22.    Although the Debtors' capital structure is not sustainable in the long term, the Debtors do not face an immediate liquidity crisis. Their cash on hand is sufficient to administer an orderly and efficient chapter 11 process that will place the Debtors on a sound financial footing and maximize value for stakeholders. However, much of the Debtors' cash is Cash Collateral. Thus, the Debtors require use of their Cash Collateral to operate their businesses in the ordinary course and to pay the costs associated with these cases. Without access to Cash Collateral, the Debtors will rapidly exhaust their liquidity and could be forced to liquidate.

23.    As discussed in detail in the First Day Declaration, the Debtors have reached a comprehensive agreement with the Prepetition Lenders, MLH, and TA on the terms of a consensual restructuring, as embodied in the RSA and the Plan. As part of this global resolution, the Participating Lenders—who collectively hold approximately 86% of the Existing Credit Agreement Claims—have consented to the Debtors' use of Cash Collateral on reasonable and customary terms and conditions. The relief requested herein represents the terms that the Debtors and the Ad Hoc Group have agreed to after good-faith, arm's length negotiations. The Debtors should be authorized to use Cash Collateral on such terms. *See* 11 U.S.C. § 363(c)(2) (court may

authorize use of cash collateral if "each entity that has an interest in such cash collateral consents").

**B.      Adequate Protection for Prepetition Credit Parties**

24.     Section 363(e) of the Bankruptcy Code provides that the Bankruptcy Court may condition the use of collateral, including cash collateral, as necessary to provide adequate protection to a secured party with an interest in such collateral. *Resolution Trust Corp. v. Swedeland Dev. Group, Inc.* (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) (observing that adequate protection means what is necessary to shield a secured creditor from the diminution in value of its interest in the collateral during the period of use). As a condition to their use of Cash Collateral, the Debtors have agreed to a customary adequate protection package consisting principally of Adequate Protection Liens, Adequate Protection Claims, current cash payment of interest on the Prepetition Credit Facilities at the non-default rate, and the payment of reasonable and documented fees and expenses of the Prepetition Agents and the Ad Hoc Group incurred in connection with the Chapter 11 Cases, to the extent of the aggregate diminution in value of the applicable Prepetition Credit Parties' interest in the Collateral.[7]

25.     The proposed Adequate Protection Obligations constitute "adequate protection" within the meaning of Bankruptcy Code section 363(e) and are reasonable and appropriate given the circumstances. As contemplated by the RSA, the Debtors and the Ad Hoc Group negotiated the use of Cash Collateral at arm's length and agreed on a typical adequate protection package, including replacement liens; adequate protection claims; and cash payment of interest, fees, and disbursements—all standard and customary forms of adequate protection. The form and extent of

---

[7]     The terms of the Adequate Protection Obligations are summarized in greater detail above.

adequate protection necessary to satisfy section 363(e) ultimately depends on the facts and circumstances of the case. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc.* (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."). However, Bankruptcy Code section 361 enumerates certain standard forms of adequate protection, which include replacement liens and adequate protection claims. *See* 11 U.S.C. § 361. Accordingly, the proposed use of Cash Collateral complies squarely with Bankruptcy Code section 363(e). And, considering the Debtors' urgent need to use Cash Collateral to fund ongoing business operations and the costs of these Chapter 11 Cases, the proposed Adequate Protection Obligations are undoubtedly in the best interests of the Debtors' estates as a whole.

**C.      Modification of the Automatic Stay**

26.      The proposed Interim Order would modify the automatic stay established pursuant to section 362 of the Bankruptcy Code to permit the Prepetition Credit Parties to take certain actions upon a Termination Event without the need for further order of this Court. Before exercising remedies, however, the DIP Lenders must provide five business days' written notice to counsel for the Debtors, any Committee, and the United States Trustee.

27.      Stay modification provisions of this sort are ordinary features of agreements regarding the use of cash collateral and, in the Debtors' business judgment, are reasonable under the present circumstances. As discussed above, the Debtors believe that the proposed terms of the stay waiver, including the five business day Waiting Period, are reasonable and sufficiently accommodate the Debtors' need to safeguard their estates should a dispute arise with respect to a contemplated exercise of remedies. *See, e.g.*, *In re A123 Sys., Inc.*, 12-12859 (KJC) (Bankr. D. Del. Nov. 26, 2012); *In re Graceway Pharm., LLC*, Case No. 11-13036 (MFW) (Bankr. D. Del. Nov. 7, 2011); *In re Sportsman's Warehouse, Inc.*, Case No. 09-10990 (CSS) (Bankr. D. Del.

Apr. 16, 2009). Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

**D.    Allowance of the Subrogation Claim and Approval of the Subrogation Claim Lien**

28.    The Subrogation Claim and Subrogation Claim Lien are integral elements of the consensual restructuring memorialized in the RSA. As discussed in the First Day Declaration, the USA Settlement Parties required payment of a $50 million deposit toward the Debtors' total settlement obligations upon execution of the definitive USA Settlement Agreements. At the same time, however, the USA Settlement Parties expressed concern that the Initial USA Settlement Deposit might be subject to avoidance or disgorgement in bankruptcy and therefore required that MLH and TA guarantee such obligations. MLH and TA, in turn, refused to provide such guarantee except in exchange for the Subrogation Claim and the Subrogation Claim Lien. Pursuant to the RSA, the Debtors have agreed to seek approval of such claim and lien.

29.    This relief is both appropriate and necessary. As discussed above, the Debtors' agreement to allow the Subrogation Claim was a necessary precondition to the payment of the Initial USA Settlement Deposit and the execution of the USA Settlement Agreements. Had the Debtors been unable to pay the Initial USA Settlement Deposit, the Centers for Medicare & Medicaid Services (an instrumentality of the United States Department of Health and Human Services) likely would have revoked the Debtors' Medicare billing privileges forthwith, irreparably damaging the Debtors business and forcing the Debtor to liquidate. Thus, as a practical matter, the Debtors had little choice but to agree to the Subrogation Claim.

30.    Moreover, the Subrogation Claim and Subrogation Claim Lien will not significantly prejudice other creditors. The Subrogation Claim and Subrogation Claim Liens are fundamental terms of a comprehensive restructuring agreement that has garnered overwhelming support from the Debtors' principal stakeholders. Indeed, the Consenting Lenders—representing

over 85% of the 2014 Credit Facility Claims—have consented to the Subrogation Claim and

Subrogation Claim Lien on the terms set forth in the RSA. Nor will the Subrogation Claim and

Subrogation Claim Lien prejudice general unsecured creditors. Because the Plan leaves general

unsecured creditors unimpaired, such creditors need not rely on avoidance action proceeds for

their recoveries.

## RESERVATION OF RIGHTS

31.    Except as expressly indicated, nothing contained herein is or should be construed

as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the

Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an

assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of

the Bankruptcy Code; or (e) otherwise affecting the Debtors' rights under section 365 of the

Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party

subject to this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

32.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be

granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P.

6003; *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008)

(holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid

irreparable harm). The Third Circuit has interpreted the language "immediate and irreparable

harm" in the context of preliminary injunctions. In that context, the court has instructed that

irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the

merits and for which money damages cannot provide adequate compensation. *See, e.g.*, *Norfolk S.

Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558

F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(H)

33.     The Debtors also request that, to the extent it applies to the relief requested herein,[8] the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that, to the extent necessary, the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

34.     Notice of this Motion shall be given to: (i) the U.S. Trustee, (ii) counsel to the Prepetition Agent, (iii) counsel to the Ad Hoc Group of Prepetition Lenders, (iv) counsel to Millennium Lab Holdings, Inc., (v) counsel to TA Millennium, Inc., (vi) the United States Department of Justice, (vii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors and (viii) all parties entitled to notice pursuant to Local Bankruptcy

---

[8]     The Debtors submit that the Bankruptcy Rule 6004(h) stay is inapplicable to this Motion because use of cash collateral is expressly excluded from the ambit of the rule. Fed. R. Bankr. P. 6004(h).

Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Interim Order (substantially in the form annexed hereto) and, following the Final Hearing, a Final Order (substantially in the form to be lodged in advance of the Final Hearing), granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:  Wilmington, Delaware
          November 10, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Anthony W. Clark*
Anthony W. Clark (I.D. No. 2051)
Jason M. Liberi (I.D. No. 4425)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

Kenneth S. Ziman (*pro hac vice admission pending*)
Raquelle L. Kaye (*pro hac vice admission pending*)
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

- and -

Felicia Gerber Perlman (*pro hac vice admission pending*)
Matthew N. Kriegel (*pro hac vice admission pending*)
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

Proposed Counsel for Debtors and Debtors in Possession

**EXHIBIT A**
**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :  Chapter 11

In re:                     :

                        :  Case No. 15-12284 (___)

MILLENNIUM LAB HOLDINGS II, LLC, <u>et al.</u>,  :

                        :  Jointly Administered

        Debtors.[1]          :

                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 502, 503, 507, AND 552, FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014 AND DEL. BANKR. L.R. 4001-2 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION CREDIT PARTIES; (III) ALLOWING SUBROGATION CLAIM AND GRANTING SUBROGATION CLAIM LIEN; (IV) <u>SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF</u>**

        Upon the motion (the "<u>Motion</u>")[2] of the Debtors for an interim order (this "<u>Interim Order</u>") pursuant to sections 105, 361, 363, 502, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 6003, 6004(h), and 9014, and Local Bankruptcy Rule 4001-2 seeking:

        (I)      as set forth herein, authorization for the Debtors to use the Cash Collateral (as defined in paragraph 5(b) below) pursuant to section 363 of the Bankruptcy Code, and all other Collateral (as defined in paragraph 4(f) below); and

        (II)     authorization for Debtors to provide adequate protection to the Prepetition Credit Parties (as defined in paragraph 4(f) below) under the Prepetition Credit Agreements (as defined in paragraph 4(a) below).

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Millennium Lab Holdings II, LLC (5299); Millennium Health, LLC (5558); and RxAnte, LLC (0219). The Debtors' address is 16981 Via Tazon, San Diego, California, 92127.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

(III)    to deem the Subrogation Claim (as defined in paragraph 4(j) below) an allowed claim against the Debtors in the Chapter 11 Cases and granting the Subrogation Claim Lien (as defined in paragraph 16(c) below) with the priority described herein;

(IV)    to schedule a final hearing (the "Final Hearing") pursuant to Bankruptcy Rule 4001 to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis; and

(V)    related relief,

all as more fully described in the Motion; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED, AND DECREED that:**

1.    *Jurisdiction.* This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing, was served by the Debtors on the following parties (or their counsel): (a) the U.S. Trustee, (b) counsel to the Prepetition Agents, (c) counsel to the Ad Hoc Group of Prepetition Lenders, (d) counsel to Millennium Lab Holdings, Inc., (e) counsel to TA Millennium, Inc., (f) the United States Department of Justice, (g) the parties included on the Debtors' consolidated list of twenty

(20) largest unsecured creditors, and (h) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m). The Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002 and 4001(b) and Local Rule 4001-2(c).

3.      *Approval of Motion.* The relief requested in the Motion is granted on an interim basis as described herein. Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved, or settled is hereby denied and overruled on the merits.

4.      *Debtors' Stipulations.* Subject to paragraph 19 below, and after consultation with their attorneys and financial advisors, the Debtors acknowledge, admit, stipulate, and agree that:

(a)      Prior to the Petition Date, one or more of the Debtors entered into the following credit agreements (collectively, the "Prepetition Credit Agreements"):

(i)      That certain Credit Agreement (the "2014 Credit Agreement") among Millennium Lab Holdings II, LLC, Millennium Laboratories, LLC, as borrower, the several lenders from time to time party thereto (the "2014 Credit Facility Lenders"), and Wilmington Savings Fund Society, FSB, as successor administrative agent (the "2014 Credit Facility Agent" and together with the Prepetition Lenders, the "2014 Credit Facility Parties"), dated as of April 16, 2014, as amended by that certain Consent and First Amendment to Credit Agreement dated as of November 9, 2015;

(ii)     That certain Credit Agreement (the "Early Commitment Credit Agreement") among Millennium Lab Holdings II, LLC, Millennium Health, LLC, as borrower, the several lenders from time to time party thereto (the "Early Commitment Lenders"), and Wilmington Savings Fund Society, FSB, as administrative agent (the "Early Commitment Agent" and, together with the 2014 Credit Facility Agent, the "Prepetition Agents"), dated as of November 9, 2015.

(b)      The Prepetition Credit Agreements are valid and binding obligations of the Debtors party thereto. The Debtors' indebtedness under the Prepetition Credit Agreements as of the Petition Date (the "Prepetition Indebtedness") includes any and all principal amounts owing

3

or outstanding under the Prepetition Credit Agreements, interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable fees and expenses of attorneys, accountants, and financial advisors to the extent chargeable or reimbursable pursuant to the Prepetition Credit Agreements or related agreements), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder.

(c)      Pursuant to the Prepetition Credit Agreements, the Debtors were, as of the Petition Date, indebted to the 2014 Credit Facility Lenders under the 2014 Credit Agreement in the aggregate principal amount of $1,752,812,500 plus any and all accrued interest, fees, and other amounts due and payable thereunder (other than the Prior Agent Indemnity Claims, as defined in the Plan) (the "2014 Credit Agreement Claims"), and were indebted to the Early Commitment Lenders under the Early Commitment Credit Agreement in the aggregate principal amount of $50,000,000, plus any and all accrued interest, fees, and other amounts due and payable thereunder (the "Early Commitment Facility Claims"). The Prepetition Indebtedness, including the amounts specified in this paragraph 4(c), constitutes the legal, valid, and binding obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Indebtedness. None of the Debtors, either collectively or individually, have or shall assert any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness. The Prepetition Indebtedness and any amounts previously paid to any Prepetition Credit Party (as defined below) pursuant to the terms of the Prepetition Credit Agreements, on account thereof, or with respect

thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Prepetition Agreements or this Interim Order.

(d)    The relative priorities of the Prepetition Indebtedness under each of the Prepetition Credit Agreements, and the relative rights and entitlements of the Prepetition Credit Parties (as defined below), is governed by that certain Subordination Agreement dated as of November 9, 2015 between the Prepetition Agents (the "Subordination Agreement").

(e)    To secure the Prepetition Indebtedness under the Prepetition Credit Agreements, the Debtors entered into the following prepetition collateral documents (the "Prepetition Collateral Documents", and together with the Prepetition Credit Agreements and the Subordination Agreement, the "Prepetition Agreements"):

(i)    That certain Guarantee and Collateral Agreement made by Millennium Lab Holdings II, LLC, Millennium Laboratories, LLC, and certain of its Subsidiaries in favor of the 2014 Credit Facility Agent, dated as of April 16, 2014 (the "2014 Security Agreement"); and

(ii)    That certain Guarantee and Collateral Agreement made by Millennium Lab Holdings II, LLC, Millennium Health, LLC, and certain of its Subsidiaries in favor of the Early Commitment Facility Agent, dated as of November 9, 2015 (the "Early Commitment Facility Security Agreement");

(f)    Pursuant to the 2014 Security Agreement, the Debtors party thereto granted security interests in, and continuing liens on, substantially all of the property and assets of the Debtors (the "Collateral") to and/or for the benefit of the 2014 Credit Facility Agent, the 2014 Credit Facility Lenders, and/or other applicable secured parties (the "2014 Credit Parties") under the 2014 Security Agreement (such liens, the "2014 Liens"). Pursuant to the Early Commitment Facility Security Agreement, the Debtors party thereto granted security interests in, and continuing liens on, the Collateral to and/or for the benefit of the Early Commitment Agent,

5

the Early Commitment Lenders, and/or other applicable secured parties (the "Early Commitment Credit Parties" and together with the 2014 Credit Parties, the "Prepetition Credit Parties" and each, a "Prepetition Credit Party") under the Early Commitment Facility Security Agreement (such liens, the "Early Commitment Liens" and, together with the 2014 Liens, the "Prepetition Liens"). Pursuant to the Subordination Agreement, the Early Commitment Liens rank senior in lien priority to the 2014 Liens. For the avoidance of doubt, the Collateral includes any cash of the Debtors that is Cash Collateral (as defined below) and the assets of the Debtors in or upon which a lien or other security interest has been granted in favor or for the benefit of the Prepetition Credit Parties in connection with, pursuant to, or under the applicable Prepetition Agreements that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

(g)     The Prepetition Collateral Documents are valid and binding agreements and obligations of the Debtors, and the Prepetition Liens constitute valid, binding, enforceable, and perfected security interests and "Liens", as that term is defined in the Prepetition Agreements ("Liens"), which are not subject to avoidance, recharacterization, recovery, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided in the Prepetition Agreements or this Interim Order.

(h)     The Prepetition Agents have properly perfected their security interests and Liens in and on the Collateral by taking possession of, or obtaining control over, certain assets and/or by the filing of UCC-1 financing statements, and other required documents against the Debtors and such Collateral with the proper state and county offices for the perfection of such security interests and Liens.

(i)   Without the requirement or need to file any proof of claim with respect thereto, (i) the Early Commitment Facility Claims shall constitute allowed, secured prepetition claims for all purposes in the Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceeding if any of the Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code or in any proceedings related to any of the foregoing (a "Successor Case"); (ii) the 2014 Credit Agreement Claims shall constitute allowed secured (to the extent of the value of the 2014 Credit Parties' interest in the Collateral in accordance with section 506(a) of the Bankruptcy Code) prepetition claims for all purposes in the Chapter 11 Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any Successor Case; (iii) the Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination (except as provided in the Prepetition Agreements, including the Subordination Agreement, or this Interim Order) or avoidance for all purposes in these Chapter 11 Cases and any Successor Case; and (iv) the Prepetition Indebtedness, the Prepetition Liens, and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claim, cause of action, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor, except as provided in the Prepetition Agreements or this Interim Order.

(j)   On or about October 16, 2015, the Debtors entered into the USA Settlement Agreements and paid to the USA Settlement Parties the Initial USA Settlement Deposit in the amount of $50,000,000. In connection therewith, Millennium Lab Holdings, Inc. ("MLH") and TA Millennium, Inc. ("TA") entered into that certain Guarantee Agreement dated as of October 16, 2015 (the "Guarantee Agreement") pursuant to which MLH and TA severally,

and not jointly, have guaranteed to the USA Settlement Parties the Debtors' payment of the Initial USA Settlement Deposit. Pursuant to the RSA, if MLH and TA are required to make payment to the United States of all or a portion of the $50 million Initial USA Settlement Deposit, MLH and TA shall have a subrogation claim (the "Subrogation Claim") against the Debtors for the full amount so paid. The Subrogation Claim is a valid and binding obligation of the Debtors and shall be an allowed claim in these Chapter 11 Cases and any Successor Case. Further, the Debtors agree that the Subrogation Claim shall be secured by a superpriority lien on the proceeds of avoidance actions recoveries by the Debtors' estates against the United States in an amount not to exceed the lesser of (i) $25 million or (ii) 50% of such Subrogation Claim.

(k)    The Debtors' acknowledgements and stipulations shall be binding on the Debtors and their respective representatives, successors, and assigns and, subject to any action authorized by the Court and timely commenced by the official committee of unsecured creditors appointed in the Chapter 11 Cases, if any, (the "Committee") or any other party-in-interest prior to the Investigation Termination Date (as defined in paragraph 19 below), on each of the Debtors' estates, and all creditors thereof and each of their respective representatives, successors, and assigns, including any trustee or representative appointed in these Chapter 11 Cases.

5.    *Findings Regarding the Use of Cash Collateral and Other Relief Granted Herein*

(a)    Good cause has been shown for the entry of this Interim Order.

(b)    The Debtors have an immediate and critical need to use the Collateral, (including cash that is property of the Debtors and that constitutes "cash collateral" as defined by section 363(a) of the Bankruptcy Code, including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of any Collateral that is property of the

Debtors ("Cash Collateral")), in order to, among other things, permit the orderly continuation of their business and preserve the going concern value of the Debtors.

(c)     The terms of the use of the Collateral, including the Cash Collateral, pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(d)     This Interim Order and the terms of the use of the Collateral, including the Cash Collateral, have been negotiated in good faith and at arm's length between the Debtors and the Prepetition Credit Parties. Pursuant to sections 105(a) and 364(e) of the Bankruptcy Code, the Prepetition Credit Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided to such entities under section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

(e)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). Unless the relief set forth in this Interim Order is granted immediately, the Debtors' estates and business will be immediately and irreparably harmed. In particular, the Debtors require immediate use of the Collateral, including the Cash Collateral, to, among other things, permit the orderly continuation of their business and preserve going concern value for the benefit of stakeholders. The use of the Collateral, including the Cash Collateral, in accordance with this Interim Order is therefore in the best interest of the Debtors' estates.

9

6.      *Authorization to Use Cash Collateral.* Subject to the terms, conditions, and limitations set forth in this Interim Order, the Debtors are hereby authorized to use the Cash Collateral for working capital, general corporate purposes, and administrative costs and expenses of the Debtors.

7.      *Carve-Out.* For purposes hereof, the "Carve-Out" shall mean (a) any fees payable to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, (b) allowed, accrued, and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Court) of professionals retained by order of the Court (or whose application for retention is then pending, provided such application is ultimately approved), incurred on or prior to the occurrence of a Carve-Out Event (as defined below), (c) up to $3,500,000 of allowed and unpaid fees and expenses, regardless of when such fees and expenses become allowed by order of the Court, of professionals authorized to be retained by the Court, incurred after the occurrence of a Carve-Out Event, and (d) any and all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $50,000. For the purposes hereof, a "Carve-Out Event" shall occur upon the occurrence and during the continuance of a Termination Event (as defined below) and upon delivery of a written notice thereof by the Prepetition Agents to the Debtors (a "Carve-Out Notice"). So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses, and disbursements of professionals retained by order of this Court allowed by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code. Upon the delivery of a Carve-Out Notice, the right of the Debtors to pay professional fees incurred under clause (c) above without reduction of the Carve-Out in clause (c) above shall terminate, and upon receipt of such notice,

the Debtors shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals is subject to the Carve-Out. A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Court, as the same may be due and payable, without reducing the Carve-Out.

8.      *Termination of Use of Cash Collateral.* Subject to paragraphs 7, 9, and 10, the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (j) below (such events, collectively, the "Termination Events"). As used herein, "Required Lenders" means, as of any date of determination, lenders constituting "Required Lenders" pursuant to, and as defined in, each of the Prepetition Credit Agreements.

(a)      thirty-five (35) days after entry of the Interim Order if no Final Order has been entered on or before such date;

(b)      December 30, 2015 (unless extended with the written consent of the Required Lenders, which extension thereof shall be effective without further application to or approval by the Court);

(c)      (i) any of the Chapter 11 Cases is dismissed or converted to a case under chapter 7 of the Bankruptcy Code or a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in any of the Chapter 11 Cases, or (ii) the Debtors seek entry of an order accomplishing any of the foregoing;

(d)      (i) other than this Interim Order and the Final Order, an order is entered granting another claim or lien *pari passu* with or senior to the Adequate Protection Liens or Adequate Protection Claims granted to the Prepetition Credit Parties under this Interim Order or (ii) an order of the Court is entered reversing, staying for a period in excess of five business days, vacating or otherwise amending, supplementing, or modifying this Interim Order in a manner materially adverse to the Prepetition Credit Parties, in each case without the written consent of the Required Lenders;

(e)      (i) any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenge to Adequate Protection Liens or Adequate Protection Claims or (y) any relief under section 506(c) of the Bankruptcy Code with respect to any Collateral, including the Cash Collateral; (ii) any Debtor files a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Credit Parties; or (iii) any party-in-interest files or commences any motion, pleading, or proceeding described in clauses (i) or (ii) above and the Court enters a final order granting the relief requested in such motion, pleading, or proceeding;

(f)      any "Material Adverse Event" as defined in the RSA and listed on Exhibit 3 thereto occurs and continues for five business days following notice thereof from the Prepetition Agents to the Debtors;

(g)      the Debtors undertake any action set forth on Annex E to the "Restructuring Term Sheet" attached to the RSA without the consent of the Ad Hoc Group being delivered in accordance with such Annex E;

(h)      The RSA terminates, other than a termination caused by the breach or non-performance of any Prepetition Credit Party of its obligations thereunder;

(i)      the later of (i) the effective date of any confirmed chapter 11 plan for the

Debtors or (ii) the date the Restructuring Transactions (as defined in the Plan) are consummated;

or

(j)      the entry of a subsequent order of the Court terminating the Debtors' use

of Cash Collateral.

9.      *Remedies After a Termination Date*. Subject to the provisions of this paragraph

and paragraphs 7 and 10, the Debtors' authority to use Cash Collateral shall automatically

terminate upon the occurrence of a Termination Event unless such Termination Event is waived

in writing by the Required Lenders, all without further order or relief from the Court. The

automatic stay under section 362 of the Bankruptcy Code is hereby vacated and modified to the

extent necessary to permit the Prepetition Agents and the Prepetition Credit Parties to exercise,

upon five business days' prior written notice (the "Waiting Period") to the Debtors (with a copy

to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee) given upon the

occurrence or during the continuance of a Termination Event, all rights and remedies against the

Collateral, including the Cash Collateral, provided for in this Interim Order, the Prepetition

Agreements, and applicable law, unless the Court has determined that a Termination Event has

not occurred and/or is not continuing. During the Waiting Period, except as may be otherwise

ordered by the Court, the Debtors shall not use any Cash Collateral to pay any expenses except

those which are (a) necessary to preserve the Debtors' going concern value or (b) necessary to

contest in good faith whether a Termination Event has occurred and/or is continuing. Nothing

herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy

Code at any hearing on any request by the Debtors or other party in interest to re-impose or

continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to

obtain any other injunctive relief. In no event shall any of the Prepetition Credit Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

10.     *Application of Collateral Proceeds.* Subject to entry of an order of this Court to the contrary, after the expiration of the Waiting Period following the occurrence of a Termination Event, the Debtors are hereby authorized to fund an account from which to satisfy the Carve-Out from 100% of all collections on, and proceeds of, the Collateral, including but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time. Subject to entry of an order of this Court to the contrary, the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the Prepetition Credit Parties to retain and apply all collections, remittances, and proceeds of the Collateral subject to and in accordance with this Interim Order and the Prepetition Agreements to the Prepetition Indebtedness in accordance with the provisions of the Prepetition Agreements (subject to the Carve-Out, as described above).

11.     *Limitation on Charging Expenses Against Collateral.* Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged or assessed against or recovered from the Prepetition Credit Parties or the Collateral pursuant to sections 105 and 506(c) of the Bankruptcy Code or any similar principle of law.  No action, inaction, or acquiescence by the Prepetition Credit Parties, including permitting the use of Cash Collateral to fund the Debtors' ongoing

14

operations, shall be construed as consent to a charge against the Collateral pursuant to sections 105(a) or 506(c) of the Bankruptcy Code.

12.     *Limitations under Section 552(b) of the Bankruptcy Code.* The Prepetition Credit Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Credit Parties with respect to (a) proceeds, products, offspring, or profits of any of the Collateral, including the Cash Collateral or (b) the extension of the Adequate Protection Liens to cover proceeds of the Collateral.

13.     *Payments Free and Clear.* Any and all payments or proceeds remitted to the Prepetition Credit Parties pursuant to the Prepetition Agreements or (except as provided in paragraph 19 of this Interim Order) pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability.

14.     *Adequate Protection for the Prepetition Credit Parties.* The Prepetition Credit Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Collateral, including the Cash Collateral, in an amount equal to the diminution in value of their respective interests in the Collateral, including any such diminution on account of (a) depreciation, physical deterioration, use, sale, loss, or decline in market value, (b) the Debtors' use of Cash Collateral and other Collateral, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Prepetition Credit Parties are hereby granted, to the extent of the aggregate diminution in the value of their interests in the Collateral, the following (collectively, the "Adequate Protection Obligations"):

(a)    <u>Adequate Protection Liens</u>. Valid, enforceable, non-avoidable, perfected security interests in and liens on (the "<u>Adequate Protection Liens</u>") all property of any kind or nature whatsoever, whether now owned or hereafter acquired or existing and wherever located, of each Debtor's estate (as created pursuant to section 541(a) of the Bankruptcy Code), whether real or personal, tangible or intangible, including all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, intellectual property (including, without limitation, patents, trademarks, copyrights and licenses), accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax, or other refunds, insurance proceeds, letters of credit, owned real estate, real property leaseholds, fixtures, vehicles, deposit accounts, commercial tort claims, securities accounts, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, leases, securities (including, without limitation, all of the issued and outstanding capital stock of each subsidiary of each Debtor and other equity or ownership interests, including equity interests in non-wholly owned subsidiaries), money, causes of action (including, for the avoidance of doubt, causes of action of the Debtors' bankruptcy estates under chapter 5 of the Bankruptcy Code), Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above (all such property, the "<u>Adequate Protection Collateral</u>"), which liens and security interests shall be senior to any and all other liens and security interests, subject only to (i) the Carve-Out, (ii) the Subrogation Claim Lien, and (iii) any liens permitted under the Prepetition Agreement. For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors, or the filing of, as applicable, any mortgages, security agreements, pledge agreements, financing statements, state or federal notice, recordings, or other

16

agreements and without the necessity of taking possession or control of any Adequate Protection Collateral. Under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising; *provided*, *however*, that Adequate Protection Liens securing the amount owed under the Early Commitment Facility Security Agreement shall be senior to the Adequate Protection Liens securing the amount owed under the 2014 Security Agreement.

(b)    Adequate Protection Claims. Allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, as provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which claims shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 552 (subject to entry of the Final Order), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom (a "Successor Case"), subject and subordinate only to the Carve-Out and the Subrogation Claim. The Adequate Protection Claims shall be allowed claims jointly and severally against each Debtor. Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases, including any cost or expense resulting from or arising after the conversion of any such Chapter 11 Case to one under chapter 7 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Adequate Protection Claims.

(c)    Payment of Postpetition Interest. The payment of postpetition interest, as provided for in the Prepetition Agreements, at the non-default rate.

17

(d)    <u>Payment of Fees and Expenses</u>. The reasonable and documented fees and expenses incurred in connection with these Chapter 11 Cases by (i) each of the Prepetition Agents (including the reasonable and documented fees and expenses of counsel and advisors) and (ii) the Ad Hoc Group (including the reasonable and documented fees and expenses of Brown Rudnick LLP, Delaware co-counsel, and FTI Consulting, Inc.). Payment of any such fees and expenses shall be made in cash by the Debtors within ten (10) calendar days of delivery of an invoice, and shall not be conditioned on the provision of time records and invoices compliant with U.S. Trustee guidelines or in any particular format; *provided*, *however*, that the Court shall resolve any disputes as to the reasonableness of any payment request.

(e)    <u>Certain Rights Reserved</u>. The rights of the Prepetition Agents and the Ad Hoc Group to request other or additional adequate protection in the Final Order are fully reserved.

15.    *Perfection of Adequate Protection Liens*

(a)    The Prepetition Agents are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Adequate Protection Liens granted to it hereunder. Whether or not the Prepetition Agents shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the date of entry of this Interim Order. A certified copy of this Interim Order may, in the discretion of the Prepetition

18

Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(b)    The Debtors shall execute and deliver to the Prepetition Agents all such agreements, financing statements, instruments, and other documents as the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens.

16.    *Subrogation Claim and Subrogation Claim Lien.*

(a)    The Subrogation Claim is a valid and binding obligation of the Debtors and shall be deemed an allowed claim against each of the Debtors in these Chapter 11 Cases and in any Successor Case. TA and MLH shall have a 45% and 55% interest in such Subrogation Claim, respectively.

(b)    Each Consenting Lender,[3] severally and not jointly, has assigned to TA and MLH, on account of and to secure their Subrogation Claim, such Consenting Lender's pro rata share (based on the portion which the principal amount of Prepetition Indebtedness it owns bears to the aggregate principal amount of all Prepetition Indebtedness owned by the Consenting Lenders) of any cash distributions it receives from the Debtors' estates in the aggregate amount not to exceed the lesser of (x) $25,000,000 for all Consenting Lenders in the aggregate or (y) 50% of the amount of the Initial USA Settlement Deposit which is avoided pursuant to a final order in the Chapter 11 Cases or proceedings and required to be disgorged. The obligation of each Consenting Lender shall be limited to the assignment of cash distributions received from the Debtors' estates, and, except for such cash distributions, shall be non-recourse to the Consenting Lenders' own funds or assets and shall be several and not joint.

---

[3]    As used herein, "Consenting Lender" has the meaning ascribed to it in the RSA.

(c)    The Debtors and the Consenting Lenders agree that the Subrogation Claim shall be secured by a superpriority lien on the proceeds of avoidance action recoveries by the Debtors' estates against the United States in an amount not to exceed the lesser of (i) $25,000,000 or (ii) 50% of such Subrogation Claim (the "Subrogation Claim Lien"). The Subrogation Claim Lien shall be senior to any and all other Liens on and security interests in such proceeds of such avoidance action recoveries (including, for the avoidance of doubt, the Adequate Protection Liens), subject only to the Carve-Out.

17.    *Reporting Obligations*.  The Debtors shall provide the following financial reports for so long as the Debtors are authorized to use Cash Collateral hereunder:

(a)     Forty-five calendar days following the end of each month, a monthly operating report (an "MOR") consisting of a summary P&L statement, summary balance sheet, and summary cash-flow statement;

(b)    Within five business days of providing each MOR, the Debtors shall convene a management call;

(c)    Forty-five  calendar days following the end of each  month, a summary of monthly accounts payable and accounts reconciliation and ageing reports, which may be redacted for sensitive information;

(d)    Within 15 calendar days following the end of each month, a 13-week cash-flow forecast, summary of bank account reconciliations, statement of current cash position, and a description of any formal pledges or contemplated pledges of the Company's cash to any party other than the Prepetition Agents;

20

(e)    The Debtors shall timely comply with all information and disclosure obligations to the Ad Hoc Group required by the RSA, including all required information, disclosures and "attesting" statements as set forth in Exhibit 3 of the RSA; and

(f)    The Debtors shall timely provide all reports, information and disclosures, and shall provide access to management, as reasonably requested by the Ad Hoc Group. The reports set forth in clauses (a) through (c) above shall be provided to the counsel and financial advisor to the Ad Hoc Group and to any "public-side" 2014 Credit Facility Lender. The reports set forth in clause (d) above shall be provided only to the counsel and financial advisor to the Ad Hoc Group on a professionals'-eyes only basis.

18.    *Preservation of Rights Granted Under the Order.*

(a)    Except for the claims to be incurred and liens to be granted in connection with the Motion (including, without limitation, the Subrogation Claim and the Subrogation Claim Lien), no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Prepetition Credit Parties shall be granted or allowed while any portion of the Prepetition Indebtedness and the Adequate Protection Obligations remain outstanding, and, other than the Subrogation Claim Lien, the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall, to the extent provided in sections 364(e) of the Bankruptcy Code, not affect (i) the validity, priority, or

21

enforceability of any Adequate Protection Obligations, Subrogation Claim, or Subrogation Claim Lien incurred prior to the effective date of such reversal, stay, modification, or vacatur or (ii) the validity, priority, or enforceability of the Subrogation Claim Lien and the Adequate Protection Liens to the extent of any diminution in value incurred prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations, Subrogation Claim, or Subrogation Claim Lien incurred by the Debtors, as the case may be, prior to the effective date of such reversal, stay, modification, or vacatur shall, to the extent provided in section and 364(e) of the Bankruptcy Code, be governed in all respects by the original provisions of this Interim Order, and the Prepetition Credit Parties, MLH, and TA, as applicable shall be entitled to all of the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, and the Prepetition Agreements.

(c)    Except as expressly provided in this Interim Order or in the Prepetition Agreements, the Adequate Protection Liens, the Adequate Protection Claims, the Subrogation Claim, and the Subrogation Claim Lien and all other rights and remedies of the Prepetition Credit Parties granted by this Interim Order and shall not be modified, impaired, or discharged by the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases. In any Successor Cases, if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases, the Adequate Protection Obligations, Subrogation Claim, and Subrogation Claim Lien shall continue in full force and effect until all such Adequate Protection Obligations, Subrogation Claims, and Subrogation Claim Liens, as the case may be, are indefeasibly paid in full in cash.

22

19.     *Effect of Stipulations on Third Parties*. The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding on the Debtors' estates and all parties in interest, including, without limitation, any Committee, unless any Committee, or another party in interest (other than any of the Debtors) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 20 hereof, including, for the avoidance of doubt, the Investigation Budget), challenging the amount, validity, or enforceability of the Prepetition Indebtedness or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, claims, or causes of action on behalf of the Debtors' estates against the Prepetition Credit Parties relating to the Prepetition Indebtedness or the Prepetition Liens (such adversary proceeding or contested matter, a "Challenge"), before the earlier of (i) 10 calendar days prior to the original date scheduled for a hearing to consider confirmation of a chapter 11 plan in any of the Chapter 11 Cases and (ii) December 11, 2015 (the "Investigation Termination Date"). If no such Challenge is timely commenced as of the Investigation Termination Date, without further order of the Court, the claims, Liens, and security interests of the Prepetition Credit Parties shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Cases and any Successor Case and shall not be subject to challenge or objection by any party in interest as to validity, priority, perfection, amount, or otherwise. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraph 4 of this Interim Order shall be binding on the Debtors' estates, any Committee, and all parties in interest. If a Challenge is timely commenced, the stipulations contained in paragraph 4 of this Interim Order shall be binding on the Debtors' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge, as

and when originally filed (ignoring any relation back principles); *provided that* if and to the extent a Challenge is withdrawn, denied, or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the Debtors' estates and all parties in interest.

20.    *Limitation on Use of Cash Collateral and Collateral.* The Debtors shall use the Collateral, including the Cash Collateral, solely as provided in this Interim Order. Subject to the Debtors' rights pursuant to paragraph 9 hereof, none of the Collateral, including the Cash Collateral, may be used to (a) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the Prepetition Agreements or the Liens or claims granted under this Interim Order or the Prepetition Agreements, (b) prevent, hinder, or otherwise delay the Prepetition Credit Parties' assertion, enforcement, or realization on the Collateral in accordance with the Prepetition Agreements or this Interim Order, (c) seek to modify any of the rights granted to the Prepetition Credit Parties hereunder or under the Prepetition Agreements, in the case of each of the foregoing clauses (a) through (c), without such party's prior written consent, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are  approved by an order of this Court. Notwithstanding the foregoing, the Committee, if any, and its advisors may investigate the Liens granted pursuant to the Prepetition Agreements prior to the Investigation Termination Date and any causes of action in connection therewith at an aggregate expense for such investigation not to exceed $20,000 (the "Investigation Budget").

21.    *Order Governs.* In the event of any inconsistency between the provisions of this Interim Order, on the one hand, and the Motion or the Prepetition Agreements, on the other, the provisions of this Interim Order shall govern.

22.     *Binding Effect; Successors and Assigns.* The provisions of this Interim Order, including all findings herein, shall be binding upon and inure to the benefit of all parties-in-interest in the Chapter 11 Cases, including the Prepetition Credit Parties, to the extent as set forth herein, and the Debtors, any Committee appointed in the Chapter 11 Cases, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors); *provided that*, except to the extent expressly set forth in this Interim Order, the Prepetition Credit Parties shall have no obligation to permit the use of the Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23.     *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim Order.

24.     *Final Hearing.* The Final Hearing is scheduled for_____ ___, 2015 at _____ __.m., prevailing Eastern Time before this Court.

25.     *Final Hearing Notice.* The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) the U.S. Trustee, (b) counsel to the Prepetition Agent, (c) counsel to the Ad Hoc Group of

Prepetition Lenders, (d) counsel to Millennium Lab Holdings, Inc., (e) counsel to TA Millennium, Inc., and (f) the United States Department of Justice, and shall be filed with the Clerk of the Court, in each case so as to be received by 4:00 p.m. (prevailing Eastern Time) no later than seven days prior to the Final Hearing.

Dated: _____, 2015
       Wilmington, Delaware

/s/_____
UNITED STATES BANKRUPTCY JUDGE