## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| MILLENNIUM LAB HOLDINGS II, LLC, <u>et</u> | : Case No. 15-12284 (LSS) |
| <u>al.</u>, | : |
|  | : Jointly Administered |
|  | : |
| Debtors.[1] | : **Re: D.I. 195, 204** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' OPPOSITION TO VOYA'S MOTION FOR
### <u>STAY PENDING APPEAL OF CONFIRMATION ORDER</u>

The above captioned debtors and debtors in possession (the "<u>Debtors</u>,"

"<u>Millennium</u>" or the "<u>Company</u>") hereby submit this opposition to the motion of Voya

and its affiliated funds and accounts ("<u>Voya</u>" or the "<u>Opt-Out Lenders</u>") seeking a stay

pending appeal of the confirmation order [D.I. 204] (the "<u>Stay Motion</u>").  In support, the

Debtors respectfully state as follows:

### <u>PRELIMINARY STATEMENT</u>

1.      As the sole creditor objector to plan confirmation, Voya sought to

extract hold-out value from the Debtors, equity holders and other pre-petition lenders by

leveraging its putative legal challenges to plan confirmation.  The Court, however,

properly overruled Voya's objections and confirmed the Debtors' prepackaged plan of

reorganization, relying upon an extensive and uncontested evidentiary record – and

overwhelming creditor support for the plan – to make specific factual findings in support

of confirmation.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Millennium Lab Holdings II, LLC (5299); Millennium Health, LLC (5558); and RxAnte, LLC (0219). The Debtors' address is 16981 Via Tazon, San Diego, California, 92127.

2.       Among other things, that evidentiary record establishes the following incontrovertible facts:

- Without the settlement with the equity holders, including the third-party releases, Millennium does not have sufficient funds to satisfy the government settlement.

- Final payment (more than $200 million) is due on the government settlement in 14 days (a deadline mandated by the government, ***not*** the Debtors or the released parties).

- If the government settlement is not funded in those 14 days, the Company's Medicare billing privileges will be revoked, the Debtors will have no choice but to liquidate, and going concern value (more than $900 million) will evaporate, leaving only a tangle of complex litigation.

- ***All of the impaired creditors*** but one – Voya – have determined that this is ***not*** the way to proceed.

3.       The settlements reflected in the confirmed plan took months to negotiate.  All of the affected constituents, including Voya, were included in the process – no one was left out in the cold.  And all of them will share in the valuable fruits of that universal, collaborative effort.  Specifically, Voya will receive its pro rata share of $900+ million going concern value and proceeds from the Debtors' retained claims trust, and will also retain its alleged litigation claims against the Excluded Parties.

4.       On these uncontested and irrefutable facts, the Court properly rejected Voya's attempt to play the spoiler at the confirmation hearing.  For all of the same reasons, Voya should not be permitted to be the spoiler now with a strategy that jeopardizes the viability of the Company's reorganization and threatens more than $1 billion of recoveries for the Debtors' stakeholders.  As explained below, a stay pending appeal is extraordinary relief, and it is entirely unwarranted here.

## PROCEDURAL BACKGROUND

5.       On November 10, 2015, the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code and also filed their Prepackaged Joint Plan Of Reorganization Of Millennium Lab Holdings II, LLC, et al. [D.I. 14] (the "Plan").[2]

6.       The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  To date, no creditors' committee, trustee or examiner has been appointed in these cases.

7.       Voya filed its objection to Plan confirmation on December 4, 2015 [D.I. 122] (the "Objection") and its supplemental objection to Plan confirmation on December 9 [D.I. 174] (the "Supplemental Objection", and, together with the Objection, the "Objections").

8.       The Court held a contested confirmation hearing on December 10, 2015.  Voya was represented by counsel at the hearing and made arguments to the Court in connection with its Objections.  Voya was provided the opportunity to cross-examine all of the witnesses supporting confirmation for whom declarations were filed and submitted into evidence.  Voya declined to conduct any cross-examinations.  Voya did not present or submit any evidence in connection with its Objections to confirmation.

9.       The Court read its ruling on confirmation into the record at a hearing on December 11, 2015 (cited as "Confirmation Ruling Tr.").  The Court entered the confirmation order on December 14, 2015 [D.I. 195] (the "Confirmation Order").

---

[2]       Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Declaration Of William Brock Hardaway In Support Of The Debtors' Chapter 11 Petitions And First Day Pleadings (the "First Day Declaration") [D.I. 3].

**OBJECTION**

10.     In overruling Voya's Objections to Plan confirmation, the Court engaged in a fact-intensive analysis of both the foundation of its "related to" subject matter jurisdiction to rule on the challenged third-party releases, as well as the validity of the third-party releases under the controlling authority of *Continental*[3] in this Circuit. *See, e.g.*, Confirmation Ruling Tr. at 13:15-15:7 (factual findings regarding indemnification and advancement obligations establishing "related to" jurisdiction); *id.* at 17:9-26:8 (series of factual findings establishing "fairness" and "necessity to the reorganization" under *Continental*).

11.     This Court's factual findings are supported by an uncontested evidentiary record.  Despite the opportunity to cross-examine each of the witnesses whose testimony the Court considered in connection with confirmation, Voya failed to do so.  Voya also failed  to submit ***any*** evidence in support of its Objections to confirmation. Instead, Voya – in its Objections and in the Stay Motion – offers only rank hearsay and speculation about potential fraud and RICO claims.  Yet Voya's repetitive mantra about the "direct" nature of its alleged claims against third parties should not obscure the fact that these putative claims in connection with the April 2014 transaction and loan documents are really just breach of contract claims against the Debtors that are being repackaged and asserted against the Plan funders.

12.     For these reasons, and as further demonstrated below, Voya cannot show that it is likely to succeed on the merits of an appeal.  This alone justifies denial of the Stay Motion.  Moreover, the uncontested evidentiary record demonstrates that the

---

[3]     *Gillman v. Continental Airlines (In re Continental, Inc.)*, 203 F.3d 203 (3d Cir. 2000).

balance of harms overwhelmingly favors denial of a stay pending appeal, as the stay would effectively force the Debtors to cease ongoing operations, destroy more than $900 million in going concern value, and cause a wipe-out liquidation resulting in the loss of more than 1,000 jobs and no recoveries for unsecured creditors.  In light of the obvious and tremendous harm that will befall the Debtors, their employees, creditors and other stakeholders if a stay issues, a bond equal to at least $1.125 billion should be required.

**A.      Voya Cannot Satisfy The Requirements For A Stay Pending Appeal.**

13.     A stay pending appeal is extraordinary relief.  *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978); *Conestoga Wood Specialties Corp. v. Soc'y of U.S. Dep't of Health & Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013).  The requirements for obtaining a stay pending appeal are generally the same as those for obtaining a preliminary injunction.  *See In re Revel AC, Inc.*, 802 F.3d 558, 565 and 568 (3d Cir. 2015) (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).  Thus, in order to obtain a stay pending appeal, Voya must show that (i) it is likely to succeed on the merits, (ii) it will suffer irreparable harm, (iii) other parties in interest will not be substantially harmed by a stay, and (iv) the public interest lies in granting the stay.  *In re Delaware & Hudson Ry. Co.*, 90 B.R. 90, 91 (Bankr. D. Del. 1988).

14.     Moreover, if Voya fails to make the requisite showings on either of the first two factors, then "'the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis.'"  *Revel AC,* 802 F.3d at 571 (citing *In re Forty–Eight Insulations, Inc.,* 115 F.3d 1294, 1300-01 (7th Cir. 1997)).  As set forth herein, Voya cannot show a likelihood of success on the merits, particularly in light of the uncontested evidentiary record and factual findings

supporting confirmation.  This, alone, is sufficient to deny the Stay Motion.  Regardless,

Voya fails to satisfy each of the four factors, and the balance of harms analysis weighs so

heavily in favor of denial of the Stay Motion that (i) a stay should never issue and (ii) any

stay must be secured by a bond from Voya, and the amount of that bond should be no less

than $1.125 billion in order to protect and secure the Debtors, their employees, creditors

and other stakeholder from the obvious and significant harms that will result from a stay

pending appeal.

**1.    Voya is not likely to succeed on the merits.**

15.    Voya cannot demonstrate that it is likely to succeed on the merits

on appeal.[4]  *First*, this Court properly found that it has "related to" jurisdiction to approve

the Plan's third-party releases based, in part, on the uncontroverted evidentiary record of

the Debtors' indemnification and advancement obligations to the released parties.[5]

Confirmation Ruling Tr. at 13:15-15:7 (factual findings regarding indemnification and

advancement obligations establishing "related to" jurisdiction).  The Court found that,

regardless of the eventual outcome of any litigation over Voya's alleged claims, the

Debtors would be required to advance fees and expenses to the indemnified parties under

the applicable agreements submitted into evidence.  *See* Confirmation Ruling Tr. at 15:2-

5 ("advancement rights generally require advancement of fees, regardless of whether the

---

[4]    "The moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'" *American Exp. Travel Related Servs. Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *see also Conestoga*, 2013 WL 1277419, at *3 (denying request for stay because appellant had not established likelihood of success on merits).

[5]    *See* Declaration Of William Brock Hardaway In Support Of (I) Confirmation Of The Debtors' Plan And (II) Debtors' Response To Voya Objection To Confirmation Of Debtors' Chapter 11 Plan [D.I. 133] (appending operating agreements, indemnification agreements and related documents evidencing the Debtors' indemnification and advancement obligations to the released parties).

person will ultimately be entitled to indemnification"). Voya ignores this finding and

argues that "the Debtors' potential obligations are contingent on an adverse ruling in the

underlying litigation, and thus are not automatic." Stay Motion ¶ 17. Voya is wrong.[6]

The evidentiary record clearly supports the Court's findings and establishes "related to"

jurisdiction. Voya cannot show that it is likely to succeed on the merits regarding its

jurisdictional arguments.

16.     *Second*, Voya incorrectly argues that "the Third Circuit has never

ruled that non-consensual third-party releases are permissible or established a standard

for approving them." Stay Motion ¶ 16. Voya ignores that multiple courts within this

Circuit, as well as the ***Third Circuit itself***, consistently have recognized that *Continental*

controls the issue of third-party non-consensual releases and injunctions. *See, e.g.*,

*United Artists Theatre Co. v. Walton*, 315 F.3d 217, 227 (3d Cir. 2003) (recognizing

*Continental* factors as governing nonconsensual third-party releases); *In re Global Indus.*

*Technologies, Inc.*, 645 F.3d 201, 206 (3d Cir. 2011) (en banc) (describing *Continental* as

"***holding*** that a third-party injunction would only be proper … if the proponents of the

injunction demonstrated with specificity that such an injunction was both necessary to the

reorganization and fair") (citing *Continental*, 203 F.3d at 214) (emphasis added); *In re*

*W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012) (recognizing necessity and fairness

---

[6]     Voya even acknowledges, in its Supplemental Objection, the existence of the Debtors' indemnification
and advancement obligations to the released parties. *See* Voya Supplemental Objection at 12 n. 10.
Voya's attempt to characterize these obligations as *de minimis* for purposes of subject matter
jurisdiction was rejected by this Court, as similar arguments have been rejected in other courts. *See,
e.g., N. Apparels, Inc. v. PNC Bank, N.A. (In re Forman Enters., Inc.)*, 271 B.R. 483, 486 (Bankr.
W.D. Pa. 2002) ("'[r]elated to' jurisdiction does not require the conceivable affect on debtor's
liabilities or administration of its estate to exceed some threshold minimum quantum before such
jurisdiction exists. Even if the effect of a proceeding on debtor's liabilities or administration of its
estate amounts to a mere trifle, this suffices for purposes of 'related to' jurisdiction."). If anything, this
proceeding and the dozens of attorneys present at the confirmation hearing highlights the exceedingly
expensive nature of any litigation Voya threatens – no matter how frivolous.

standards as stated by *Continental* and reaffirmed by *Global Indus. Technologies* as governing law for "injunction barring third-party claims against non-debtors"); *In re W.R. Grace & Co.*, 446 B.R. 96, 138 (Bankr. D. Del. 2011) (granting nonconsensual third-party releases under *Continental* standard), *aff'd, In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012); *In re 710 Long Ridge Rd. Operating Co., II*, No. 13-13653, 2014 WL 886433, at *16 (Bankr. D.N.J. Mar. 5, 2014) (same); Hr'g Tr. at 66-69, *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Dec. 3, 2015) (same); Hr'g Tr. at 72-75, *In re PNG Ventures, Inc.*, No. 09-13162 (CSS) (Bankr. D. Del. Mar. 29, 2010) (same); Hr'g Tr. at 114-15, *In re Freedom Rings, LLC*, No. 05-14268 (CSS) (Bankr. D. Del. May 9, 2006) (same).  Voya cannot show that it is likely to succeed on the merits regarding this argument.

17.    *Third*, Voya argues that the evidentiary record does not satisfy the standards under *Continental* with respect to the Plan's third-party releases.  Stay Motion ¶¶ 16, 18.  Voya is wrong.  This Court made a series of detailed factual findings under *Continental* (and citing *Master Mortgage*[7]) – on the basis of an uncontested evidentiary record – establishing that the Plan's third-party releases are fair and necessary to the reorganization and appropriate under the circumstances of these chapter 11 cases.  *See* Confirmation Ruling Tr. at 17:9-26:8 (series of factual findings establishing "fairness" and "necessity to the reorganization" under *Continental*).  Voya cannot show that it is likely to succeed on the merits regarding this argument.

---

[7]    *In re Master Mortg. Investment Fund, Inc.*, 168 B.R. 930 (Bankr. W.D.Mo. 1994).

**2.      Voya would not suffer irreparable harm if the stay motion is denied.**

18.      Voya's speculative harm in the absence of a stay pending appeal, if any, is negligible compared to the real and catastrophic harm that the Debtors, their employees and all other stakeholders will suffer if a stay is granted.  The uncontested evidentiary record is clear – unless the Plan, including the settlements and releases contained therein, is consummated before the government's December 30 deadline, government regulators *will* revoke the Debtors' Medicare billing rights and the Debtors would be forced to liquidate, their going concern value would disappear, and creditors would not be paid.  Accordingly, 413 prepetition lenders holding $1,634,546,879.96 of debt voted in favor of the Plan, including the third-party releases.  In all, approximately 99% of the Debtors' prepetition debt claims were voted, with more than 93% in both number *and* amount accepting the Plan.  Only Voya, alone, asserts that a liquidation and pursuing speculative litigation claims against the released parties is a better alternative.

19.      So, while Voya argues that it will be irreparably harmed in the absence of a stay because it will lose its speculative litigation claims (Stay Motion ¶ 19), the record demonstrates that every Class 2 lender except Voya determined that the certain and substantial recoveries provided under the Plan are more valuable than the uncertain litigation rights Voya seeks to preserve.  Indeed, the Court specifically found that "the value to be received by Class 2 creditors [is] reasonable compensation for [the third-party releases], as did over 90 percent of the prepetition lenders."  Confirmation Ruling Tr. at 24:10-13.  Voya's harm, if any, from losing its speculative litigation rights is minimal compared with the harm to the Debtors and all other parties in interest if the Plan cannot be consummated, and does not support a stay of the Confirmation Order.

**3.      Issuance of the stay will substantially injure the Debtors and other parties in interest.**

20.      The uncontested evidentiary record demonstrates that the Debtors, their employees, creditors and other stakeholders – including the equity holders and Consenting Lenders – will be substantially and irreparably harmed by a stay of the Confirmation Order.  *See* Confirmation Ruling Tr. at 7:14-12:14; 21:21-23:8; 23:23-24:18; 24:25-26:8 (factual findings regarding, among other things, severe detrimental impact of failure to consummate the Plan and government settlements).

21.      Specifically, the evidentiary record demonstrates that a stay pending appeal will effectively preclude the parties from funding the government settlements before the government deadline, resulting in revocation of the Debtors' Medicare billing privileges and a total wipe-out liquidation for all stakeholders and parties in interest.  Unsecured creditors would go from full recoveries to no recoveries. The Debtors' operations would cease to exist as a going concern and more than 1,000 jobs would be lost.  The evidentiary record shows that the value of the reorganized entity is in excess of $900 million – and all of that value would be lost if a stay pending appeal is issued.  *See* Confirmation Ruling Tr. at 24:3-9 (discussing unchallenged David Kurtz testimony regarding total enterprise value of reorganized debtors in excess of $900 million).  Moreover, if the Confirmation Order is stayed and, therefore, the Debtors are unable to close on the transactions provided for under the Plan, the $325 million substantial contribution by the equity holders will not be made, most of which would otherwise be distributed to the USA Settlement Parties and the Consenting Lenders.

22.      In the Stay Motion, Voya argues, contrary to the uncontested evidentiary record, that a stay of the Confirmation Order will "not impact the Debtors'

estates," that "the Opt-Out Lenders' appeal from the Confirmation Order will not impact the administration of the Debtors' estates," and that "other parties-in-interest will be unharmed by the relief requested herein because the Opt-Out Lenders, by their appeal, merely seek to adjudicate the rights of non-Debtors." Stay Motion ¶ 20. As the record shows, however, nothing could be further from the truth. *See* Confirmation Ruling Tr. at 25:4-8 (COURT: "While Voya would have me speculate as to other options, I do not see one. CMS will revoke the debtors' license, and there will be no ongoing business if payment is not made to the U.S.A. settlement parties by December 30th.").

23.     Voya is a lender under the Existing Credit Agreement, holding approximately $106.8 million of the debt. Voya Objection ¶ 1. Taking into account the recoveries to Voya under the confirmed Plan, its risk is capped at some figure well below $100 million. The Debtors, their employees, creditors and other stakeholders – including the equity holders and Consenting Lenders – on the other hand, are at risk for more than $1.125 billion if this Court issues a stay of the Confirmation Order.[8] The balance harms weighs heavily in favor of denial of the Stay Motion.

**4.     Issuance of the stay is not in the public interest.**

24.     Voya wrongly contends that the public interest is served by its effort to thwart an effective reorganization of the Debtors and global settlement for the benefit of the Debtors' constituents. Stay Motion ¶ 21 (arguing that the "public has an interest in correct application of the law"). To the contrary, the fundamental and

---

[8]     In the event of a liquidation if the Confirmation Order is stayed and closing on the Plan transactions does not occur, the estates, the creditors and the other parties in interest will lose the benefit of the equity holders' $325 million cash contribution plus more than $900 million of going concern enterprise value and, instead, likely will realize in the range of $100 million of liquidation value (*see* Disclosure Statement [D.I. 15] Exhibit I). $325 million + $900 million - $100 million = $1.125 billion.

overriding objective of a business reorganization in bankruptcy is to enable a debtor to preserve its business as a going concern. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.") (internal citation omitted).

25.     The uncontested evidentiary record shows that there is no alternative transaction to the confirmed Plan available to the Debtors that would allow their business to continue as a going concern or that would provide greater recoveries for creditors. *See* Confirmation Ruling Tr. at 25:4-8. The public is well-served by the continuation of the Debtors' business, which preserves jobs and a medical service provider that is essential to its health care provider customers and hundreds of thousands of down-the-line patients. The public is also served by the Debtors' successful use of the Bankruptcy Code to achieve its fundamental purpose. Jobs have been saved, substantial liabilities have been assumed and unsecured creditors will be paid.

26.     Moreover, there is a strong public interest in settlements and injunctions, such as those in the Debtors' Plan, which foster and further value-maximizing reorganizations. *See* Hr'g Tr. at 16-17, *In re ATLS Acquisition, LLC*, No. 13-10262 (LSS) (Bankr. D. Del. July 16, 2015) (explaining that there is a public interest in favor of settlements embodied in chapter 11 plans); *In re Union Trust Philadelphia*, 465 B.R. 765, 774 (Bankr. E.D. Pa. 2011) (public interest factor weighed in favor of injunction since plan would not be confirmed without it); *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 383 (Bankr. E.D. Pa. 2009) (fostering reorganization serves "one of the most important public interests"); *In re Labrum & Doak, LLP*, 237

B.R. 275, 307 (Bankr. E.D. Pa. 1999) (public interest factor weighed in debtors' favor

where injunction would allow for payment of creditors in an orderly manner and

conserve priority structure of payments and therefore further public policy by protecting

distribution scheme of reorganization plans); *In re PTI Holding Corp.*, 346 B.R. 820, 832

(Bankr. D. Nev. 2006) (public interest favors successful reorganizations as "the

Bankruptcy Code itself would be unnecessary if simple debt collection was the only

legitimate interest").

   27. It is also in the public interest to encourage the kind of global

negotiations that occurred here, where all significant parties in interest, including Voya,

had seats at the table, no one was excluded, complex arm's-length negotiations went on

for months, and a nearly unanimous settlement agreement was reached.  These kinds of

good faith efforts in difficult and hotly contested situations should be encouraged.  If,

under the circumstances here, a holdout spoiler can nevertheless overturn what is

otherwise a fully consensual $1+ billion reorganization by obtaining a deal-killing stay

pending appeal, such inclusive settlement negotiation efforts will only be discouraged.

Thus, the issuance of stay is not in the public interest.

**B. In The Event Of A Stay, A Substantial Bond Should Be Required To Protect The Debtors And Parties In Interest.**

   28. Even if Voya had carried its heavy burden of proving entitlement

to the extraordinary remedy of a stay pending appeal – and it has not – any stay would

have to be conditioned on Voya posting a supersedeas bond in an amount sufficient to

protect the Debtors, their employees, their creditors and other stakeholders against the

wipe-out liquidation they will suffer as a result of the stay.  *In re Adelphia Commc'ns

Corp.*, 361 B.R. 337, 350-51, 368 (S.D.N.Y. 2007) (requiring appellants to "post a

substantial bond that is commensurate with the threatened loss to the non-moving parties"

and that protects the prevailing parties "against any loss that might be sustained as a

result of an ineffectual appeal" (citation omitted)).[9]  Voya is not entitled to a free

"litigation option" to pursue its appeal without any obligation to make the Debtors and

their creditors whole in the event it is unsuccessful on appeal.  Simply put, once an order

of confirmation has been entered, the costs and risks of delay shift to the unsuccessful

litigant who seeks to continue in the courts.

29.    Thus, a bond in the full amount of the potential harm to the non-

moving parties is required to protect and compensate the Debtors, their employees,

creditors and all other stakeholders – including the equity holders and Consenting

Lenders – for any and all potential harm arising from or during the stay.  *See, e.g.,*

*Adelphia*, 361 B.R. at 368 and 368 n.166 (in concluding that a $1.3 billion appeal bond

was required as a condition to staying confirmation order on appeal, the District Court

held that such substantial bonds are "required where the financial risks justified bonds of

that size"); *see also In re General Motors Corp.*, 409 B.R. 24, 34 (Bankr. S.D.N.Y. 2009)

(noting that if stay were granted, court would require bond of at least $7.4 billion in light

of potential losses to non-moving parties).

30.    In *In re Tribune Co.*, this Court evaluated numerous methods for

calculating the amount of a bond required before a stay pending appeal can issue.  *In re*

---

[9]     Voya is not entitled to a stay merely by offering to post an adequate bond – and it has not even done
that.  Unlike in normal civil litigations, where a stay is available as a matter of right to an appellant
willing to post a bond, there is no automatic right to a stay in the context of an order confirming a plan
of reorganization.  *See, e.g., In re Capital West Investors*, 180 B.R. 240, 245 (N.D. Cal. 1995)
("[B]ecause an order of confirmation is not a money judgment or the like, HUD is not entitled to a stay
as a matter of right in appealing the bankruptcy court's order confirming the Plan").  Rather, an
appellant from a plan confirmation order must satisfy the four factors described above; Voya has not
done so.

*Tribune Co.*, 477 B.R. 465, 479-80 (Bankr. D. Del. 2012).  Although this Court ultimately relied upon the approach "pressed hardest" by certain plan proponents, the "post-emergence equity value" and the "difference between the reorganization and liquidation value" were both found to be reasonable and justifiable bases for fixing the appropriate amount of a supersedeas bond.  *Id.* at 482.  Here, the uncontested evidentiary record demonstrates, under the confirmed Plan, that the equity holders will make a $325 million cash contribution to the Debtors, which will have a $900+ million going concern value, as compared to $100 million or less to be achieved in a liquidation.  This does not account for the fact that, in the event of a stay and a liquidation, more than 1,000 people will lose their jobs and doctors and patients throughout the country will lose a skilled and valuable medical service provider.  Under these circumstances, the proper amount of the bond should be no less than $1.125 billion.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) deny the Stay Motion and (ii) grant such other relief as may be just and proper.

Dated:    Wilmington, Delaware
          December 16, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Anthony W. Clark*
Anthony W. Clark (I.D. No. 2051)
Jason M. Liberi (I.D. No. 4425)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000

- and -

Kenneth S. Ziman
Raquelle L. Kaye
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

- and -

Felicia Gerber Perlman
Matthew N. Kriegel
155 N. Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700

*Counsel for Debtors and Debtors in Possession*

778387-WILSR01A - MSW