## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MILLENNIUM LAB HOLDINGS II, LLC,<br>*et al.*<br><br>                    Debtors. | Chapter 11<br><br>Case No. 15-12284 (LSS)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 312, 325, 326, 327, 328, and 330**<br><br>**Hearing Date:**<br>**May 4, 2016 at 11:00 a.m. (prevailing ET)** |

## PLAN TRUSTEE'S OMNIBUS
## REPLY TO OBJECTIONS TO THE
## MOTION OF THE PLAN TRUSTEE FOR AUTHORITY
## TO TAKE TARGETED DISCOVERY, PURSUANT TO THE
## DEBTORS' CONFIRMED PLAN OF REORGANIZATION, CONFIRMATION
## ORDER, BANKRUPTCY CODE SECTION 105(a) AND BANKRUPTCY RULE 2004

Marc S. Kirschner, in his capacity as Trustee of the Plan Trusts, respectfully submits this omnibus reply (the "Reply") to the objections of (a) JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and Simpson Thacher & Bartlett LLP [Docket No. 325] (the "JPM/STB Objection"); (b) SunTrust Bank [Docket No. 326] (the "SunTrust Objection"); (c) Citigroup Global Markets Inc. [Docket No. 327] (the "Citi Objection"); (d) Bank of Montreal and BMO Capital Markets Corp. [Docket No. 328] (the "BMO Objection"); and (e) KPMG LLP [Docket No. 330] (the "KPMG Objection" and collectively with the foregoing, the "Objections")[1] opposing the *Motion of the Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan of Reorganization, Confirmation Order, Bankruptcy Code Section*

---

[1]    In this Reply, "Objectors" refers collectively to:  (i) JPMorgan Chase Bank, N.A. ("JPMC Bank"); (ii) J.P. Morgan Securities LLC; (iii) SunTrust Bank ("SunTrust"); (iv) Citigroup Global Markets Inc. ("Citi"); (v) Bank of Montreal; (vi) BMO Capital Markets Corp. (together with the foregoing (i) through (v), the "Bank Objectors"); (vii) Simpson Thacher & Bartlett LLP; and (viii) KPMG LLP.

105(a) and Bankruptcy Rule 2004 [Docket No. 312] (the "Motion").[2]  In support of this Reply,

the Trustee also submits: (a) the *Declaration of Sigmund S. Wissner-Gross in Support of*

*Trustee's Motion for Rule 2004 Discovery* (the "SWG Declaration"), attached hereto as **Exhibit**

**A**; and (b) the *Declaration of Jeffrey Coviello in Support of Trustee's Motion for Rule 2004*

*Discovery* (the "Coviello Declaration"), attached hereto as **Exhibit B**. In response to the

Objections and in further support of the Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.       Bankruptcy Rule 2004 discovery is not only jurisdictionally proper, it is critical in

this situation.  Not a single Objector refutes (nor could it refute) any of the following:  (1) each

of the Objectors played an important role in the billion-dollar capital raise and extraordinary

dividends that likely rendered the Debtors insolvent and each had private interactions with the

Debtors in connection with same; (2) the federal government's regulatory and enforcement

actions against the Debtors, coupled with obstructionist behavior by the JPM Entities, made it

impossible for creditors to conduct diligence and investigate potential claims against third parties

prior to confirmation; (3) given the restraints, the creditors took the only available and pragmatic

course – specifically reserving in the Plan the means and opportunity (frankly, the only

opportunity available) to conduct an appropriate "facts and circumstances" investigation post-

confirmation; (4) the Plan provides for "Excluded Parties" that are the targets of potential claims

of the Plan Trusts and the information now held by the Objectors bears directly on such

Excluded Parties' conduct; and (5) the Trustee's instant Motion is designed to ensure that the

Plan and Plan Trusts function properly, to evaluate estate claims and whether they warrant

prosecution, and to deal with indemnification/contribution/fee claims that already have been

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

asserted by some of the Bank Objectors and their counsel. <u>See</u> SWG Decl. ¶¶ 11, 13, Ex. 4 and 5. The Objections do not, in sum, contest the facts undergirding the Motion.

2.    The Objectors instead advance three "straw men" arguments in their attempt to evade disclosure. First, they contend that this Court lacks subject matter jurisdiction to grant the relief requested because a Bankruptcy Rule 2004 motion is, according to their pleadings, a "non-core" matter and this Court's post-confirmation "related-to" jurisdiction has narrowed to a point where they are fully shielded from Bankruptcy Rule 2004's reach. This argument is wrong. A Bankruptcy Rule 2004 motion is assuredly a "core" matter, even post-confirmation, and ample authorities say so. That is especially true, given that the facts to be discovered will bear directly on, among other things, the Corporate Trust's evaluation of: (i) whether the $55 million in fees paid to the Excluded Parties in the 2014 recapitalization constituted a fraudulent transfer under Bankruptcy Code Section 28 U.S.C. § 157(b)(2)(H); and (ii) the indemnification/contributions/fee reimbursement claims already asserted by, among others, the Objectors. <u>See</u> 28 U.S.C. § 157(b)(2)(B) and (C).

3.    These core matters also expose the Objectors' second straw man argument – that the Trustee's Bankruptcy Rule 2004 Motion is intended to further (as a veiled litigation tactic) fraud-based claims vested only in the Lender Trust, not any claims of the Corporate Trust. This is incorrect. The discovery in the Motion is squarely aimed at investigating non-released individuals and entities (<i>i.e.</i>, the Excluded Parties) that either directly committed or aided and abetted breaches of fiduciary duty, corporate mismanagement and waste, fraud and fraudulent transfer, and/or whose claims are subject to equitable subordination, all of which benefits the Corporate Trust. As noted above, the Corporate Trust also bears responsibility for objecting to

claims to be asserted against the bankruptcy estates by, among other third-parties, the Bank Objectors sounding in indemnification/contribution/fee reimbursement

4.      But, even if plan confirmation somehow magically converts a "core" matter into a "non-core" matter, the Court certainly retains subject matter jurisdiction to render the relief requested:  The Trustee's investigation was intentionally preserved by the Plan against all the Objectors and other "Excluded Parties."  The discovery is directed towards process integrity, plan administration, and claims adjudication; enables a thoughtful utilization of legacy estate resources; and, in sum, bears a "close nexus" to the Plan forged in these cases, under exigent and otherwise unusual circumstances.

5.      Sensitive to the defects of their jurisdictional challenge, the Objectors advance the third and alternative straw man argument that the document requests are unnecessary, overbroad, and unduly burdensome.  It is true that the Trustee's discovery requests (the "<u>Document Requests</u>") are probing, but that is for good reason.  The breadth and burden of a Bankruptcy Rule 2004 request *should* be evaluated contextually, with due consideration here of the centrality of the role played by the Objectors in the Debtors' pre-petition collapse, including their knowledge of the insiders' serious conduct prosecuted by the DOJ and their communications not shared with the insiders about their simultaneous participation in the recapitalization transactions that accelerated that collapse.

6.      The Objectors are, to be frank, in a rather poor position to plead for equity.  They: (i) had direct involvement in matters that, today, give reason for suspicion of serious wrongdoing; (ii) are in possession of documents not shared with the Debtors bearing directly on these matters; (iii) have hidden behind government-imposed exigencies that rendered impossible the ability of any party-in-interest to seek pre-confirmation Bankruptcy Rule 2004 relief; and (iv)

now have the temerity to obstruct post-confirmation discovery by interposing jurisdictional objections and by standing on general claims of "burden," instead of earnestly engaging with the Trustee and his counsel to negotiate what could be an agreeable scope for discovery.

7.      Lastly, KPMG's contention that the Trustee's Bankruptcy Rule 2004 discovery requests are subject to arbitration is belied by the plain language of the very same arbitration clause and case law KPMG cites. As the Debtors' auditor, KMPG has statutory duties to turn over documents to the Trustee and its role with respect to the Debtors' financial statements is at the core of the Trustee's investigation.

8.      For these reasons, as more fully discussed herein and in the Motion, the Trustee respectfully requests that the Court enter an Order awarding the relief requested in the Motion.

## ADDITIONAL BACKGROUND FACTS

9.      For efficiency's sake, the Trustee herein incorporates the factual recitation and attendant evidentiary support from the Motion.

10.      That said, the Objectors advance as "fact" certain contentions that need to be addressed here. First, the JPM Entities and Simpson Thacher state that they were particularly helpful and provided much disclosure to the Lenders before confirmation. Though the Motion acknowledges certain communications with the JPM Entities and Simpson Thacher pre-confirmation, these Objectors vastly overstate the nature and extent of their disclosure. The SWG Declaration attests to, among other things: (a) the JPM Entities' refusal to produce critical documents requested in the pre-confirmation due diligence investigation, see SWG Decl. ¶ 5; (b) the JPM Entities' refusal to make their personnel available for interviews during the pre-confirmation investigation, see SWG Decl. ¶ 6; (c) Simpson Thacher's refusal to produce any documents requested in the pre-confirmation investigation, see id.; (d) JPMC Bank's refusal to

step down as Administrative Agent under the 2014 Credit Agreement when requested by the Lenders, see SWG Decl. ¶ 3; and (e) the restricted nature of the Lenders' counsel's communications with Simpson Thacher and JPMC Bank, see SWG Decl. ¶ 7.

11.    Second, KPMG claims that Lenders' counsel never attempted consensual discovery prior to confirmation.  That is incorrect.  The SWG Declaration provides a copy of correspondence indicating that KPMG flatly refused to provide work papers and other relevant documents to the Lenders' counsel when asked in connection with the pre-confirmation investigation.  See SWG Decl. ¶ 10, Ex. 2.

12.    Finally, the Trustee respectfully refers the Court to the Coviello Declaration submitted herewith for the facts surrounding the Objectors' frustration of the Trustee's post-confirmation efforts to obtain consensual discovery.  As the Coviello Declaration shows, the Objectors' contention that they attempted "to amicably resolve the issues raised in the Motion" (BMO Objection, at 1) cannot be squared with reality and the Objectors' actions in fact left the Trustee with no choice but to make the Motion.

## REPLY

### I.    THE OBJECTIONS SHOULD BE OVERRULED BECAUSE A BANKRUPTCY RULE 2004 MOTION IS A "CORE" MATTER, THUS RENDERING THE OBJECTORS' JURISDICTIONAL ARGUMENTS MISGUIDED.

13.    Relying heavily on the Third Circuit's Resorts decision, the Objectors repackage the Motion as – not a request for Bankruptcy Rule 2004 discovery – but rather an argument about whether the Bankruptcy Court has jurisdiction over a hypothetical post-confirmation lawsuit against third parties.  This argument is misplaced.

14.    A contested Bankruptcy Rule 2004 motion is a judicial occurrence only possible "arising under" or "arising in" a bankruptcy case.  A matter will "arise under" a bankruptcy case

"if the Bankruptcy Code creates the cause of action or provides the substantive right invoked"
and will "arise in" a bankruptcy case if the matter "by its nature, and not the particular factual
circumstances, could arise only in the context of a bankruptcy case." See In re New Century TRS
Holdings, Inc., 505 B.R. 431, 441 (Bankr. D. Del. 2014) (quoting Stoe v. Flaherty, 436 F.3d 209,
217-18 (3d Cir. 2006)) (internal quotations omitted).  It is incontrovertible that Bankruptcy Rule
2004 "is a rule of *bankruptcy* procedure, and therefore the right to discovery under Rule 2004
does not exist 'independent of a bankruptcy environment.'"  Credit Suisse Secs. (USA) LLC v.
Official Comm. of Unsecured Creditors (In re Refco, Inc.), Case No. 06-1888 (GEL), 2006 WL
1379616, at *2 (S.D.N.Y. May 16, 2006) (emphasis in original).  Stated differently, it is a
judicial occurrence that can only exist in the context of bankruptcy case and is a central and
essential element of the bankruptcy process.  In re Refco, Inc., 2006 WL 1379616, at *2 ("Rule
2004 discovery is of central importance to the bankruptcy case, and is truly core in that it is
essential . . . to the proper administration of [the bankruptcy case] to pursue the investigation . . .
.") (internal quotations omitted).  It is, therefore, a "core" matter by definition.  See id. ("The
Committee's Rule 2004 motion is a core proceeding . . . [because] the investigation into the
possible existence of those yet-to-be-determined claims is purely a bankruptcy matter, and is
therefore properly categorized as core."); In re Recoton Corp., Case No. 04-2466 (DLC), 2004
WL 1497570, at *4 (S.D.N.Y. Jul. 1, 2004) ("The discovery sought by the Committee pursuant
to Rule 2004 is properly characterized as a core proceeding."); In re Drexel Burnham Lambert
Grp., Inc., 123 B.R. 702, 704 n.1 (Bankr. S.D.N.Y. 1991) (Bankruptcy Rule 2004 discovery is a
core proceeding).

15.    Bankruptcy Rule 2004 is not limited to the Debtors or their successor, the
Corporate Trust.  The rule states that:  "On motion of *any party in interest*, the court may order

7

the examination of any entity." Fed. R. Bankr. P. 2004(a) (emphasis added).  Any party in interest under Bankruptcy Rule 2004 includes those "whose pecuniary interest is directly affected by the bankruptcy proceeding." In re Martino, Case No. 11-31115 (MER), 2011 WL 5856327, at *2 (Bankr. D. Colo., Nov. 17, 2011).  But for the exigencies of these Chapter 11 cases, the Lenders separately or through a committee could have sought Bankruptcy Rule 2004 examinations for the purpose of "determining the nature and extent of the bankruptcy, revealing assets, examining transactions and assessing whether wrongdoing has occurred." In re Almatis B.V., Case No. 10-12308, 2010 WL 4877868, at *4 (Bankr. S.D.N.Y. Nov. 24, 2010).

16.    This is true even if the matters being discovered per Bankruptcy Rule 2004 pertain to causes of action that are "non-core" or that the bankruptcy court lacks Constitutional power to adjudicate.  In re Refco, Inc., 2006 WL 1379616, at *2 ("If, as a result of [the Bankruptcy Rule 2004] investigation, the committee decides to bring certain claims against certain parties, then, indeed, *those claims* may be non-core" but does not affect finding that Bankruptcy Rule 2004 motion itself was a "core" proceeding) (emphasis in original); In re Table Talk, Inc., 51 B.R. 143, 146 (Bankr. D. Mass. 1985) ("the Court need not rule on the issue [of mandatory withdrawal] since without an anti-trust action pending, the matter is not properly before the Court.  Even assuming *arguendo* that such a suit, when and if it is filed, would be subject to mandatory withdrawal, it does not logically follow that a Rule 2004 examination would, at this time, be precluded by a future contingency.").

17.    Bankruptcy Rule 2004 applies even if the motion is brought post-confirmation. See, e.g., In re East West Resort Dev. V, L.P., L.L.L.P., Case No. 10-10452 (BLS), 2014 WL 4537500, at *6 (Bankr. D. Del. Sept. 12, 2014).  East West Resort involved three Bankruptcy Rule 2004 motions brought after a case had been closed then re-opened to deal with the motions.

See id. at *1.  The bankruptcy court held that consideration of the three Bankruptcy Rule 2004

motions "constitutes a 'core proceeding.'" Id. at *6; see also ePlus Inc. v. Katz (In re Metiom

Inc.), 318 B.R. 263 (S.D.N.Y. 2004) (denying appellants' motion to stay order of bankruptcy

court that permitted creditor trustee to take post-confirmation Bankruptcy Rule 2004 discovery

from a third party to determine whether any causes of action existed); In re Coffee Cupboard,

Inc., 128 B.R. 509, 517 (Bankr. E.D.N.Y. Jul. 10, 1991) (concluding that the bankruptcy court

had jurisdiction over a post-confirmation Bankruptcy Rule 2004 motion "as it is a core

proceeding concerning the administration of the estate"); Matter of Sun Med. Mgmt., Inc., 104

B.R. 522, 524 (Bankr. M.D. Ga. 1989) (permitting debtor's request for post-confirmation

Bankruptcy Rule 2004 examination because the "alleged fraud, if proven, had been perpetrated

upon Sun, and Sun's judgment against Carrollwood is a substantial, if not only, asset of Sun's

bankruptcy estate").

18.    Even if, *arguendo*, the Court is required to examine the potential underlying

action, that test would be satisfied here because the Trustee is investigating "core" claims.

Under 28 U.S.C. § 157(b)(2), the "core" matters that a bankruptcy court has subject matter

jurisdiction to consider include, among other things:  (i) "(B) allowance or disallowance of

claims against the estate;" "(C) counterclaims by the estate against persons filing claims against

the estate;" and "(H) proceedings to determine, avoid, or recover fraudulent conveyances." See

Shubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.), 348 B.R. 234, 245-46 (Bankr. D.

Del. 2005) ("The 'allowance or disallowance of claims against the estate' is one of the

specifically enumerated types of actions which fall within the express definition of core

proceeding."). The discovery sought in the Motion seeks to investigate each of these types of

claims.

19.    For example, the Trustee seeks to investigate any and all claims against the Bank Objectors related to claim allowance, counterclaims, and indemnification claims, which are "core" proceedings under 28 U.S.C. § 157(b)(2)(B) and (C).  The Bank Objectors have in fact already sought indemnification from the reorganized Debtors, making requests for reimbursement of professional fees.  See SWG Decl. ¶ 13, Ex. 4 and 5.  Additionally, the Bank Objectors have also sought clarification of their Allowed Claims under the Plan.  See SWG Decl. ¶ 11.    In order to determine the allowance or disallowance of such claims or related counterclaims, the Trustee (as successor in interest to the estate causes of action) must be permitted to conduct a fulsome investigation of such claims, including any and all potential wrongdoing or misconduct by the Bank Objectors that give rise to affirmative claims against the Bank Objectors.

20.    Additionally, the Trustee seeks to investigate potential fraudulent transfer claims against the Bank Objectors, which are also "core" proceedings under 28 U.S.C. § 157(b)(2)(H).  In connection with the 2014 Credit Agreement, the Bank Objectors received at least $55 million in fees.  As set forth in the Motion, the 2014 Credit Agreement was effectuated under very suspicious circumstances:  (i) less than two months after the 2014 Credit Agreement was executed, the Debtors were found liable to a major competitor for $11.2 million on account of illegal sales practices, see Motion ¶ 15; (ii) eight months after the 2014 Credit Agreement was executed, the DOJ indicated that it would pursue claims against the Debtors and shortly thereafter filed a complaint alleging violations under the False Claims Act, the Stark Law, and the Anti-Kickback Statute, see Motion ¶ 16; (iii) shortly thereafter, CMS notified the Debtors that they intended to revoke the Debtors' Medicare billing license, see Motion ¶ 17; and (iv) only 13 months after execution of the 2014 Credit Agreement, the Debtors agreed to a $256 million

settlement with DOJ. See Motion ¶ 19. Accordingly, the Trustee must investigate: (i) whether the Debtors were rendered insolvent by the 2014 Term Loan which may present a constructive fraudulent transfer claim to claw back the Bank Objectors' fees, see 11 U.S.C. § 548(a)(1)(B); and (ii) due to these suspicious events, whether there was any "actual intent to hinder, delay or defraud" or any misrepresentations which may present an intentional fraudulent transfer claim. See 11 U.S.C. § 548(a)(1)(A).

21.    Confirmation does not magically transform a statutorily-delineated "core" matter into a "non-core" matter. This a far different situation from Resorts and its progeny, where the matter at issue was the actual prosecution of an estate cause of action.[3] The Third Circuit's Resorts decision has no bearing on the adjudication of a "core" matter, like the Trustee's Bankruptcy Rule 2004 Motion. Based on the above, the Court most assuredly has subject matter jurisdiction over this Motion as a "core" proceeding, and ample authority to support such a ruling. The Objections should be overruled, and the Motion should be granted.

---

[3]    See, e.g., In re Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 239 (3d Cir. 2007) (creditors filed post-confirmation state court malpractice action against debtors' accountants); In re Am. Home Mortg. Holding, 477 B.R. 517, 532 (D. Del. 2012) (the debtors' private mortgage insurer filed a post-confirmation complaint against non-debtors seeking rescission of its contract obligations); In re BWI Liquidating Corp., 437 B.R. 160, 163 (Bankr. D. Del. 2010) (liquidating trust filed adversary proceeding to recover for third party's alleged post-petition breach of contract with debtor); In re ACandS, Inc., Case No. 02-12687 (JKF), 2011 WL 744913, at *1 (Bankr. D. Del. Feb. 23, 2011) (trustees filed adversary proceedings seeking, among other things, construction and interpretation of the plans of reorganization and a preliminary injunction enjoining the continuation of discovery against the trusts); In re Insilco Techs., Inc., 330 B.R. 512, 515-16 (Bankr. D. Del. 2005) (liquidating trustee filed adversary proceedings asserting preference and fraudulent transfer claims and state law unjust enrichment and deepening insolvency claims); In re DPH Holdings Corp., 448 Fed.Appx. 134, 136 (2d Cir. 2011) (debtor's insurers filed adversary proceeding seeking declaratory judgment that their policies did not provide workers' compensation coverage for the debtor's employees post-confirmation); ML Servicing Co., Inc. v. Greenberg Traurig, LLP, Case No. CV-11-0832-PHX-DGC, 2011 WL 3320916, at *1 (D. Az. Aug. 2, 2011) (liquidating trustee filed adversary proceeding alleging legal malpractice and breach of fiduciary duty claims); In re Heller Ehrman LLP, 461 B.R. 606 (Bankr. N.D. Cal. 2011) (liquidating debtor filed a post-confirmation complaint to recover an account receivable and for breach of contract and quantum meruit); In re The Fairchild Corp., 452 B.R. 525 (Bankr. D. Del. 2011) (liquidating trustee filed two adversary proceedings against the NYSDOT and New York State asserting claims for breach of contract and regulatory taking, among other things).

II.    **THE OBJECTIONS SHOULD BE OVERRULED, EVEN IF THE COURT FINDS THAT THE MOTION IS A "NON-CORE" MATTER, BECAUSE THE RELIEF REQUESTED BEARS A "CLOSE NEXUS" TO THE PLAN.**

22.    Even if the Court finds that the Motion is a "non-core" proceeding (which it should not), the Court should nonetheless grant the relief requested because it bears a "close nexus" to the Plan, such that the Court has sufficient "related to" jurisdiction over the Motion.

23.    As a general matter, "the federal district courts have original and exclusive jurisdiction of all cases under [the Bankruptcy Code] but may refer to bankruptcy judges any proceedings arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code]." Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 134 S.Ct. 2165, 2171 (2014) (quoting 28 U.S.C. §§ 1334(a), 157(a)) (internal quotations omitted). The Supreme Court has held that "[p]roceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 307 n.5 (1995). Consistent with the Supreme Court, it is well-established in the Third Circuit that bankruptcy courts enjoy broad "related to" jurisdiction in the pre-confirmation context, stating that an action is "related to" a bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). The Third Circuit has further explained that an "action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and . . . in any way impacts upon the handing and administration of the bankruptcy estate." Id.

24.    The Objectors argue that the Court does not have "related to" jurisdiction over the Motion because the discovery relates only to potential lender claims and not claims of the Debtors' estates. See JPM/STB Objection ¶ 16 ("The potential claims described in the Motion arise out of alleged misrepresentations or omissions made by Millennium in connection with the

2014 Credit Agreement, and any such claims are claims of the Lenders, not of Millennium itself."). This is both false and misleading. Although the Motion does not speculate as to what estate claims and causes of action there might be, the Document Requests seek information relevant to many potential estate claims as well as potential lender claims, including, but not limited to: (a) aiding and abetting fraud; (b) breaches of fiduciary duties and aiding and abetting breaches of fiduciary duties; (c) state law fraudulent conveyance claims; and (d) various other commercial tort claims.[4] Although the Debtors' former shareholders and directors have been released under the Plan from all claims related to the 2014 Credit Agreement including fraud and breach of fiduciary duty claims, the Delaware Court of Chancery has held that the finding of a breach of fiduciary duty is a sufficient predicate for third-party aiding and abetting liability, even if the breaching party itself would not be monetarily liable. See In re Rural Metro Corp. Stockholders Litig. 88 A.3d 54, 87 (Del. Ch. 2014) (finding that exculpation of directors and officers "does not extend to an aider and abettor" as a joint tortfeasor). Accordingly, the Trustee should be able to investigate whether the Objectors aided and abetted a fraud as a joint tortfeasor perpetrated by the Debtors' former shareholders, or a breach of fiduciary duties of the Debtors' former directors, officers and shareholders that resulted in significant harm to the Debtors.

25.    In the post-confirmation context, however, the Third Circuit has narrowed the scope of "related to" jurisdiction, stating that:

---

[4]    There is no reason why the Trustee cannot seek discovery and bring pre-petition state law claims and causes of action of the Debtors' estates in this Court because the Court, even if it cannot enter a final judgment, can submit proposed findings of fact and conclusions of law to the district court. See Chorches for Estate of Scott Cable Commc'ns, Inc. v. U.S. Bank Nat'l Assoc., Case No. , 2014 WL 5280002, at *4 (Bankr. D. Del. Oct. 15, 2014) ("As long as a Stern claim is otherwise related to a case under title 11, the bankruptcy court may hear the claim pursuant to 28 U.S.C. § 157(c)(1) and submit proposed findings of fact and conclusions of law to the district court.") (citing Executive Benefits Ins. Agency v. Arkinson (Matter of Bellingham Ins. Agency, Inc.), 702 F.3d 553, 562 (9th Cir. 2012)).

> [T]he jurisdiction of the non-Article III bankruptcy courts is limited after confirmation of a plan. But where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate.

In re Resorts Int'l, Inc., 372 F.3d 154, 166-67 (3d Cir. 2004). Additionally, if the bankruptcy court has jurisdiction under 28 U.S.C. §§ 1334 and 157, the Third Circuit further held that "we will give effect to retention of jurisdiction provisions" in the Chapter 11 plan of reorganization. Id. at 161. Indeed, when "a court decide[s] that a proceeding falls within one of the narrower categories of jurisdiction, such as 'arising in' jurisdiction, . . . 'related to' jurisdiction and the corresponding 'close nexus' test are not implicated." See Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007).

26.    In the JPM/STB Objection, to which all of the other Objectors have joined, the Objectors argue that "[t]his Court lacks 'related to' jurisdiction' to authorize the discovery sought by the Litigation Trustee . . . [because] the alleged claims the Litigation Trustee wishes to further investigate do not have a 'close nexus' to the post-confirmation bankruptcy proceedings." JPM/STB Objection ¶ 9. This argument fails for several reasons.

27.    First, the Trustee's investigation does not require the "close nexus" test to be satisfied because, as explained in Section I above, it involves the investigation of "core" matters, which is a category of "arising in" jurisdiction and thus an independent jurisdictional basis to authorize the discovery.

28.    Second, as discussed above, the matter before the Court is a discovery motion, not a complaint or adversary proceeding seeking a final determination by the Court on the merits of underlying claims. The JPM/STB Objection cites several cases in support of their argument that claims against the Objectors do not have a "close nexus" to the Plan. See JPM/STB Objection ¶¶

12-16. But the Trustee has not filed any complaints against any of the Objectors. Accordingly, the Objectors' "related to" arguments are a red herring because the Court is not being asked to determine whether the Trusts' causes of action against the Objectors are sufficiently "related to" the Chapter 11 cases for the Court to adjudicate them. In each of the cases cited in the JPM/STB Objection, the trustee actually filed a complaint and the bankruptcy court had to determine whether it had "related to" subject matter jurisdiction to adjudicate that particular action. See n.5 supra. The Motion does not ask the Court to make such a determination. The only issue here is whether this Court has subject matter jurisdiction over a Bankruptcy Rule 2004 motion. Because *not one* of the cases cited in the Objections addresses "related to" jurisdiction with respect to a Bankruptcy Rule 2004 motion, they are all irrelevant and serve only to obfuscate the threshold discovery issues before the Court that are presented in the Motion. In short, the Objectors' "related to" subject matter jurisdiction arguments are misplaced and premature.

29.    Third, the Objectors' desire for more specificity in the Plan (and feigned shock at receiving the Document Requests) is disingenuous. The Objectors argue that "neither the Plan nor the Confirmation Order provides specifically for the retention of jurisdiction with respect to prosecution of claims against the 'Excluded Parties,' or with respect to Bankruptcy Rule 2004 examinations sought by the Litigation Trustee." See JPM/STB Objection ¶ 11 n.10. This argument completely ignores potential estate and direct lender claims were expressly reserved and the Objectors are expressly named as "Excluded Parties" from the Plan releases. It also ignores the broad retention of jurisdiction provisions in the Plan, which include the retention of jurisdiction to "decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date *or that may be commenced in the future*." Plan, Art. IX(A)(vi) (emphasis added). Here, the Court has before it

a discovery motion related to Retained Claims (which are included in the definition of Causes of Action under the Plan) that the Trustee may commence in the future against the Objectors as "Excluded Parties." The Motion is exactly the type of proceeding for which this Court has retained jurisdiction under the Plan.

30. For all these reasons, the Court has jurisdiction to grant the discovery sought in the Motion.

### III. THE OBJECTIONS SHOULD BE OVERRULED BECAUSE THE DISCOVERY REQUESTED IS APPROPRIATELY TAILORED TO THE CIRCUMSTANCES OF THE CASE.

#### A. The Objectors Misstate: The Nature Of The Trustee's Inquiry; The Level And Nature Of Their Cooperation To Date; The Present Opportunity For the Trustee To Obtain A Full Understanding; And The Seriousness Of the Factual Issues Undergirding This Chapter 11 Case.

31. The Trustee has a large and important job to do to administer the assets of the Plan Trusts. The Motion is not about taking "court-ordered pre-suit discovery" as the Objectors suggest. See JPM/STB Objection ¶ 22. Nor is the Motion only concerned about "the Lenders' claims against third parties and not Millennium's claims." See JPM/STB Objection ¶ 19. There is much more at work here than the Objectors' narrowly presented view.

32. The Objectors argue that, even if the Court has jurisdiction, it should exercise its discretion to deny the Motion for failing to show good cause. See JPM/STB Objection ¶ 17. The Objectors argue that the Trustee's counsel "conducted an extensive investigation in 2015 and already interviewed Millennium, its principal stockholders and JPMC" and provided "thousands of documents 'totaling approximately 70,000 pages' before the petition date." JPM/STB Objection ¶ 21. Based on this investigation, the Objectors conclude that "this extensive discovery record . . . should be more than sufficient to enable the Litigation Trustee to evaluate and pursue any putative causes of action that accrued to the Corporate Claims Trust and were not

released by the Plan . . . ." Id. Furthermore, the Objectors argue that "[n]o Bankruptcy Rule 2004 discovery was sought during the proceeding and before Plan confirmation" and that the Trustee has waited over four months since confirmation of the Plan to seek discovery under Bankruptcy Rule 2004. Id. at ¶ 4.

33.    This characterization conveniently disregards the key facts and circumstances of these Chapter 11 cases, which the Trustee explained in detail in paragraphs 10-34 of the Motion. As described in the Motion, these Chapter 11 cases were driven by a government-imposed "drop-dead" deadline of December 30, 2015 to both confirm and consummate the Plan. From the Petition Date to the December 30 deadline, the Debtors had only 51 days to consummate the Plan or it would no longer exist as a going concern. Even if Bankruptcy Rule 2004 discovery was sought by the Debtor or other parties-in-interest on the Petition Date, it would have been impossible to both complete such discovery and consummate the Plan prior to the December 30 deadline. It is grossly disingenuous for the Objectors to now say that Bankruptcy Rule 2004 discovery should have been sought prior to confirmation of the Plan and that it cannot be sought now. As set forth in the Motion, the Plan was specifically negotiated to allow the Trustee to investigate the Retained Claims post-confirmation precisely because of the impossible time constraints imposed by the government. The Objectors are now serendipitously using the government's "drop dead" deadline as a cover to avoid having to produce documents and information relevant to various estate and Lender causes of action that would have otherwise been discoverable during the Chapter 11 cases. This Court should not allow them to do so.

34.    Furthermore, the Objections attempt to emphasize that the investigation by the Ad Hoc Committee was more than sufficient by overstating the nature of information received by the Lenders' counsel prior to confirmation and the level of cooperation by the JPM Entities and

Simpson Thacher.  It is true that the reorganized Debtors are required to share information with the Trustee and that the Lenders' counsel received approximately 70,000 pages of documents. But many of the Debtors' knowledgeable employees are gone and not likely to cooperate with the Trustee's investigation.  Furthermore, the Lenders' receipt of 70,000 pages of documents is unremarkable and underwhelming in a case of this complexity and magnitude, and is significantly less than the more than 1,000,000 documents that the committee reviewed in its pre-confirmation investigation in Antioch, where the court granted Bankruptcy Rule 2004 discovery to obtain additional documents.  See Antioch at 10.  Although the Lenders' counsel did conduct a single joint interview of two members of the Debtors' executive management team, such interview was not under oath, and was quite limited in scope.  See Motion ¶ 3 n.4.[5]  And the Lenders' investigation was cut short due to the deadlines imposed by the DOJ, which required the Lenders to focus on efforts to preserve the Debtors' assets by reaching a global settlement with the DOJ.  There was, in fact, no opportunity to conduct Bankruptcy Rule 2004 discovery at all.  While the Lenders clearly would have been entitled to seek and obtain Bankruptcy Rule 2004 discovery pre-confirmation, to do so would have jeopardized the survival of the Debtors' business.  This cannot be considered an "extensive discovery record . . . more than sufficient . . . to evaluate and pursue any putative causes of action."  See JPM/STB Objection ¶ 21.

---

[5]    It should be noted that the JPM/STB Objection incorrectly states:  "As the Litigation Trustee concedes, his counsel has already had the opportunity to conduct interviews with Millennium, its stockholders, JPMC, and STB."  See JPM/STB Objection ¶ 7.  To be clear, the Trustee's counsel never interviewed any of Millennium's former stockholders nor any member or employee of JPMC. The only interviews conducted were an informal joint interview (not under oath) of two members of Millennium's senior management and an interview of a Simpson Thacher partner who was involved in due diligence in connection with the 2014 Credit Agreement. See SWG Decl. ¶ 6.  But neither the JPM Entities nor Simpson Thacher produced any documents in connection with such Simpson Thacher interview.

**B.    The Facts Do Not Support
The Objectors Request For The Court To
Exercise "Equitable Discretion" To Shield The Objectors From Discovery.**

35.    The Objections also conveniently ignore the fact that the Objectors are, and have always been, evading any responsibility to disclose information.  The Objectors have also both actively and passively used their unique positions to prevent the flow of information.

36.    For example, the Lenders' counsel remained in contact with Simpson Thacher simply because JPMC Bank refused to resign as Administrative Agent under the 2014 Credit Agreement until formally providing a notice of resignation late in the reorganization process (September 4, 2015), despite the Lenders' counsel's requests for JPMC Bank to step down three months earlier (June 2015).  See SWG Decl. ¶ 3.  The Lenders' counsel had no choice but to remain in close contact with both Simpson Thacher and JPMC Bank in order to facilitate communications with the broader Lender community and potentially exercise any of the Lender rights and remedies under the 2014 Credit Agreement. See id. ¶ 7.  Rather than cooperate with the Lender's pre-petition investigation (as the Objectors suggest), the JPM Entities and Simpson Thacher in particular refused to provide any documents or allow any interviews of knowledgeable employees of the JPM Entities (even on an informal basis).  See id. ¶¶ 4-6.

37.    Additionally, the JPM Entities and Simpson Thacher do not dispute that the Lenders' counsel sought pre-confirmation discovery of them and that they flatly "refused to produce any documents."  Motion ¶ 3 n.4.  Nor do they dispute that, had there been time for Bankruptcy Rule 2004 discovery prior to confirmation, an examiner or an official committee of unsecured creditors would have likely been appointed and would have been entitled to the Bankruptcy Rule 2004 discovery sought in the Motion.  See Motion ¶ 5.  Furthermore, the KPMG Objection inaccurately states that "[n]o party attempted during the pre-or post-petition time frame to obtain documents from KPMG . . . ."  KPMG Objection ¶ 16.  This is simply not

true, as the pre-confirmation communications show.  See SWG Decl. ¶ 10, Ex. 2. The Ad Hoc Committee did in fact request work papers from KPMG in the pre-petition period but KPMG, like the JPM Entities and Simpson Thacher, refused to cooperate.

38.    "[F]ull disclosure of all relevant information has always been an important policy of the bankruptcy laws." In re Wincek, 202 B.R. 161, 166 (Bankr. M.D. Fla. 1996).  This policy of full disclosure also extends to third parties. See, e.g., In re Motions for Access of Garlock Sealing Techs. LLC, 488 B.R. 281 (D. Del. 2013) (emphasizing importance of access to information in connection with a debtor, including information from third parties disclosed in Bankruptcy Rule 2019 statements).  Denying the Motion would run counter to this bankruptcy premise by rewarding the Objectors' constant evasiveness and opportunism in taking advantage of an expedited Chapter 11 process that was not in the control of the Debtors nor the Lenders.

39.    The Objections also ignore that the Trustee is treading thoughtfully and carefully in order to carry out his fiduciary responsibilities while also being "particularly mindful of the fact that the Lenders are not only Plan Trust beneficiaries, they also own the reorganized Debtors and . . . the reorganized Debtors (and, in turn, the Lenders) will be the ones funding any litigation that might be advanced by the Plan Trusts."  Motion ¶ 7.  The Motion is intended to seek documents relevant to the Retained Claims prior to preparing and filing any complaints so that the Trustee can fully evaluate the best claims held by the Plan Trusts.  Although the Objectors complain that the Motion creates excessive costs, the Trustee is in fact acting to minimize the costs of litigation, knowing that such costs could meaningfully harm the reorganized Debtors, who are required to reimburse the Plan Trusts' litigation costs after the initial seed funding has been used.

40.    As Judge Hand famously stated: "The conduct of bankruptcy proceedings not only should be right but must seem right." In re Ira Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966). This aptly applies here, where failure to grant the Motion would allow the Objectors, who were intimately involved in the development and syndication of the 2014 Term Loan and have unique information pertaining to it, to take advantage of an expedited plan process driven by the government's "drop-dead" deadline at the expense of the Debtors' estates and Lenders.

41.    Under the facts of these cases, equitable discretion demands fervent probing of the Objectors. Accordingly, the Motion should be granted.

### C.    The Trustee's Requests Are Relevant And Reasonable While The Objectors' Burden Objections Are Grossly Exaggerated.

42.    As detailed in the accompanying SWG Declaration and Coviello Declaration, this Motion was forced upon the Trustee by the Objectors' refusal to engage cooperatively in any discovery. The JPM Entities rebuffed the Trustee on the legal/jurisdictional point and the other Bank Objectors have hidden behind the former Administrative Agent, JPMC Bank, claiming that that they will not have any information that JPMC Bank does not have or outright refusing to produce any discovery unless and until JPMC Bank does so. Now faced with the loss of the jurisdictional defense, each Objector argues that the Court should prematurely narrow the Trustee's Bankruptcy Rule 2004 requests without their conducting any good faith negotiation over the "scope of . . . production" as required by Local Rule 2004-1(a).

43.    The Court should reject the invitation, order service of the Document Requests annexed to the Motion, and direct the *Objectors* promptly to meet and confer with the Trustee, as Local Rules 2004-1 and 7026-1 require, to prioritize production as to undisputed requests and to

present to the Court any remaining disputes.[6] See In re Vox II, LLC, Case No. 05-20299PM, 2008 WL 596697, at *1 (Bankr. D. Md. Mar. 4, 2008) (approving post-confirmation Bankruptcy Rule 2004 discovery and "urg[ing] the parties to confer with respect to the document request" even if the court were to agree that the request is "overly broad").   In the interim, the Trustee intends to contact all Objectors before and at the hearing of this Motion in his continuing attempt to establish categories of documents that can be produced on such a "rolling basis."

44.    For present purposes, it is sufficient for the Trustee to show that the Bankruptcy Rule 2004 cases against "harassment," upon which the Objectors rely in their attempt to cabin discovery *ab initio* are inapposite here and, as demonstrated below, the Objectors are grossly exaggerating the human review process associated with computerized document searches in an attempt to make the Trustee's requests sound more onerous and expensive than they actually are.

45.    To start, the Objectors recite certain "boilerplate" limits on Bankruptcy Rule 2004 discovery – *i.e.*, that the request must not "abuse" or "harass" the recipient.  But their authorities are wholly out of place here because no one suggests that the Trustee's requests are improperly motivated or fall outside the bounds of relevance to the Trustee's claim investigation.  Where the Bankruptcy Rule 2004 requests are reasonably related "to the discovery of assets of the estate and the exposure of fraudulent conduct" they are presumptively valid and must be complied with.  See In re Symington, 209 B.R. 678, 684 (Bankr. D. Md. 1997).   If the discovery requested is within the ambit of what would be allowed if claims under investigation were actually being litigated, the discovery is *a fortiori* appropriate under Rule 2004.  Id. at 685 ("the scope of a Rule 2004 examination is at least as broad as discovery under the Federal Rules of Civil Procedure").

---

[6]    Local Rule 2004-1(c) provides procedures for resolving discovery disputes once a proposed examinee agrees in principle to produce documents.  Local Rule 7026-1 generally requires parties to confer in good faith to reach agreement in the conduct of discovery and, if unsuccessful, how properly to particularize disputes for court resolution.

Of course, Rule 2004 allows for even broader discovery – "in the nature of a 'fishing expedition," In re Wash. Mut., Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009) (internal quotes omitted) – as compared to the Federal Rules of Civil Procedure. Under any standard, however, the Trustee's requests herein are reasonable.

46. Next, the Objectors cite case law for the proposition that Rule 2004 discovery from a debtor or its insiders should be broader than that conducted against "nonparties." But again, such relativistic arguments make no sense here because, *by Plan design*, the Trusts propounding the Rule 2004 discovery are empowered only to pursue claims against such nonparties -- the "Excluded Parties." The Court was presented with and confirmed a Plan that makes the Debtors and its insiders "Released Parties" and empowers the Trustee to investigate claims against Excluded Parties. In this context, the Excluded Parties should not be permitted to frustrate the discovery directed to them based on hypothetical comparisons to (non-existent) claims against the Debtors and their insiders. "Discovery under Rule 2004 extends beyond the debtor to persons associated with him as well as to those persons who may have had business dealings with the debtor." Deloitte & Touche v. Hassett (In re CIS Corp.), 123 B.R. 488, 490 (S.D.N.Y. 1991); see also In re Fin. Corp. of Am., 119 B.R. 728 (Bankr. C.D.Cal. 1990).

47. At bottom, the Objectors' opposition boils down to arguing that the requests are too numerous, broad or duplicative and costly and thus are unduly burdensome on a cost-benefit analysis. Counsel for the Trustee has been and remains open to the usual give and take on discovery and the Court should allow the process to go forward. Indeed, as noted above and in the accompanying declarations of Trustee's counsel, the Trustee's counsel has liaised with counsel for the Objectors on numerous occasions *prior to* filing the instant Motion in attempts to obtain discovery informally and, with attention to the concerns of the Objectors on burden, to

identify *any* category or subset of documents the Objectors would produce voluntarily. Those attempts were either ignored entirely or rebuffed by Objectors' counsel on grounds of lack of jurisdiction and/or refusals to negotiate unless or until the former Administrative Agent, JPMC Bank, produced its documents in the first instance. Now, after the Objectors have eschewed the Trustee's efforts to obtain discovery informally and cooperatively, it is inappropriate for the Objectors to ask the Court to cut down the Trustee's requests before the parties themselves address them substantively. In any event, their burden objections fail for several reasons.

48.    First, the Trustee has reason to believe that the JPM Entities have already made a production that substantially overlaps with portions of the Trustee's request. See SWG Decl. ¶ 9. If so, that production should be shared with the Trustee immediately. Further KPMG has acknowledged a separate, pre-existing obligation under Delaware law (24 Del. Code § 120 (b)) to produce its work papers and records received for the Debtors' account, which again will overlap with the requests.[7] See Coviello Decl. ¶ 18. The alleged burden imposed on these Objectors by virtue of the Trustee's Rule 2004 requests is negligible to the extent of the overlap.

49.    Second, the bulk of the requests may preliminarily be satisfied through computerized word searches of key custodians' e-mails and other electronic documents, which searches do not require extensive attorney time and which, because they are computerized, can be accomplished in relatively short order and at reasonable expense. The requests addressed to Simpson Thacher and KPMG are an excellent case-in-point. A law firm and an accounting firm can easily identify by client-matter the "time keepers" who have performed work related to the

---

[7]    In a recent order in In re Fresh & Easy, LLC, Case No. 15-12220 (BLS) (Bankr. D. Del.), Chief Bankruptcy Judge Shannon noted that an accounting firm's completed and draft work papers should be produced immediately and that related "e-mail communications" are properly the subject of a follow-up Bankruptcy Rule 2004 motion. See Order for Issuance of a Subpoena to Ernst & Young LLP, In re Fresh & Easy, LLC, Case No. 15-12220 (BLS) (Bankr. D. Del. Apr. 11, 2016) [Docket No. 809]. A copy of the Order is annexed hereto as **Exhibit C**.

2014 Credit Agreement or the 2012 Credit Agreement or have communicated with the DOJ about the Debtors. The proper custodians and their electronic data are easily captured. Banks of course have project "working group" lists, as well as personnel dedicated to particular client relationships in-between projects, that can be used to identify the banks' custodians likely to have responsive material. Once the requesting and responding parties agree upon (i) search terms and (ii) the names of individuals likely to be party to privileged communications, little human intervention is needed to create, review and produce most responsive material and to exclude most privileged communications. There is no reason why this "first wave" of computerized discovery cannot be completed in the timeframe sought by the Trustee. After that, the Trustee and his counsel are prepared to negotiate with each Target the extent of hard copy production and additional e-discovery, if any, that will be necessary.

50.     Indeed, it is precisely because so much of the initial discovery nowadays can be automated that the estimate by the "BMO Entities" that they will need to spend "almost a full year, and between $1 million and $3.5 million" to comply with the Trustees' request is a *reductio ad absurdum*. BMO Objection at 16. The Trustee's requests do not *require* that BMO Entities (or any of the Objectors) "onboard and train external counsel reviewers" and conduct a "first-level attorney review" and "second-level privilege review" of the output from the search terms and excluded documents. These are self-imposed costs being hypothesized by the BMO Entities to gin up reasons for opposing the Document Requests.[8]

51.     To mitigate the costs to the Objectors, the Trustee and his counsel are open to reasonable proposals for "claw back" of any privileged documents that might inadvertently be

---

[8]     None of the Objectors besides the BMO Entities even attempt to articulate the alleged burden of responding to the Trustee's requests as they currently exist. Their objections to the scope of the requests fail on this ground alone. See In re Roman Catholic Church of the Diocese of Gallup, 513 B.R. 761, 767 (Bankr. D.N.M 2014) ("If the target of Rule 2004 discovery believes the request is unduly burdensome, it has the burden of showing that the burden is in fact undue.").

produced despite the protections built into the first wave of computerized discovery. Similarly, the negotiation of relevant search terms and confidentiality provisions will protect the Objectors against the fact that some non-responsive materials will undoubtedly be captured by the automation process. The main point is that the Objectors are not allowed to "make the perfect the enemy of the good," that is, to set up the "perfect" document review from their perspective (*i.e.*, the slowest and most expensive) in order to deny the Trustee the "good" of the investigation contemplated by the confirmed Plan. See In re Countrywide Home Loans, Inc., 384 B.R. 373, 387 (Bankr. W.D. Pa. 2008) (ordering Rule 2004 discovery over creditor's overbreadth objection where objection is "grounded more in hyperbole than fact. The Court always remains available to rein in or restrict any attempt to abuse the [Bankruptcy Rule 2004 discovery] process.").

52. Finally, the Court should reject the suggestion of the BMO Entities, SunTrust and Citi to defer Bankruptcy Rule 2004 discovery entirely as to them pending discovery of the JPM Entities. The basis for their suggestion is the claim that they played a "limited role" in the 2014 Credit Agreement and/or that any documents in their possession, custody or control would be "duplicative" of those of JPMC Bank, as the Administrative Agent under the 2014 Credit Agreement. See SunTrust Objection ¶ 1 ("SunTrust had absolutely no duties or responsibilities as Co-Manager and Co-Documentation Agent under the 2014 Credit Agreement."); BMO Entities Objection ¶ 2 ("the BMO Entities [had a] **very limited role** in the 2014 Term Loan") (emphasis in original); Citi Objection at 2 n.2 ("any documents in Citi's possession would almost certainly be duplicates"); Coviello Decl. ¶¶ 6, 8, 11, 15.

53. That is an *ipse dixit* factual contention. It is almost comical that a bank should claim it had a minor role and did nothing wrong in an objection to a Bankruptcy Rule 2004 motion to investigate what happened, then argue that it has so many documents regarding its

involvement that it is too burdensome to search for them. SunTrust and the BMO Entities are hoping that the Trustee will just take their word for it and walk away. The Trustee would almost certainly breach his fiduciary duties to the Trust Beneficiaries if he were to act so blindly.

54.     Indeed, each of these Objectors surely had internal communications responsive to the Trustee's requests that were not shared with any of the others. Such internal communications are likely to be more frank and more informative than those made by and through the Administrative Agent or groups of Lenders. Moreover, each of the Objectors had "several," not joint, responsibilities for syndicating the 2014 Term Loan to other Lenders; thus, each Target is necessarily going to have unique documents relating to its own syndication efforts. The Trustee has no interest in obtaining duplicative discovery and will make every effort to avoid it through the negotiation of the custodians with the Objectors.

## IV.    THE ARBITRATION PROVISION IN KPMG'S ENGAGEMENT LETTER WITH MILLENNIUM HAS NO BEARING ON THE TRUSTEE'S INVESTIGATIVE FUNCTION AND THE MOTION.

55.     KPMG argues that the Motion constitutes an "end-run around" the arbitration provisions in an engagement letter between it and Millennium. KPMG Objection at ¶¶ 22-23. The argument is surprising;[9] more importantly, its lack of merit is so glaring as to be plain on the face of both the arbitration provision exhibited to the KPMG Objection and the case law KPMG cites.

56.     First, the arbitration provision (appearing at page 5 of Exhibit 1 of the Schlitz Declaration submitted by KPMG) by its very terms applies only to a "dispute or claim between the parties." A Bankruptcy Rule 2004 motion is not a claim or dispute between parties.

---

[9]    Despite several pre-Motion communications between counsel for KPMG and counsel for the Trustee, KPMG did not invoke the arbitration provision as a bar to discovery where, as here, the Trustee is conducting an examination and not asserting a claim against KPMG. See Coviello Decl. ¶ 20. In fact, the parties were working toward a voluntary production by KPMG before communications broke down.

Bankruptcy Rule 2004 provides for an "examination" and/or "production of documents." It compels *evidence* from the entity that is the subject of the examination or production request, including with respect to the potential culpability of parties other than KMPG. KPMG's assumption that the Trustee has already made up his mind to sue KPMG and that he is engaging in "pre-litigation discovery" is not only erroneous, it glosses over the prefix "pre." If the evidence the Trustee obtains under Bankruptcy Rule 2004 someday leads to an actual dispute or claim between the Trustee and KPMG, *that* would be the time for KPMG to raise the arbitration provision. It simply is inapplicable on its face at this juncture.[10]

57.    Second, the cases that KPMG cites support the Trustee and contradict KPMG's own argument. For example, in In re New Century TRS Holdings, Inc., 407 B.R. 558 (Bankr. D. Del. 2009), in which KPMG sought to use a similar arbitration provision to frustrate the transfer of its documents from a court-appointed examiner to a liquidating trustee, the Court held that "[t]he arbitration clause in the KPMG Engagement Letter is not implicated by the [transfer] because . . . no evidence was presented that any claim had been asserted or that any particular proceeding had been commenced against KPMG. . . . KPMG [may assert] any right to arbitration (and attendant rights) if a proceeding is commenced." Id. at 571.

58.    New Century cited with approval and discussed at length a case even closer to this one: In re Friedman's Inc., 356 B.R. 779 (Bankr. S.D. Ga. 2005). There, the debtor moved to compel discovery from its accountant and the accountant, like KPMG here, objected based on

---

[10]    In a similar vein, a debtor may be compelled to give discovery or evidence in a non-bankruptcy proceeding against non-debtors notwithstanding the automatic stay of proceedings against the debtor; there is a fundamental difference between giving evidence and being made a party to a claim or dispute. See, e.g., In re Miller, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001) ("Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay."); Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC, 2014 WL 4783008, at *5 (S.D.N.Y. Sept. 25, 2014) ("Section 362(a) does not prevent litigants from obtaining discovery from a debtor as a third-party witness where the requests pertain to claims against the nondebtor parties).

the arbitration clause in the parties' engagement letter.   As noted in New Century, the Friedman court ruled the arbitration clause to be irrelevant and ordered the accountant to provide the discovery because "'there is no identifiable, discrete dispute between the parties'" and that the arbitration clause applied only in "situations 'in which the parties were contesting identified and specific causes of action,' rather than cases in which potential claims were being investigated." New Century, 407 B.R. at 571 (quoting Friedman, 356 B.R. at 783, 784).   That is precisely the case here.

59.    Finally, in the only other case cited by KPMG, Hays & Co v. Merrill Lynch, Pierce Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir. 1989), a bankruptcy trustee *"filed [an] action* in the district court" against Merrill Lynch for allegedly "churning" securities in the debtor's account with the firm. Id. at 1150 (emphasis added).   Merrill Lynch moved to compel arbitration based on a pre-petition customer agreement with the debtor.   The Third Circuit held that any claims against Merrill Lynch that the trustee derived from the debtor under Bankruptcy Code Section 541 were subject to the arbitration clause. Id. at 1154. Hays & Co. is entirely consistent with the above distinction between a motion to obtain discovery or evidence and an actual claim, dispute or litigation between parties and thus the case supports the relief requested in the Motion, not KPMG's opposition.

60.    In sum, there is no basis whatsoever for application of an arbitration clause to the instant Motion directed to KPMG.


*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*


29

## CONCLUSION

**WHEREFORE**, for the reasons stated in the Motion and this Reply, the Trustee respectfully requests that this Court enter an order:   (i) authorizing the targeted discovery requested in the Motion; (ii) reserving all of the Trustee's rights to take further discovery (including depositions) of any individuals related to the Targets or any other party; and (iii) granting such other and further relief as is just and proper.

Dated:    April 29, 2016
     Wilmington, Delaware

| | |
|---|---|
| **LANDIS RATH & COBB LLP** | **SEITZ, VAN OGTROP, & GREEN, P.A.** |
| */s/ James S. Green Jr.* | */s/ Jared T. Green* |
| Richard S. Cobb, Esq. (Del. Bar No. 3157) | Jared T. Green, Esq. (Del. Bar No. 5179) |
| James S. Green Jr., Esq. (Del. Bar No. 4406) | 222 Delaware Avenue, Suite 1500 |
| 919 Market Street, Suite 1800 | Wilmington, Delaware 19801 |
| Wilmington, Delaware 19801 | Telephone:  (302) 888-0600 |
| Telephone:  (302) 467-4400 | Facsimile:  (302) 888-0606 |
| Facsimile:   (302) 467-4450 | Email:   jtgreen@svglaw.com |
| Email:  cobb@lrclaw.com | |
| Email:   green@lrclaw.com | |
| *Co-Counsel to the Trustee for the Plan Trusts, with respect to all Targets except the JPM Entities and Simpson Thacher* | *Co-Counsel to the Trustee for the Plan Trusts, solely with respect to the JPM Entities and Simpson Thacher* |
| **BROWN RUDNICK LLP** | **WOLLMUTH MAHER & DEUTSCH LLP** |
| Robert J. Stark, Esq. | David H. Wollmuth, Esq. |
| Sigmund S. Wissner-Gross, Esq. | Jeffrey Coviello, Esq. |
| Jacob T. Beiswenger, Esq. | 500 Fifth Avenue |
| 7 Times Square | New York, NY 10110 |
| New York, NY 10036 | Telephone:  (212) 382-3300 |
| Telephone:  (212) 209-4800 | Facsimile:   (212) 382-0050 |
| Facsimile:   (212) 209-4801 | Email:   dwollmuth@wmd-law.com |
| Email:  rstark@brownrudnick.com | Email:   jcoviello@wmd-law.com |
| Email:  swissnergross@brownrudnick.com | |
| Email:   jbeiswenger@brownrudnick.com | |
| *Co-Counsel to the Trustee for the Plan Trusts* | *Co-Counsel to the Trustee for the Plan Trusts, except with respect to Simpson Thacher* |