# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MILLENNIUM LAB HOLDINGS II, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-12284 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 312, 325** |

### SUPPLEMENTAL OBJECTION OF JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, AND SIMPSON THACHER & BARTLETT LLP TO THE MOTION OF THE PLAN TRUSTEE FOR AUTHORITY TO TAKE DISCOVERY UNDER BANKRUPTCY RULE 2004

In accordance with the Court's direction at the May 4, 2016 hearing in the above-captioned chapter 11 cases, JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC (collectively, "JPMC"), and Simpson Thacher & Bartlett LLP (together with JPMC, the "Objectors") respectfully submit this supplemental objection to the motion of Mark S. Kirschner (the "Litigation Trustee"), in his capacity as Trustee of the Millennium Corporate Claim Trust (the "Corporate Claim Trust") and the Millennium Lender Claim Trust (the "Lender Claim Trust," and together with the Corporate Claim Trust, the "Trusts") for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Litigation Trustee to take the discovery sought in the motion (D.I. 312, the "Motion").[1]

### INTRODUCTION

1.  In the opening brief filed in connection with this Motion, the Litigation Trustee asserted that the Court had "related to" jurisdiction to grant the requested relief under the "close nexus" test adopted by the Third Circuit in *Binder v. Price Waterhouse & Co., LLP* (*In re*

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Objectors' April 22, 2016 Objection (D.I. 325, the "Objection"). The Litigation Trustee's reply brief in support of the Motion (D.I. 339) is cited herein as the "Reply" or "Rep."

*Resorts Int'l, Inc.*), 372 F.3d 154, 166-67 (3d Cir. 2004) ("*Resorts*"). *See* Mot. at 20 n.17. The Litigation Trustee argued that while the Third Circuit found no jurisdiction over the causes of action asserted by the litigation trust in the *Resorts* case, "[t]he result in *Resorts* is easily distinguishable" because "all of the events creating potential claims for which the Trustee seeks discovery occurred prepetition" and "were specifically transferred to the Plan Trusts." *Id.* In support of the Motion, the Litigation Trustee focused his jurisdictional argument on the Lender Claim Trust's claims and never contended that these potential claims were "core" matters that were subject to the Court's "arising in" or "arising under" jurisdiction (words and phrases that are entirely absent from the Litigation Trustee's opening brief). *Id.*

2.  On reply, however, the Litigation Trustee shifted his focus, and instead of addressing the potential relevance of the Motion to the purported claims of Millennium's lenders, asserted that "the discovery in the Motion is squarely aimed at investigating" the Corporate Claim Trust's purported claims against "non-released individuals and entities (*i.e.*, the Excluded Parties) that either directly committed or aided and abetted breaches of fiduciary duty, corporate mismanagement and waste, [and] fraud." Rep. ¶ 3. The Litigation Trustee also claimed that the discovery sought was relevant to "the Corporate Trust's evaluation of (i) whether the $55 million in fees paid to the Excluded Parties constituted a fraudulent transfer … and (ii) the indemnification/contributions [*sic*]/fee reimbursement claims already asserted by, among others, the Objectors," which the Litigation Trustee asserts would constitute "core" matters under 28 U.S.C. § 157(b)(2)(H), (B), and (C). Rep. ¶ 2.[2]

---

[2] While not directly relevant to the resolution of the Motion, the Litigation Trustee's statement that the Excluded Parties received "$55 million in fees" is inaccurate, and appears to include substantial fees paid to the Lenders who contributed their claims to the Lender Claims Trust and were released by the Plan. The Objectors reserve all rights with respect to this matter.

2

3. While the Objectors acknowledge that the Court would have post-confirmation jurisdiction over matters relating to the administration of the estate, as explained in the Objectors' initial Objection and in this Supplemental Objection, the matters into which the Litigation Trustee now seeks to conduct a Bankruptcy Rule 2004 investigation either do not fall within this category (and therefore are outside the Court's jurisdiction) or do not require a Bankruptcy Rule 2004 investigation by the Litigation Trustee.

4. At the May 4, 2016 hearing on the Motion, the Court permitted the Objectors to submit a supplemental brief to address the new arguments raised by the Litigation Trustee on reply. The Court also specifically requested that the Objectors address three decisions concerning post-confirmation "related to" jurisdiction: *BWI Liquidating Corp. v. City of Rialto* (*In re BWI Liquidating Corp.*), 437 B.R. 160 (Bankr. D. Del. 2010) ("*BWI*"); *AstroPower Liquidating Trust v. Xantrex Technology, Inc.* (*In re AstroPower Liquidating Trust*), 335 B.R. 309 (Bankr. D. Del. 2005) ("*AstroPower*"); and *Michaels v. World Color Press, Inc.* (*In re LGI, Inc.*), 322 B.R. 95 (Bankr. D.N.J. 2005) ("*LGI*").

5. For the reasons discussed herein, the Litigation Trustee's shift on reply to focus on purported claims that may be pursued by the Corporate Claim Trust does not save the Motion, either jurisdictionally or on its merits.

## ARGUMENT

**I. THE PURPORTED NON-CORE ESTATE CLAIMS ON WHICH THE LITIGATION TRUSTEE NOW RELIES LACK THE REQUISITE CLOSE NEXUS TO THE BANKRUPTCY CASE**

6. The Litigation Trustee asserted on reply that the proposed Bankruptcy Rule 2004 examinations are aimed at investigating Millennium's purported causes of action against parties "that either directly committed or aided and abetted" breaches of fiduciary duty, corporate mismanagement, waste, and fraud. *See* Rep. ¶ 3. These are non-core claims, unrelated to the

3

administration of the post-confirmation bankruptcy cases, that arise under state law. *See, e.g.*, *AstroPower*, 335 B.R. at 323 ("actions for pre-petition breach of fiduciary duty and breach of contract" brought by liquidating trust are non-core).[3]

7. The fact that these purported non-core claims may constitute assets of the Corporate Claim Trust rather than of the Lender Claim Trust does not mean that post-confirmation jurisdiction exists. Under *Resorts*, post-confirmation jurisdiction over such claims only exists "where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." *Resorts*, 372 F.3d at 168-69. Indeed, *Resorts* and its progeny address, almost without exception, whether post-confirmation bankruptcy jurisdiction exists over such *estate* claims, and have often found it does not. *See, e.g.*, *In re Insilco Techs., Inc.*, 330 B.R. 512, 517, 522 (Bankr. D. Del. 2005) (no post-confirmation jurisdiction over debtor's claims for, *inter alia*, fraud, malpractice, unjust enrichment, and breach of fiduciary duty); *BWI*, 437 B.R. at 165 (no post-confirmation jurisdiction over debtor's contract claims). Thus, the mere fact that the Litigation Trustee now contends that the discovery sought in the Motion may be relevant to hypothetical estate claims does not change the fact that the requisite close nexus between the Motion seeking discovery and this Court's post-confirmation administration of these bankruptcy cases is entirely lacking.

---

[3] *See also, e.g.*, *Mellon v. Del. & Hudson Ry. Co.* (*In re Del. & Hudson Ry. Co.*), 122 B.R. 887, 894–95 (D. Del. 1991) (declaration of unlawful dividends, waste and breach of fiduciary duty claims are non-core); *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins* (*In re Integrated Health Servs., Inc.*), 291 B.R. 615, 618 (Bankr. D. Del. 2003) ("breach of fiduciary duty and waste of corporate assets are quintessential state law causes of action"); *TTS, Inc. v. Stackfleth*, 142 B.R. 96, 99 (Bankr. D. Del. 1992) (fraud, mismanagement, waste, diversion, misappropriation, self-dealing and breach of fiduciary duty are non-core claims).

8. At the May 4, 2016 hearing on the Motion, the Court requested that the Objectors address three rulings by bankruptcy courts in this Circuit applying the *Resorts* "close nexus" standard in cases involving estate claims that accrued before confirmation but were filed post-confirmation. These rulings—*LGI*, *AstroPower*, and *BWI*—generally hold that bankruptcy courts may have post-confirmation jurisdiction over an action where "the Plan *specifically describes* [the] action" and "expressly provides for the retention of … jurisdiction" over that action. *AstroPower*, 335 B.R. at 325 (emphasis added); *see also BWI*, 437 B.R. at 165 ("A 'close nexus' may be found where the plan specifically enumerates the cause of action."). As discussed below, however, this gloss on *Resorts* (referred to in this brief as the "specific description" test) should not be applied here. First, the approach was premised on a reading of *Resorts*—which has since been explicitly rejected by the Third Circuit—as being effectively limited to claims arising from post-confirmation conduct. Second, contrary to *Resorts* and subsequent Third Circuit precedent, this test would allow parties to expand the scope of a court's post-confirmation jurisdiction by adopting particular language in a plan of reorganization. In any event, even if this Court were to apply the "specific description" test, the Motion would still fail, because Millennium's Plan does not specifically describe either the Motion or any of the underlying purported claims on which the Litigation Trustee relies in attempting to justify the discovery he seeks.

    **A.**    <u>The "Specific Description" Test Is Inconsistent With *Resorts*</u>

9. *Resorts* holds that post-confirmation "related to" jurisdiction only exists over matters that have a "close nexus to the bankruptcy plan or proceeding," and that such jurisdiction exists over claims brought by litigation trusts where they "require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement" or "implicate[] the integrity of the

5

entire bankruptcy process." *Resorts*, 372 F.3d at 163, 169-70. *Resorts* also explicitly holds that "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *Id.* at 161.

10. Because *Resorts* concerned a post-confirmation claim arising from a post-confirmation transaction or occurrence, lower courts interpreting *Resorts* initially "rendered inconsistent opinions" as to whether it also applied to post-confirmation proceedings that concerned pre-petition matters. *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 263 (3d Cir. 2007). In *Seven Fields*, however, the Third Circuit clarified that *Resorts*' "close nexus" test applies to any proceeding that is "filed post confirmation" and is not confined to proceedings that only concern "conduct … [that] occurred post-confirmation." 505 F.3d at 264-65.

11. Accordingly, the Court should apply the "close nexus" test here to find that there is no post-confirmation jurisdiction. The three rulings the Court asked Objectors to address – *LGI*, *AstroPower*, and *BWI*—which apply the "specific description" test, do not compel a different outcome. The "specific description" concept they applied was articulated before *Seven Fields* clarified the applicability of the *Resorts* "close nexus" test. The courts that originally formulated the test understood *Resorts* as having "decided the narrow issue of 'related to' jurisdiction over a claim that arose post-confirmation." *AstroPower*, 335 B.R. at 324.[4] *AstroPower* distinguished *Resorts* on this basis, finding that the claims there, unlike those in *Resorts*, did not arise post-confirmation but were instead "both logically linked to the Debtor's prepetition losses, and entrusted to Plaintiff *via the Plan for the benefit of creditors*."

---

[4] *AstroPower* largely based this interpretation of Resorts on *LGI*, an early ruling interpreting *Resorts* as limited to cases involving post-confirmation conduct. *See AstroPower*, 335 B.R. at 324 ("The Court is persuaded by the well-reasoned LGI opinion…"). *LGI*'s interpretation of *Resorts* was expressly abrogated in *Seven Fields*. *See Seven Fields*, 505 F.3d at 263-65 (holding that "the 'close nexus' test applies in all disputes raised post-confirmation, regardless of when the conduct alleged in the complaint occurred" and specifically citing *LGI* as an exemplar of the wrongly-decided cases "in which the courts stated the test in terms of when the cause of action arose or the conduct occurred").

6

*AstroPower*, 335 B.R. at 324 (quoting *LGI*, 322 B.R. at 103-06) (emphasis in original). *AstroPower* also found it significant that "the Plan and Confirmation Order provide[d] for the retention of jurisdiction over 'Litigation Claims,'" which was specifically defined to include the particular claims at issue in that case. *Id. AstroPower* therefore concluded that where a plan "specifically describes an action over which the Court had "related to" jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation." *Id.* at 325 (citing *LGI*, 322 B.R. at 102). The *AstroPower* court explained that imposing this requirement would avoid "the specter of 'unending jurisdiction' over continuing trusts" that might otherwise arise. *Id.* at 325.[5]

12.     Thus, *AstroPower*, which had mistakenly read *Resorts*' limitation on post-confirmation "related to" jurisdiction as focused on matters arising from post-confirmation conduct, still recognized that some limitation—here the "specific description" requirement—was necessary to reign in jurisdiction. Otherwise, if such jurisdiction existed merely because a proceeding was "both logically linked to the Debtor's prepetition losses, and entrusted to the [litigation trust] via the Plan for the benefit of creditors," bankruptcy courts would possess effectively limitless jurisdiction over post-confirmation claims by litigation trusts, a result that could not be squared with any reading of *Resorts*. *AstroPower*, 335 B.R. at 324-25. But while

---

[5] In adopting a rule that jurisdiction will exist where a plan "specifically describes an action" the *AstroPower* court went a step beyond *LGI*, which had not focused as heavily on such a requirement, but instead found jurisdiction largely because the claim at issue there arose from pre-petition conduct and was specifically preserved by the plan. *See LGI*, 322 B.R. at 102 ("Unlike *Resorts* … here the cause of action developed prepetition. Moreover, unlike *Resorts*, *sub judice* the Plan of Reorganization and related organic orders and agreements defined the cause of action as an 'asset' intended to be distributed to certain creditors as part of the reorganization process. These facts, without more, could well establish the 'close nexus to the bankruptcy plan or proceeding' which the Third Circuit requires for subject matter jurisdiction."). As discussed in note 4, *supra*, this reasoning was rejected in *Seven Fields*.

7

this "specific description" requirement may be effective, in certain cases, in cabining bankruptcy courts' post-confirmation jurisdiction, it is itself inconsistent with *Resorts*' holding that "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *Resorts*, 372 F.3d at 161. Indeed, the "specific description" requirement effectively *requires* the parties to "write their own jurisdictional ticket" by predicating the jurisdictional inquiry on the presence or absence of particular plan language, as opposed to the nature of the particular post-confirmation proceeding—which also has the anomalous effect of enabling plan proponents to opt into their preferred forums for particular litigation, so long as they have the foresight to do so.[6]

13.    Accordingly, the "specific description" test is flawed because it both (i) proceeds from a mistaken reading of *Resorts*' "close nexus" test, which was subsequently rejected in *Seven Fields*, as applying only where the proceeding at issue concerns post-confirmation conduct, and (ii) allows parties to control the scope of post-confirmation jurisdiction through plan language. Rather than applying the "specific description" test, this Court should simply apply the "close nexus" test as developed in *Resorts* and *Seven Fields*, under which post-confirmation "related to" jurisdiction will exist only if a proceeding (i) concerns the interpretation of a confirmed plan; (ii) relates to a bankruptcy court's post-confirmation administration of the bankruptcy case; or (iii) implicates the integrity of the bankruptcy process. *See* Obj. ¶ 14. The Litigation Trustee does not seriously contend that the Motion, or any purported state-law estate claims that might be furthered by the relief sought in the Motion, can meet these standards.

---

[6] Indeed, in *In re Washington Mutual, Inc.*, another ruling applying "specific description" test, the court appeared to recognize that the "specific description test amounted to a form of "writing [one's own] jurisdictional ticket." *See* No. 08-12229, 2012 WL 4755209, at *4 (Bankr. D. Del. Oct. 4, 2012) ("[T]he Debtors cannot be permitted to 'write [their] own jurisdictional ticket' by merely including a generic retention clause in the Plan. … Rather, to have a sufficiently close nexus to retain postconfirmation jurisdiction, the plan must 'specifically describe[ ] an action'....") (quoting *AstroPower*, 335 B.R. at 325).

8

**B.      In Any Event, The Motion Fails The "Specific Description" Test**

14. Even if this Court were to apply the "specific description" test in assessing whether the Motion is jurisdictionally proper, the Motion should still be denied. The Plan does not specifically describe any of the potential causes of action now identified by the Litigation Trustee. Instead, the Plan generically describes the potential causes of action that may be pursued by the Litigation Trustee as "all known and unknown claims and Causes of Action" and "all known and unknown direct and derivative claims and Causes of Action." *See* Mot. ¶ 13 n.14 (quoting definitions of preserved claims in the Plan and Trust Agreements).[7] Nor does the Plan anywhere specifically reference or contemplate the Litigation Trustee's pursuit of any investigations under Bankruptcy Rule 2004.

15. By contrast, the Plan provides much greater specificity with respect to the claims that it releases, including within the definitions of "Released Claims" and "Core Released Claims" all claims related to, *inter alia*,

> the Restructuring Transactions and any transactions related thereto, including, without limitation, the dividend recapitalization and refinancing accomplished with the proceeds of the Existing Credit Agreement and … the negotiation, solicitation, due diligence, documentation, execution, implementation, administration, and or the enforcement of the Existing Credit Agreement and the transactions related thereto.

---

[7] *See* Plan § I.B, Definition 1.129 ("'Preserved Estate Claims' means all known and unknown claims and Causes of Action (including derivative claims) of Millennium against the Excluded Parties or any other Entity that is not a Released Party or their respective Related Parties."); *id.* at Definition 1.153 ("'Retained Corporate Causes of Action' means any and all claims and Causes of Action (whether arising under chapter 5 of the Bankruptcy Code or otherwise) belonging to Millennium and the Administrative Agent (in its capacity as agent under the Existing Loan Documents), including Retained Claims and Non-Contributing MLH Shareholder Claims, other than Claims and Causes of Action expressly released under this Plan, including, without limitation the claims subject to the bar order pursuant to Article X.J of this Plan and the injunction pursuant to Article X.K of this Plan."). The definitions of "Preserved Lender Claims" and "Retained Lender Causes of Action" run substantially parallel to these definitions. *See* Plan § I.B, Definitions 1.131, 1.154. Finally, "Retained Claims" is defined as "collectively, the Preserved Estate Claims and the Preserved Lender Claims." Plan § I.B, Definition § 1.152.

9

Plan § I.B, Definition 1.35 ("Core Released Claims"); *accord id.* at Definition 1.146 ("Released Claims"). Despite the fact that the purported claims identified by the Litigation Trustee in support of the Motion concern these same transactions and occurrences, comparable language is entirely absent from the Plan's description of the preserved claims.

16. Tellingly, the Litigation Trustee does not attempt to rely on the "specific description" test in his briefing. The closest the Litigation Trustee comes to any such argument is his cursory contention on reply that "the Objectors' desire for more specificity in the Plan … is disingenuous" because this is "a discovery motion related to Retained Claims"[8] and the Plan generally retained jurisdiction over "any motions, adversary proceedings, contested or litigated matters and any other Causes of Action … that may be commenced in the future." Rep. ¶ 29 (quoting Plan § IX(A)(vi)). This highly general language does not suffice under the "specific description" test. *See, e.g.*, *BWI*, 437 B.R. at 166 ("[A] Plan must specifically describe a cause of action in order to retain "related to" jurisdiction. … [W]here, as here, the Plan only broadly provided for retention of jurisdiction over causes of action, it provides no evidence of a sufficiently close nexus with the bankruptcy proceeding to support post-confirmation jurisdiction."); *In re Solyndra, LLC*, No. 11-12799, 2015 WL 6125246, at *5 (Bankr. D. Del. Oct. 16, 2015) ("the Plan must specifically describe a cause of action in order to retain 'related to' jurisdiction"; broad "retention of jurisdiction over claims resolution" is insufficient).[9]

---

[8] The Plan's wholly nonspecific definition of "Retained Claims" is discussed in note 7, *supra*.

[9] Moreover, whether a potential target of a post-confirmation proceeding might have been on notice of a potential proceeding pre-confirmation is irrelevant to whether jurisdiction exists under the "specific description" test. *See, e.g.*, *BWI*, 437 B.R. at 166 ("The Plaintiff argues nonetheless that because the Debtors sent a formal demand letter to Rialto regarding the claims now asserted, Rialto was on notice that jurisdiction over the claims was preserved under the Plan. The Court finds that notice was an insufficient substitute for specific reference of the claims in the Plan.").

10

17. The Litigation Trustee may argue that the requisite specificity exists because "the Objectors are expressly named as 'Excluded Parties' from the Plan releases." Rep. ¶ 29.[10] The mere inclusion of a party in a nonexclusive list of non-released entities is, however, far more attenuated and nonspecific than what courts have otherwise found to constitute a sufficiently specific description of a claim. Moreover, there is no other evidence suggesting, or any reason to believe, that the Litigation Trustee's potential pursuit of Millennium's purported state-law claims against the targets of the Motion (for alleged aiding and abetting of Millennium's corporate insiders' purported fiduciary breaches, "corporate mismanagement and waste," and fraud (Rep. ¶ 3)) were ever considered a critical component of the Plan. *Cf. In re Insilco Techs., Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005) (noting, in finding no jurisdiction, that "[t]he general language of the Plan and Disclosure Statement concerning post-confirmation litigation does not provide any notice to creditors (or to the Court, for that matter) as to the importance of this or any particular litigation.").

18. Thus, even if the Court determines that the "specific description" test should be applied (and for the reasons discussed above, it should not), the Court should not find jurisdiction on this basis. Doing so would effectively allow plan proponents to preserve post-confirmation jurisdiction over any and all claims against third parties simply by identifying them in a plan as not having been released. Such a general reference cannot fairly be considered "a specific[] descri[ption of] an action," *AstroPower*, 335 B.R. at 325, or a "specific[] enumerat[ion of] the cause of action," *BWI*, 437 B.R. at 165, as required by *AstroPower* and its progeny.

---

[10] "Excluded Parties" is defined as "any party not expressly identified as one of the Released Parties … including but not limited to" a list of entities that includes JPMC and certain other targets of the Motion. *See* Plan § I.B, Definition 1.55 ("Excluded Parties").

## II. THE CORE ESTATE CLAIMS ON WHICH THE LITIGATION TRUSTEE NOW PURPORTS TO RELY DO NOT JUSTIFY GRANTING THE REQUESTED RELIEF

### A. The "Fraudulent Transfer" Claims

19.     The Litigation Trustee also contends on reply that "the facts to be discovered will bear directly on, among other things, the Corporate Trust's evaluation of" whether the "fees paid to the Excluded Parties in the 2014 recapitalization constituted a fraudulent transfer." Rep. ¶ 3. While the Litigation Trustee is correct that fraudulent transfer claims under 11 U.S.C. §§ 544 and 548 are "core" claims, the discovery sought by the Litigation Trustee is untethered to any reasonable investigation of such claims. Such claims turn on (i) the intent of Millennium, the transferor, in making the challenged transactions, not the intent of any Prior Agent; (ii) whether Millennium received reasonably equivalent value in connection with the challenged transactions; and/or (iii) Millennium's solvency at the relevant time. All of these are matters which concern *Millennium's* intent/conduct, not the intent/conduct of the Objectors, and there is no evidence that the relevant information is missing from Millennium's own files so as to preclude or even hamper an adequate pre-suit analysis of these purported claims.

20.     Moreover, the cornerstone of the Plan itself was the compromise and release of the estate's fraudulent transfer and other claims against Millennium's insiders who were the recipients of the dividend paid by Millennium in connection with the 2014 recapitalization. In connection with this settlement of those fraudulent transfer and other claims, the architects of the Plan represented to the Court that the settlement was fair and reasonable. *See* Plan § V.A; Confirmation Order ¶ LL. In order to do so, they must have had sufficient information concerning Millennium's intent in making the recapitalization-related transfers, the value Millennium received in exchange and Millennium's financial status—the information the Litigation Trustee would need to review any transfers made to the Objectors. Accordingly, the

12

Litigation Trustee has in no way shown good cause as to why the discovery sought in the Motion is in any way necessary for him to engage in an "initial investigation" (Mot. ¶ 6) of claims related to any such fee payments.

### B. The Litigation Trustee's Objections To "Indemnification" Claims

21. Finally, the Litigation Trustee contends that he "seeks to investigate any and all claims against the [agent/arranger banks] related to claim allowance, counterclaims, and indemnification claims, which are 'core' proceedings under 28 U.S.C. § 157(b)(2)(B) and (C)." Rep. ¶ 19. The Litigation Trustee states that certain agent/arranger banks "have in fact already sought indemnification from the reorganized Debtors, making requests for reimbursement of professional fees," and argues that "[i]n order to determine the allowance or disallowance of such claims or related counterclaims, the Trustee (as successor in interest to the estate causes of action) must be permitted to conduct a fulsome investigation of such claims…." *Id.*

22. This argument fails because, among other things, these indemnification claims are claims against the Reorganized Debtors, not the Trusts. The Plan provides that "Prior Agent Indemnity Claims"—rights under the Existing Credit Agreement to indemnification by the Reorganized Debtors—were "Reinstated" or "Unimpaired." *See* Plan § III.C(iii) (providing that such claims shall be "Reinstated" or "otherwise rendered Unimpaired"). Under the terms of the Plan and the Bankruptcy Code, for such claims to be Unimpaired, the Plan must have left "unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124; Plan § I.B, Definition 1.179. This means that the Reorganized Debtors—not the Trusts—assumed their obligations (while preserving legal and equitable defenses) with respect to the Prior Agent Indemnity Claims. As the Litigation Trustee's reply brief itself recognized, certain of the agent/arranger banks "sought indemnification *from the reorganized Debtors* … pursuant to their preserved indemnification

13

rights set forth in Article III, Section C(iii) of the Plan," and did so by sending bills to the Reorganized Debtors. Wissner-Gross Decl. ¶ 13 & Exs. 4, 5 (emphasis added). In these circumstances, it is not clear what, if anything, grounds the Litigation Trustee's claim of authority with respect to these claims; disputes over payment of these obligations should be resolved by the Reorganized Debtors, not by the Litigation Trustee.

23. Even assuming *arguendo* that any objections to, or defenses against, the Reorganized Debtors' indemnity obligations should be determined through proceedings involving the Litigation Trustee, the Bankruptcy Code and the Bankruptcy Rules provide an appropriate framework for taking discovery. For instance, were the claims objection process to apply, 11 U.S.C. § 502(b) provides that if a party objects to the allowance of a claim, "the court, after notice and a hearing, shall determine the amount of such claim." A claims objection proceeding is a contested matter, and Bankruptcy Rule 9014(c) makes the discovery provisions of the Federal Rules of Civil Procedure generally applicable in such matters. Those discovery provisions are also applicable to the extent claims are asserted by the Litigation Trustee in the context of an adversary proceeding. *See* Fed. R. Bankr. P. 7026-7037. The Litigation Trustee has provided no reason to believe that the discovery afforded by these provisions would be in any way insufficient; that he is unable to formulate an objection; or that proceeding now under Bankruptcy Rule 2004 would be more efficient for the parties or the Court. Nor has the Litigation Trustee explained why any of the extensive discovery sought is relevant to his assessment of Reorganized Debtors' payment obligations with respect to the straightforward professional fee invoices at issue. As such, even if relief under Bankruptcy Rule 2004 was jurisdictionally permitted, it should be denied in the exercise of the Court's discretion for failure to show good cause.

**CONCLUSION**

**WHEREFORE**, the Objectors respectfully request that this Court deny the Motion, and grant such other and further relief as the Court deems proper.

Dated:  May 13, 2016
       Wilmington, Delaware

Respectfully submitted,

    */s/ Mark D. Collins*
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
E-mail:    collins@rlf.com
          madron@rlf.com

-and-

Mary Beth Forshaw
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017-3954
Telephone:    (212) 455-2000
Facsimile:    (212) 455-2502
E-mail:    mforshaw@stblaw.com

*Counsel to JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and Simpson Thacher & Bartlett LLP*