## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>MILLENNIUM LAB HOLDINGS II, LLC,<br>*et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 15-12284 (LSS)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 312, 325, 339, 358,<br>359, 360, 361, and 362** |

### PLAN TRUSTEE'S OMNIBUS SUPPLEMENTAL REPLY TO SUPPLEMENTAL OBJECTIONS TO THE MOTION OF THE PLAN TRUSTEE FOR AUTHORITY TO TAKE TARGETED DISCOVERY, PURSUANT TO THE DEBTORS' CONFIRMED PLAN OF REORGANIZATION, CONFIRMATION ORDER, BANKRUPTCY CODE SECTION 105(a) AND BANKRUPTCY RULE 2004

Marc S. Kirschner, in his capacity as Trustee of the Plan Trusts, respectfully submits this omnibus supplemental reply (the "Supplemental Reply") to the supplemental objections of (a) JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and Simpson Thacher & Bartlett LLP [Docket No. 358] (the "JPM/STB Objection"); (b) SunTrust Bank [Docket No. 361] (the "SunTrust Objection"); (c) Citigroup Global Markets Inc. [Docket No. 359] (the "Citi Objection"); (d) Bank of Montreal and BMO Capital Markets Corp. [Docket No. 362] (the "BMO Objection"); and (e) KPMG LLP [Docket No. 360] (the "KPMG Objection" and collectively with the foregoing, the "Supplemental Objections")[1] opposing the *Motion of the Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan of Reorganization, Confirmation Order, Bankruptcy Code Section 105(a) and Bankruptcy*

---

[1]    In this Supplemental Reply, "Objectors" refers collectively to:  (i) JPMorgan Chase Bank, N.A. ("JPMC Bank"); (ii) J.P. Morgan Securities LLC; (iii) SunTrust Bank ("SunTrust"); (iv) Citigroup Global Markets Inc. ("Citi"); (v) Bank of Montreal; (vi) BMO Capital Markets Corp. (together with the foregoing (i) through (v), the "Bank Objectors"); (vii) Simpson Thacher & Bartlett LLP ("Simpson Thacher"); and (viii) KPMG LLP ("KPMG").

*Rule 2004* [Docket No. 312] (the "Motion").[2]  In response to the Supplemental Objections and in further support of the Motion and the *Plan Trustee's Omnibus Reply to the Objections to the Motion* [Docket No. 339] (the "Reply"), the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Supplemental Objections obscure instead of sharpen the jurisdictional issues for this Court's determination.  This Court clearly has more than sufficient jurisdiction to order post-confirmation examinations and that is all that the Trustee seeks at this point.

2.      First, most of the cases upon which the Supplemental Objections rely do not even involve Rule 2004 discovery.  They involve the weightier question of whether a bankruptcy court has post-confirmation related-to jurisdiction over a *plenary* adversary proceeding.   As this Court noted at the recent oral argument (and as counsel for the JPM/STB Objectors was forced to concede), the causes of action that the Trustee of the Corporate Trust wishes to examine are "property of the estate[,]" adding rhetorically, "[a]nd where is there anything temporal in the rule itself that says we can't *examine* the property of the estate post-confirmation?"  [Tr. at 63 (emphasis added)].  The examination of property of the estate is a core matter and, thus, there is no question of this Court's subject matter jurisdiction under Resorts and Seven Fields.

3.      Second, the Supplemental Objections elide the fact that the Trustee's Rule 2004 requests are not aimed solely at investigating potential pre-petition state law claims of the Corporate Trust, but also (a) the Corporate Trust's fraudulent transfer claims under the Bankruptcy Code against the Bank Objectors who received tens of millions in fees at the closing of the Credit Agreement and (b) whether the claims of the Bank Objectors' indemnification by the Debtors should be disallowed, equitably subordinated and/or rejected as a matter of law.

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

These issues clearly "arise in" this bankruptcy "case" and provide a further basis for this Court to order the Rule 2004 discovery even after confirmation and without reference to related-to jurisdiction.

4.      Third, the fact that the documents requested may benefit the Lender Trust in addition to the Corporate Trust should not distract this rather straightforward legal analysis.    It certainly does not *divest* the Court of subject matter jurisdiction that attaches to the Corporate Trust's motion.    Indeed, each and every document demand in the Trustee's Rule 2004 requests is justified by the investigation of the Corporate Trust alone because the *factual* investigation by the Lender Trust is really just the "other side of the same coin."    Both are investigating the extent to which Excluded Parties under the Plan (and all Objectors so qualify) were responsible for leveraging the Debtors to the benefit of the Released Parties and themselves, while failing to disclose and/or (in the case of KPMG) cause the financial statements to adequately reflect the Debtors' exposure for health law fraud and abuse.    The only difference is the legal theories or causes of action the two Trusts may plead after completion of a thorough investigation.[3]  This is a distinction without a difference for the purposes of the instant motion for fact discovery through Rule 2004.

5.      Finally, even if the test for purposes of this Rule 2004 motion were whether this Court would hypothetically have related-to jurisdiction over an actual litigation commenced by the Trustee against one or more Objectors for pre-petition violations of state law, this is a solid case for the exercise of such jurisdiction.    As the Court noted, several cases recognize post-confirmation related-to jurisdiction over "certain types of action because of their nexus to the

---

[3]     Without presaging or limiting the Trustee's investigation, and simply by way of example, the same facts that give rise to Corporate Trust causes of action for professional malpractice, fraud, conspiracy and aiding and abetting breaches of fiduciary duty by the Released Parties also give rise to potential Lender Trust causes of action under the 2014 Credit Agreement and laws relating to gross negligence and material misstatements and omissions in connection with leveraged loan transactions.

plan" and the "specificity" with which they are contemplated by the Plan.  [Tr. 82-83 (citing BWI, AstroPower, and LGI).  The Trusts are successors to and representatives of the Debtors. As set forth in the Confirmation Order, the Trusts' ability to investigate the Preserved Estate Claims and Preserved Lender Claims against the Excluded Parties (including the Objectors herein) "was an essential part" of the compromise in the Plan that releases the Debtors' insiders and former equity holders.  Rule 2004 discovery by the Trusts into potential claims against Excluded Parties is necessary to and "inextricable" with central provisions of the Plan, thereby satisfying the "close nexus" test.  Moreover, even if the "specific description" test applies (and Objectors' are themselves torn, characterizing it as "flawed"), it is easily met here because the Lenders were the primary plan negotiators, clearly understood the potential materiality of the reserved claims against the Excluded Parties, including the Objectors, and specifically bargained to place all such claims into the Trusts.

6.      For these reasons, as more fully discussed herein and in the Motion and Reply, the Trustee respectfully requests that the Court enter an Order awarding the relief requested in the Motion.

## SUPPLEMENTAL REPLY

## I.    BANKRUPTCY RULE 2004 IS A CORE PROCEEDING.

### A.    This Rule 2004 Proceeding Is Core.

7.      KPMG disputes that a motion under Bankruptcy Rule 2004 is a core proceeding, contending that "[a] rule of procedure for taking discovery, in and of itself, does not confer subject matter jurisdiction."  KPMG Supp. Obj. Br., at ¶ 2.  But that misreads the Trustee's arguments, which are simply that there can be no dispute (i) that had this Motion been made before confirmation it would be "core," and (ii) there is no distinction under Rule 2004 itself

between pre- and post-confirmation examinations. This latter point is set forth in the numerous cases previously cited by the Trustee, see Motion, at ¶¶ 40-42 (cases cited), Reply, at 8-9 (cases cited), and was acknowledged by the Court and at least JPM/STB Objectors' counsel at oral argument. See May 4, 2016 Hearing Transcript ("Tr."), at 63:8-16 (The Court: "And where is there anything temporal in the rule itself that says we can't examine the property of the estate post-confirmation?" Ms. Forshaw: "I don't dispute your jurisdiction with respect to that aspect of the application."). Similarly, Section 1334(a) makes no distinction between the pre- and post-confirmation scope of bankruptcy jurisdiction. In re Boston Reg'l Med. Ctr., 410 F.3d 100, 106 (1st Cir. 2005).

8.    The Objectors also quarrel with the characterization of these proceedings as "core" because the Lender Trust is not investigating claims of the Debtors' estate; the Corporate Trust is and (they contend) the Trustee has only belatedly "shifted his focus" of this Motion from Lender Trust claims to Corporate Trust claims.    That accusation is as inaccurate as it is immaterial.    The Trustee's Motion was brought on behalf of both the Corporate and Lender Trusts, seeking Rule 2004 discovery relating to both corporate-assigned and lender-assigned claims.    In any event, the Objectors' latest submissions do not and cannot dispute the Trustee's assertion that the discovery sought from the targets for estate-based claims is identical to the discovery sought for the lender-based claims. See Tr., at 84:23-95:10 ("If you take a look at the Corporate Trust and what its focused on, it's the very same common nucleus of operative fact as the Lender Trust might want to focus on . . . We are simply trying, and the testimony bears this out, trying to figure out what happened here in this common nucleus of operative fact."). Thus, all of the discovery sought here is for the benefit of the estate and its successors.

9.      Given that the relief requested in the Trustee's Rule 2004 Motion is a core matter, this Court has subject-matter jurisdiction and should grant the Trustee's Motion. See In re Seven Fields Development Corp., 505 F.3d 237, 260 (3d Cir. 2007) ("Seven Fields").

**B.      There Are At Least Three Core Claims At Issue.**

10.     Even after plan confirmation, the Court retains subject-matter jurisdiction over core matters. Seven Fields, 505 F.3d at 260; Baker v. Simpson, 613 F.3d 346, 352 (2d Cir. 2010). There are at least three core claims which are the subject of the Trustee's investigation: (i) fraudulent transfer; (ii) claim disallowance; and (iii) equitable subordination. Each of these claims has been found to be "core" in this District, including in the cases cited by the Objectors. See AstroPower, 355 B.R. at 323 (stating that "[o]ther than the fraudulent transfer and claim disallowance counts, nothing in the Plaintiff's Complaint finds its genesis in either the Bankruptcy Code or this bankruptcy case" and, accordingly, that the fraudulent transfer and claim disallowance counts were core matters). On the basis of these "core" claims alone, the Trustee's Rule 2004 Motion is proper in scope and should therefore be granted.

11.     The Objectors' assertion that the Trustee's investigation of fraudulent transfer claims under 11 U.S.C. §§ 544 and 548, which are "core" claims, turns solely on matters of Millennium's intent and conduct, and therefore that only Millennium's own files are relevant, is nonsensical. The "badges of fraud" allow circumstantial proof of the fraudulent intent of the transferor, and some of the recognized badges of fraud are based on the relationship between the transferor and transferee, and consideration for the conveyance. See SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.), No. 08-11407 (BLS), Adv. Pro. No. 10-51389 (BLS), 2016 WL 1165634, at *4 (Bankr. D. Del. Feb. 8, 2016). Particularly here, where key original actors are no longer with Millennium and have been released, discovery of the recipients

of the transfer is warranted. The Plan Trusts believe that the internal files of the Objectors, which are the subject of the Rule 2004 Motion, will contain critical and otherwise unobtainable information about Debtor intent. "Badges of fraud" include, but are not limited to:  "(1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction." Id at *5.  The Bank Objectors are uniquely situated to provide evidence of these "badges of fraud."  Moreover, with respect to a claim for constructive fraudulent transfer, one issue that will require investigation is whether any Bank Objectors that received any portion of the fees in dispute met the "reasonably equivalent value" test under Bankruptcy Code Section 548(a)(1)(B)(i), which requires an analysis of the scope of the Bank Objectors' roles in connection with the 2014 Term Loan.  Additionally, the Trustee should be permitted to evaluate the viability of the good faith and value defense under Bankruptcy Code Section 548(c) in determining whether to bring fraudulent transfer claims, and discovery related to good faith includes an inquiry into what the transferee knew at the time of the transaction. See Brown v. General Electric Cap. Corp. (In re Foxmeyer Corp.), 286 B.R. 546, 581 (Bankr. D. Del. 2002) ("[A] 'good faith' analysis [under Bankruptcy Code Section 548(c)] will or will not be met depending upon whether a transferee possessed either fraudulent intent or knowledge regarding a transferor's fraudulent intent[.]").[4]

12.    Broad discovery also should be permissible here in connection with claims disallowance because the enforceability of the contract under which the Prior Agents seek

---

[4]    The JPM Objectors claim that the Excluded Parties did not receive $55 million in fees.  JPM Objectors' Supp. Br., at 2, n.2.  The Trustee believes, based on a further investigation, that the Bank Objectors received at least $36.5 million in fees, which is still a significant amount, and warrants a full investigation to determine if such fees should be disgorged.

indemnity from the Debtors is directly at issue. Accordingly, anything that could give rise to a defense to enforcement by the Prior Agents should be fair game for Rule 2004 discovery because the definition of "Cause of Action" (which have retained by the Plan Trusts) includes any defense. See Plan, Art. I(1.18).

13.      The Prior Agent Indemnity Claims are classified in Class 3 of the Plan. Those claims, which arise out of the 2014 Credit Agreement, were not Allowed by the Plan, but rather remain subject to Allowance. Only holders of Allowed Prior Agent Indemnity Claims are entitled to enforce the indemnification provisions under the 2014 Credit Agreement. The definition of "Allowed" in the Plan explicitly includes a claim allowed by order of this Court, and this Court retained jurisdiction over claim allowance, see Plan Section IX.A.(i), a core function of bankruptcy courts. 28 U.S.C. 157(b)(2)(B). Furthermore, broad discovery should be permissible in connection with potential equitable subordination claims under Bankruptcy Code Section 510(c). In general, a proponent of equitable subordination must meet a standard three-part test: "(1) [t]he claimant must have engaged in some type of inequitable conduct; (2) [t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) [e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." In re Winstar Commc'ns, Inc., 554 F.3d 382, 411-12 (3d Cir. 2009) (quoting Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 699-700 (5th Cir. 1977)). The misconduct that courts have deemed sufficiently inequitable to warrant equitable subordination include fraud, illegality, and breaches of fiduciary duties. See In re Sentinel Mgmt. Grp., Inc., 728 F.3d 660, 669 (7th Cir. 2013). Here, the Court should permit discovery into what the Objectors knew about any potentially fraudulent scheme that the Debtors may have been perpetrating and in which the Objectors may have been involved

for purposes of determining whether equitable subordination is appropriate.    See id.
Accordingly, the Court should grant the Trustee's Motion.

### C.    The Identical Core Facts Are Applicable to Potential Lender Claims.

14.    As referenced at the Hearing, the estate-based claims, such as fraudulent conveyance, provide the basis for simultaneous investigation of the lender-based claims as both arise out of the same nucleus of operative facts.    The $1.8 billion debt burden assumed by the Debtors, the concomitant "upstreaming" of more than 73 percent ($1.3 billion) of that money to the Objectors' clients, the insiders (except for the hundreds of millions to cash the Bank Objectors out of the Debtors' **2012** credit agreement and to provide them with tens of millions more in fees in 2014), the existence of huge, undisclosed loss contingencies that were inevitably and promptly realized—all pointing to "how [the Lender's] debt soured"—are relevant to the potential claims of **both** the Corporate and Lender Trusts. See Tr., at 84:14-86:22.    The scope of the Trustee's requested Rule 2004 relief is appropriate because the Motion seeks to discover and uncover the common nucleus of operative facts that rendered Millennium insolvent and caused astronomical creditor losses.    The Objectors' credit files, valuation files, work papers, memos and various communications not in the possession of the Debtors—i.e., those among themselves and to and from the Department of Justice, other investigatory bodies and third-parties—will almost certainly provide the Trusts with new and critical information.[5]

---

[5]    As noted at the hearing, the Trustee believes, e.g., that the JPM Objectors already have produced a significant amount of documents to the DOJ.  Tr., at 87 (noting that JPM apparently produced significant volume of documents to the DOJ in connection with DOJ investigation of Debtors commenced in 2012).  There would be no burden for the JPM Objectors to produce such documents to the Trustee.

## II.  THE OBJECTORS FAIL TO RAISE ANY NEW AUTHORITY OR ARGUMENT FOR DENIAL OF THE RELIEF REQUESTED.

### A.  Objectors' Arguments Noticeably Lack Supporting Authority.

15.    Despite the Objectors' request for yet another briefing opportunity, see Tr., at 90:10-18, 91:8-11, the Objectors' Supplemental Objections, as well as their original objections and arguments at the Hearing, noticeably fail to provide any support whatsoever for their contention that the Court lacks subject-matter jurisdiction to issue a Rule 2004 order post-confirmation.  The Court has now been presented with extensive legal argument, including five new post-Hearing pleadings submitted at the Objectors' request in a futile attempt to find authority for their arguments.  Yet, the Objectors still have not cited any authority that supports their argument.

16.    In fact, every single case cited by the Objectors in support of the Court's purported lack of subject-matter jurisdiction, including in their latest round of briefing, once again involves the issue of subject-matter jurisdiction over the prosecution of adversary proceedings (not Rule 2004 applications).  See, e.g., In re Insilco Techs., Inc., 330 B.R. 512, 517, 522 (Bankr. D. Del. 2005), aff'd, 394 B.R. 747 (D. Del. 2008) (trustee brought adversary proceeding against parties who wrongfully exercised control over the company to advance their own interests); BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.), 437 B.R. 160 (Bankr. D. Del. 2010) ("BWI") (trustee filed adversary proceeding to recover for third party breach of contract with debtor); AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309 (Bankr. D. Del. 2005) ("AstroPower") (trustee filed adversary proceeding claiming avoidance, breach of contract, breach of fiduciary duty, and other state law theories); Michaels v. World Color Press, Inc. (In re LGI, Inc.), 322 B.R. 95 (Bankr. D.N.J. 2005) ("LGI") (liquidating trust brought adversary proceeding alleging

negligence and theories of contract liability); Matter of Delaware & Hudson Ry. Co., 122 B.R. 887 (D. Del. 1991) (trustee brought adversary proceedings against debtor's shareholders and officers); see also Reply, at 11 n.3 (cases cited).   These authorities have no bearing on the adjudication of "core" matters such as the Trustee's Rule 2004 Motion.   As previously set forth, the Trustee merely seeks to use Rule 2004 for the purpose of initial investigation and has not made any decision whether to assert any particular claim against any target.[6]

17.    The Objectors' inability to cite any authority supporting their basic position is underscored by its inconsistency with well-established authority.   First, such a holding would require concluding that the numerous cases granting post-confirmation Rule 2004 examinations were all wrongly decided. See, e.g., In re Express One Int'l., Inc., 217 B.R. 215, 216-217 (Bankr. E.D. Tex. 1998); In re Cinderella Clothing Indus., Inc., 93 B.R. 373, 377 (E.D. Pa. 1988); In re The Antioch Co., Case No. 08-35741 (Bankr. S.D. Ohio, Aug. 6, 2009) [Dkt. No. 423] at 8;

---

[6]    KPMG argues that the Court's jurisdiction to adjudicate the Trusts' Rule 2004 Motion depends on its jurisdiction over potential resulting lawsuits or arbitrations, incorrectly framing the question before the Court as "whether it may and should exercise its jurisdiction to authorize discovery of KPMG where the Plan Trusts' sole stated purpose is to develop state-law malpractice claims against KPMG, claims which themselves are outside the Court's jurisdiction." See KPMG Supp. Obj. Br., at ¶ 4.  However, just as KMPG was wrong that a Rule 2004 request rises to the level of a dispute that implicates a contractual arbitration clause, see Reply, at ¶ 58, KPMG is also wrong that the jurisdictional test for hearing a Rule 2004 motion is the same as that for adjudicating a full-blown adversary proceeding.  In fact, the case law says the opposite.  See, e.g., In re Refco, Inc., No. 06 Civ. 1888(GEL), 2006 WL 1379616, at *2 (S.D.N.Y. May 16, 2006) ("The Committee's Rule 2004 motion is a core proceeding . . . [because] the investigation into the possible existence of those yet-to-be-determined claims is purely a bankruptcy matter, and is therefore properly categorized as core.").  Though cited by Objectors, the court's plain statement in In re East West Resort Development V., L.P., L.L.L.P., No. 10-10452 (BLS), 2014 WL 4537500 (Bankr. Del. Sept. 12, 2014), that "consideration of this [Rule 2004] matter constitutes a 'core proceeding'," did not in any way purport to depend on whether the court had jurisdiction to adjudicate the underlying claim. Id. at *6.

KPMG also argues against Rule 2004 discovery of it on the ground that it "had [no] role in the [2014] refinancing" of the Debtors, Tr. at 78, and that there is no clear specification in the Plan why KPMG is an Excluded Party or has information relevant to the Trustee's investigation of other Excluded Parties.  KPMG Supp. Obj. Br., at ¶ 14.  The short answer is that KPMG's work product on the Debtors' financial statements, including its consideration of the dividends paid to insiders and the loss contingencies relating to the government investigation into and False Claims Act and other litigation against the Debtors, is key to the Trustee's investigation.

Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.), 323 B.R. 180, 185-186 (Bankr. N.D. Tex. 2005).

18.    Second, such a holding would mean that the numerous cases finding that a Rule 2004 motion is a "core" matter, whether pre- or post-confirmation, were all also wrongly decided. See, e.g., Credit Suisse Secs. (USA) LLC v. Official Comm. of Unsecured Creditors (In re Refco, Inc.), No. 06 Civ. 1888 (GEL), 2006 WL 1379616, at *2 (S.D.N.Y. May 16, 2006); In re Recoton Corp., No. 04-2466 (DLC), 2004 WL 1497570, at *4 (S.D.N.Y. Jul. 1, 2004); In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 704 n.1 (Bankr. S.D.N.Y. 1991); In re East West Resort Dev. V, L.P., L.L.L.P., No. 10-10452 (BLS), 2014 WL 4537500, at *6 (Bankr. D. Del. Sept. 12, 2014).

19.    Third, to reach the Objectors' desired result, the Court would have to ignore the plain language of Rule 2004, and other related provisions of the Bankruptcy Code.

20.    Fourth, the Court would also have to ignore the Third Circuit's clear instruction not to engage in a "close nexus" analysis for "core" matters, given that the Trustee's Rule 2004 Motion is plainly a "core" matter. See Seven Fields, 505 F.3d at 260 ("The bankruptcy and district courts were not required to address the 'close nexus' test because the test was not applicable in this 'arising in' proceeding."); Resorts, 372 F.3d at 164-67.

21.    Finally, to reach the Objectors' desired result, the Court would need to determine that, post-confirmation, the right to discovery under Rule 2004 disappears, which is not supported by any case or by the text of the rule. A request for Rule 2004 discovery "arises in" the bankruptcy case, and "arises under" the Code since it is a creature of the Bankruptcy Rules and unavailable outside a title 11 case; there is no other court for the Trustee to go to for Rule 2004 relief. Again, given that the Trustee's requested relief cannot be adjudicated in any other

forum, there is no "temporal" limitation to the application of Rule 2004 under the plain language of the statute and applicable case law interpreting it, and there is no complaint before the Court that is only "related to" the bankruptcy estate, the Trustee's Motion must be core under applicable law.

**B.      The New "Specific Description" Cases Objectors Discuss
Either Further Support the Trustee's Relief, or Are Irrelevant.**

22.      The Objectors suggest that the "specific description" test employed in <u>BWI</u>, <u>LGI</u>, and <u>AstroPower</u> to determine post-confirmation subject-matter jurisdiction is flawed, and that the Court should instead employ the "close nexus" test as articulated by <u>Resorts</u>.  JPM Supp. Obj. Br., at ¶¶ 9-13.

23.      According to the Objectors, the "specific description" test (1) is based on the erroneous proposition that the "close nexus" test only applies to claims arising from conduct that occurred post-confirmation, which <u>Seven Fields</u> has since clarified, and (2) does not comport with <u>Resort</u>'s holding that parties cannot "write their own jurisdictional ticket."  <u>Id.</u>

24.      The Trustee agrees that the "specific description" test is not applicable. Moreover, <u>AstroPower</u>'s articulation of the "specific description" test, and finding of subject-matter jurisdiction, does not turn on the issue of whether a claim arose pre- or post-confirmation. Instead, <u>AstroPower</u> held that a "close nexus" conferring post-confirmation "related to" jurisdiction is established where a plan "specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors[.] . . . Under such

circumstances, 'bankruptcy court jurisdiction would not raise the specter of "unending jurisdiction" over continuing trusts.'" 335 B.R. at 325 (citing Resorts, 372 F.3d at 167).[7]

25.    In contrast, in Seven Fields, the Third Circuit concluded that the claims at issue were "core" claims and thus that the "close nexus" test did not even apply, as this Court should likewise conclude. 505 F.3d at 264-65. The Third Circuit then went on to address the issue of the applicability of the "close nexus" test in the post-confirmation contest, concluding that it is applicable to "related to" jurisdiction over any claim filed post-confirmation, regardless of when the underlying conduct occurred. Id. This finding does not contradict or challenge the "specific description" test as articulated in AstroPower, which does not rely on a distinction between claims arising from conduct occurring pre- and post-confirmation.

26.    The Objectors also mischaracterize the statement in Resorts that "neither the bankruptcy court nor the parties can write their own jurisdictional ticket" to suggest that the "specific description" test is open to abuse. As the Third Circuit explained, "[r]etention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction," and "where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by

---

[7]    The Objectors also argue that AstroPower was in fact based on LGI's purportedly erroneous interpretation of Resorts, which interpretation was "expressly abrogated in Seven Fields," in which the Objectors claim the Third Circuit specifically cited LGI as "an exemplar of wrongly-decided cases." JPM Supp. Obj. Br., at ¶ 11 n.4. However, the Objectors mischaracterize the Third Circuit's discussion in Seven Fields, which merely cited LGI as an example of the inconsistent opinions on whether the "close nexus" test is applicable "whenever there is a post-confirmation action filed" or whether it depends on "when the cause of action arose or the conduct occurred." Seven Fields, 505 F.3d at 263. In Seven Fields, the Third Circuit ultimately concluded that rather than stating the test in terms of when the cause of action arose, as LGI did, the test is applicable "post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred." 505 F.3d at 263. LGI's ultimate finding of a "close nexus" conferring subject-matter jurisdiction did not however turn exclusively on the fact that the cause of action there arose pre-petition, which subsequent courts, including in Seven Fields, have deemed to be irrelevant to the jurisdictional inquiry, but also on the significant fact that the cause of action was "specifically identified in the Asset Purchase Agreement among Excluded Assets" intended to be distributed as part of the reorganization process. LGI, 322 B.R. at 102-03. As the LGI court explained, the underlying claim in LGI was in fact "an important substantive element of the Plan to be prosecuted by the Distribution Trustee," thereby invoking the "implementation, consummation [and] execution" of the confirmed plan and thus conferring "related to" jurisdiction. Id. at 103.

agreement even in a plan of reorganization." 372 F.3d at 161 (emphasis added). AstroPower's "specific description" test does not purport to "create" jurisdiction through Plan language—instead, in accord with the Third Circuit's precedent, the "specific description" test merely looks to the court's existing pre-confirmation jurisdiction and whether the plan provides for retention of this jurisdiction post-confirmation.[8] See AstroPower, 335 B.R. at 325. The propriety of the AstroPower "specific description" test in evaluating the existence of a "close nexus" is further established by cases subsequent to Resorts, which have confirmed that a "close nexus" supporting post-confirmation jurisdiction may be found where the plan specifically enumerates the cause of action. See, e.g., BWI, 437 B.R. at 165; In re Solyndra, LLC, No. 15-50268, 15-50925, 2015 WL 6125246, at *5 (Bankr. D. Del. Oct. 16, 2015).

27.    In any event, BWI, LGI, and AstroPower are in fact irrelevant to this Court's determination of jurisdiction because they each involve questions of a court's jurisdiction to adjudicate actual claims in litigation, rather than a contested matter seeking relief under Rule 2004, as in the Trustee's case. See supra at ¶ 12.

28.    Still, even if they were applicable here, these cases and the "specific description" test they adopt would in fact support the Court's subject-matter jurisdiction over the Trustee's Motion. In both AstroPower and LGI, the bankruptcy court concluded that it did in fact have post-confirmation subject matter jurisdiction over the litigation claims asserted. For example, in AstroPower, the court concluded that where the claims at issue were not "accidental happenstance arising first in the operation of the post-confirmation trust," but instead, were "both

---

[8] The Objectors cite In re Washington Mutual, Inc., No. 08-12229 MFW, 2012 WL 4755209, at *4 (Bankr. D. Del. Oct. 4, 2012), in which they claim the court also appeared to recognize that the "specific description test amounted to a form of 'writing one's own jurisdictional ticket." JPM Supp. Obj. Br., at ¶ 12 n.6. In that case, however, the bankruptcy court simply agreed that the parties cannot "write their own jurisdictional ticket" by "merely including a generic retention clause in the Plan," but in fact, citing AstroPower, can establish a "sufficiently close nexus to retain post-confirmation jurisdiction" under the "specific description" test. See In re Washington Mut., Inc., 2012 WL 4755209, at *4.

logically linked to the Debtor's prepetition losses, and entrusted to the Plaintiff via the Plan for the benefit of the creditors," and the Plan and Confirmation Order provided for the retention of jurisdiction to enable the debtor to prosecute any and all litigation claims, this was sufficient to specifically describe the court's retention of its pre-confirmation "related to" jurisdiction. 335 B.R. at 324.

29.    Although the BWI court did not ultimately find subject-matter jurisdiction, the court's conclusion was based on the specific circumstance in that case of the lack of notice of the claims afforded to creditors.  In BWI, the court concluded that the plan's broad retention of jurisdiction language was insufficient specifically where "creditors who voted on the Plan had no specific knowledge of the claims." 437 B.R. at 166.  In contrast, here, only the Lenders were required to vote on the Plan, so the theory that notice and disclosure in the language of the Plan is critical to enable general creditors to understand the materiality of potential claims is irrelevant.[9]  The Lenders were key negotiators of the Plan and indisputably understood that the Retained and Assigned claims were an essential element of the bargain.  See Confirmation Order, NN (releases were an essential part of the compromise that allowed the continuation of the Preserved Estate Claims and Preserved Lender Claims).

30.    Moreover, the targets of the Trustee's Motion, including the Objectors, are exclusively identified in the Plan as excluded parties and cannot dispute their awareness that

---

[9]    As the KPMG Objectors note, citing BWI, "one of the functions of reservation of jurisdiction provisions is to provide notice to creditors regarding the importance of the preserved cause of action," arguing that if "the reservation is not specific to a particular claim asserted, there is no such notice, and the court has no jurisdiction over the claim."  KPMG Supp. Obj. Br., at ¶ 11.  The reasoning set forth in BWI and other "specific description" test cases, which centers on the policy consideration that such specifically-enumerated claims are necessary to provide notice to creditors of the importance of preserved causes of action, simply does not apply here.  See BWI, 437 B.R. at 165-66; KPMG Supp. Obj. Br., at ¶ 11.

potential claims and causes of action against them were retained in the Plan.[10]    The JPM

Objectors, in particular, were well aware (as the record on this Motion reflects), even prior to

Debtors' bankruptcy filing, that, consistent with disclosure in the Plan, they were targets of

claims that might be asserted relating to their conduct prior to and after the April 2014

recapitalization, and both the JPM Objectors and Citi, in particular, actively negotiated language

in the Plan in anticipation of claims being asserted against them post-Confirmation by one or

both Trusts.  See generally Declaration of Sigmund S. Wissner-Gross in Support of Trustee's

Motion for Bankruptcy Rule 2004 Discovery [Dkt. No. 339-1].

      31.    Thus, even if the Court applied the "specific description" test, such test would be

plainly satisfied here, given, inter alia, that the Plan specifically and expressly preserves claims

against all Excluded Parties, including each of the Objectors, and there is simply no issue of lack

of notice to general creditors.  Accordingly, the Plan's express identification of each of the

targets of the Trustee's Rule 2004 Motion, as well as the record supporting the clear significance

of the retained claims to the Plan, and the Plan's notice that issues of fraud and related

misconduct in connection with the 2014 restructuring and thereafter was integral to potential

claims against Excluded Parties, would satisfy the "specific description" test and confer subject-

matter jurisdiction over the Motion.

---

[10]  The JPM Objectors erroneously contend that "whether a potential target of a post-confirmation proceeding might have been on notice of a potential proceeding pre-confirmation is irrelevant" under the "specific description" test, citing BWI. JPM Supp. Obj. Br., at ¶ 16 n.9.  However, in BWI, the court merely held that the debtor's formal demand letter to one creditor providing notice of the claims being asserted was insufficient to substitute for specific reference in the plan because, while the demand letter "may have put Rialto on notice, the rest of the creditors who voted on the Plan had no specific knowledge of the claims." 437 B.R. at 166.

III.    **EVEN IF APPLICABLE, THE "CLOSE NEXUS" AND**
       **RELATED "PLAN INTEGRITY" TESTS ARE SATISFIED.**

    A.    **Even If the "Close Nexus" and "Plan Integrity" Tests Applied,**
       **They Would Be Satisfied Because the Trusts and Plan are Integrally Related.**

32.    Despite the Third Circuit's clear instruction in <u>Seven Fields</u> that a "close nexus" analysis is inapplicable for "core" matters at issue here, the Objectors continue to contend that the Trusts' requested relief is a non-core matter over which this Court lacks jurisdiction. Even if the "close nexus" and "plan integrity" tests were applicable, which they are not, the Trustee easily satisfies these tests. It is indisputable that the Trusts and Plan are integrally related. An essential element of the Plan is the preservation of <u>all</u> claims against Excluded Parties and funding of the Trusts by Millennium. The Trusts are successors to and representatives of the Reorganized Debtor, and there is almost 100% overlap between the beneficial owners of the Trusts and the Reorganized Debtor. <u>See</u> Plan §§ 2.6, 2.7, and 4.2; Confirmation Order NN, RR, SS and Plan ¶ 25(d).

33.    As previously mentioned, the Lenders, who negotiated the Plan under a highly-truncated timeline, with no time for any Examiner or Committee investigation, are both the sole beneficial owners of the Trusts and new equity and debt financiers of the Reorganized Debtor. The Reorganized Debtor is the sole funding source of the Trusts. The Trusts are successors to and representatives of the Debtor. The claims assigned to the Trusts include <u>any</u> claims against Excluded Parties, including the specifically-identified Objectors. The assigned claims are the flip side of the released claims. As set forth in the Confirmation Order, the releases of insiders and former equity "was an essential part" of the compromise that allowed the continuation of the Preserved Estate Claims and Preserved Lender Claims. Accordingly, the Trusts are an essential element of the Plan and are "inextricable" provisions. <u>See</u> Confirmation Order NN, RR and SS;

Plan ¶ 25(d) ("each Trust has joint and common interest in respect of Retained Causes of Action").

34.     Accordingly, if applicable, the Trustee's Rule 2004 Motion satisfies the "close nexus" test advanced by the Objectors, and this Court has subject-matter jurisdiction over the Motion.

### B.     The Bank Objectors' Indemnification Claims Against The Debtor Highlight The Interrelated Nature of the Trusts and Plan.

35.     In addition, under the April 2014 Credit Agreement, the Bank Objectors have certain indemnity rights, with the exclusion of any claims premised on their gross negligence or willful conduct. See 2014 Credit Agreement § 10.5. The right to payment on such indemnity claims depends on their Allowance, a matter committed to this Court's jurisdiction under the Plan and 28 U.S.C. § 157(b). The Trustee seeks discovery with respect to defenses to Allowance of the Prior Agent Indemnity Claims so that successful prosecution of any claims which may be brought does not impair either the reorganized Debtors' ability to provide the funding which they have committed to provide to the Trusts, or the value of the securities of the reorganized Debtors, due to indemnification obligations which may arise in respect of such claims against the reorganized Debtors. As a practical matter, any claim for indemnification by the Bank Objectors are integrally related to the Trusts' potential claims against the Banks, since such claims and defenses arise out of the enforceability of the 2014 Credit Agreement. Thus, the Trusts are entitled to full discovery at this stage of these closely-interrelated issues.[11]

---

[11]    The Objectors do not dispute that the Trustee has assumed, under the Plan, the right of the Debtors to object to certain pre-confirmation claims for indemnity that have been advanced by various of the Bank Objectors. See Trust Agreements § 2.6 (providing that the Trustee is the "duly appointed representative of the Debtors' estates for the purposes described herein . . . [and] succeeds to the rights and powers of the Debtors' estates and/or a trustee in bankruptcy with respect to the prosecution of the Assigned Actions . . . ."); see Plan, Art. 1(1.18) (providing that "Causes of Action" includes "with respect to the Debtors, the right to object to Claims or Equity Interests . . . .").

## CONCLUSION

**WHEREFORE**, for the reasons stated in the Motion, Reply, and this Supplemental Reply, the Trustee respectfully requests that this Court enter an order:  (i) authorizing the targeted discovery requested in the Motion; (ii) reserving all of the Trustee's rights to take further discovery (including depositions) of any individuals related to the Targets or any other party; and (iii) granting such other and further relief as is just and proper.

Dated:    May 20, 2016
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Richard S. Cobb, Esq. (Del. Bar No. 3157)
James S. Green Jr., Esq. (Del. Bar No. 4406)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
Email:  cobb@lrclaw.com
Email:  green@lrclaw.com

_Co-Counsel to the Trustee for the Plan Trusts,_
_with respect to all Targets except the JPM_
_Entities and Simpson Thacher_

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Sigmund S. Wissner-Gross, Esq.
7 Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email:  rstark@brownrudnick.com
Email:  swissnergross@brownrudnick.com

_Co-Counsel to the Trustee for the Plan Trusts_

**SEITZ, VAN OGTROP, & GREEN, P.A.**

/s/ Jared T. Green
_____
Jared T. Green, Esq. (Del. Bar No. 5179)
222 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 888-0600
Facsimile:  (302) 888-0606
Email:  jtgreen@svglaw.com

_Co-Counsel to the Trustee for the Plan Trusts,_
_solely with respect to the JPM Entities and_
_Simpson Thacher_

**WOLLMUTH MAHER & DEUTSCH LLP**
David H. Wollmuth, Esq.
Jeffrey Coviello, Esq.
500 Fifth Avenue
New York, NY 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050
Email:  dwollmuth@wmd-law.com
Email:  jcoviello@wmd-law.com

_Co-Counsel to the Trustee for the Plan Trusts,_
_except with respect to Simpson Thacher_