# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Millennium Lab Holdings II, LLC, *et. al.*, | Case No. 15-12284 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I.: 312, 313, 325, 326, 327, 328, 330, 339, 358, 359, 360, 361, 362, 367** |

## MEMORANDUM

This matter is before the Court on the motion (the "Rule 2004 Motion" or "Motion")[2] of Marc S. Kirschner, as trustee of two trusts created pursuant to the Debtors' plan of reorganization, seeking authority under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") to take discovery from certain third parties (the "Third Parties")[3] regarding the cause of the Debtors' financial collapse. The Third Parties each object[4] to the Rule 2004

---

[1] The Debtors were: Millennium Lab Holdings II, LLC; Millennium Health, LLC; and RxAnte, LLC.

[2] *Motion of the Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan or Reorganization, Confirmation Order, Bankruptcy Code Section 105(a) and Bankruptcy Rule 2004* (the "Rule 2004 Motion") [D.I. 312].

[3] The Trustee requests document production from: (a) JPMorgan Chase Bank, N.A; (b) J.P. Morgan Securities LLC; (c) Citibank Global Markets Inc.; (d) BMO Capital Markets Corp.; (e) Bank of Montreal; (f) SunTrust Bank; (g) Simpson Thacher & Bartlett LLP; and (h) KPMG LLP.

[4] *See Objection of JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and Simpson Thacher & Bartlett LLP to the Motion of the Plan Trustee for Authority to Take Discovery Under Rule 2004* (the "JP Morgan Objection") [D.I. 325]; *Objection of SunTrust Bank to the Motion of the Plan Trustee for Authority to Take Discovery Under Bankruptcy Rule 2004* (the "SunTrust Objection") [D.I. 326]; *Objection of Citigroup Global Markets Inc. to the Motion of the Plan Trustee for Authority to Take Discovery Under Rule 2004* (the "Citigroup Objection") [D.I. 327]; *Objection to Motion of the Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan of Reorganization, Confirmation Order, Bankruptcy Code Sections 105(a) and Bankruptcy Rule 2004* (the "BMO Objection") [D.I. 328]; *KPMG LLP's Objections to the Plan Trusts' Motion to take Targeted Discovery, Pursuant to the Debtor's [sic] Confirmed Plan of Reorganization, Confirmation Order, Bankruptcy Code Section 105(a) and Bankruptcy Rule 2004* (the "KPMG Objection") [D.I. 330]; *Supplemental Objection of JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and Simpson Thacher & Bartlett LLP to the Motion of the Plan Trustee for Authority to Take*

Motion. The Court has considered the Rule 2004 Motion, each Objection, the argument of counsel at a hearing held on May 4, 2016 and the supplemental submissions made post-hearing. After due deliberation, the Court **FINDS and CONCLUDES** as follows:

**Background[5]**

The Debtors are in the business of providing laboratory-based diagnostic testing. In April 2014, the Debtors borrowed approximately $1.8 billion[6] pursuant to a certain senior secured term loan agreement (the "2014 Credit Agreement"), the proceeds of which were primarily used to pay off certain existing debt and provide a special dividend to equity holders, as well as to provide for working capital.

On November 10, 2015, the Debtors filed petitions for chapter 11 relief together with their *Prepackaged Joint Chapter 11 Plan of Reorganization of Millennium Lab Holdings II, LLC* (as later amended, the "Plan").[7] The Plan contained a settlement (embodied in a prepetition restructuring support agreement) that resolved disputes between the Debtors, certain

---

*Discovery Under Rule 2004* (the "JP Morgan Supplemental Objection") [D.I. No. 358]; *Joinder of Citigroup Global Markets Inc. to the "Supplemental Objection of JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and Simpson Thacher & Bartlett LLP to the Motion of the Plan Trustee for Authority to Take Discovery Under Rule 2004"* (the "Citigroup Supplemental Objection") [D.I. 359]; *KPMG LLP's Supplemental Objections to the Plan Trusts' Motion to Take Targeted Discovery* (the "KPMG Supplemental Objection") [D.I. 360]; *Supplemental Objection of SunTrust Bank to the Motion of the Litigation Trustee for Authority to Take Discovery Under Bankruptcy Rule 2004* (the "SunTrust Supplemental Objection") [D.I. 361]; *Joinder of the BMO Entities in the Supplemental Objection Filed by JPMorgan Chase Bank, N.A. to Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan or Reorganization, Confirmation Order, Bankruptcy Code Section 105(a) and Bankruptcy Rule 2004* (the "BMO Supplemental Objection") [D.I. 362] (each, an "Objection," and collectively, the "Objections").
[5] The Court is writing for the parties. A detailed background of the Debtors, their business, the Plan and the bankruptcy case is found in *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703 (Bankr. D. Del. 2016), which supplements the background discussion herein.
[6] The 2014 Credit Agreement permitted borrowings up to $1,825,000,000. *See* Trustee Ex. 2. The Trustee states that the amount of indebtedness incurred pursuant to the 2014 Credit Agreement was $1.8 billion. *See* Rule 2004 Motion at ¶ 2.
[7] *Amended Prepackaged Joint Chapter 11 Plan of Reorganization of Millennium Lab Holdings II, LLC* [D.I. No. 182].

prepetition lenders under the 2014 Credit Agreement and the Debtors' equity holders,

Millennium Lab Holdings, Inc. ("MLH") and TA Millennium, Inc. ("TA").  Under the

settlement, MLH and TA contributed $325 million to the Debtors and received releases

from the Debtors and third parties; the claims under the 2014 Credit Agreement were

converted into a new term loan in the amount of $600 million; the prepetition lenders

received 100% of the equity of the reorganized Millennium; two trusts were created to

pursue additional recoveries against "Excluded Parties";[8] and all other creditors received a

100% recovery.[9]

On December 14, 2015, an order confirming the Plan was entered.  As anticipated,

the Plan provided for the creation of the two trusts: the Millennium Corporate Claim Trust

(the "Corporate Trust") and the Millennium Lender Claim Trust (the "Lender Trust," and

collectively with the Corporate Trust, the "Trusts").  The Corporate Trust holds the

Debtors' retained claims, and the Lender Trust holds claims contributed by the Consenting

Lenders.[10]  All holders of claims arising under or relating to the 2014 Credit Agreement are

---

[8] Under the Plan, the term "Excluded Parties" means any party not expressly identified as one of the Released Parties, or as a Related Party of such Released Party, including but not limited to (a) Bank of Montreal, (b) BMO Capital Markets, (c) Citibank Global Markets Inc., (d) Citibank, N.A., (e) J.P. Morgan Securities LLC, (f) JPMorgan Chase Bank, N.A., in its individual corporate capacity and in its capacity as Prior Administrative Agent, (g) KPMG LLP, (h) Skadden, Arps, Slate, Meagher & Flom LLP (including its partners and other attorneys), (i) Suntrust Bank, and (j) any affiliates or Related Parties of the foregoing parties listed in (a) through (i).  Although not specifically listed in this definition, Simpson Thacher & Bartlett LLP falls within the definition of Excluded Parties.
[9] *In re Millennium Lab Holdings II, LLC*, 543 B.R. at 706; *see also* Plan Confirmation Court Decision Tr. 12:4–5, Dec. 11, 2015 [D.I. 206].
[10] Capitalized terms not defined herein are ascribed the meaning provided to them in the Plan.

the beneficiaries of the Corporate Trust,[11] while the Consenting Lenders are the beneficiaries

of the Lender Trust.[12] The Plan provided funding for both Trusts.[13]

On December 21, 2015, Mr. Kirschner (the "Trustee") was appointed as the trustee

of both Trusts. On April 6, 2016, the Trustee filed the Rule 2004 Motion seeking authority

to examine the Third Parties on behalf of both the Corporate Trust and the Lender Trust.

The Trustee seeks to investigate claims the Trusts may have against the Third Parties related

to the Debtors' financial collapse. In particular, the Trustee is seeking to investigate (i) the

banks that served as arrangers and/or administrative agents under the 2014 Credit

Agreement (i.e. J.P. Morgan Chase Bank, N.A.; J.P. Morgan Securities LLC; Citibank

Global Markets Inc.; BMO Capital Markets Corp.; Bank of Montreal[14]; and SunTrust Bank)

(ii) Simpson Thacher & Bartlett LLP, the law firm that represented J.P. Morgan Chase

Bank, N.A. (the administrative agent under the 2014 Credit Agreement) and J.P. Morgan

Securities LLC (the joint lead arranger and joint bookrunner under the 2014 Credit

Agreement) in connection with the 2014 Credit Agreement; and (iii) KPMG, the Debtors'

historical accounting firm (collectively, the "Objectors").

On April 22, 2016, the Objectors filed their Objections to the Rule 2004 Motion.

The Objectors generally assert that: (i) the Court lacks subject matter jurisdiction over the

post-confirmation Rule 2004 Motion and (ii) the information requested in the Rule 2004

Motion either falls outside of the scope of Rule 2004 or is overly broad. Separately, KPMG

---

[11] *See* Plan, Article V(F)(iii).
[12] *See* Plan, Article V(G)(iii).
[13] *See* Plan, Article V(F)(i),(ii); Plan, Article V(G)(i),(ii).
[14] The Trustee appears to refer to Bank of Montreal as an administrative agent or arranger. However, it is not evident to the Court that Bank of Montreal served in either of these roles with respect to the 2014 Credit Agreement.

argues that any discovery disputes between KPMG and the Debtors are governed by the arbitration clause contained in the prepetition engagement agreement between KPMG and the Debtors dated July 10, 2015 (the "KPMG Engagement Agreement").[15]  On April 29, 2014, the Trustee filed an omnibus reply.[16]

On May 4, 2016, the Court held an evidentiary hearing on the Rule 2004 Motion.[17] The Trustee's declaration in support of the Rule 2004 Motion was admitted without objection and the Trustee provided additional live testimony.  The Trustee testified that he believes that: (i) substantial harm was caused to the Debtors as a result of the 2014 Credit Agreement; (ii) an investigation regarding the circumstances surrounding the origination and papering of the 2014 Credit Agreement is appropriate; and (iii) the Third Parties possess information regarding these circumstances and regarding the possible attendant damages. Nevertheless, the Trustee further testified that "[t]he relief requested in the [2004] Motion is truly in the nature of an initial investigation.  No decision has been made to initiate litigation against any party."[18]

Following the hearing, the parties provided limited supplemental briefing.[19]

---

[15] *See* KPMG Objection at ¶¶ 22–23 [D.I. 330].

[16] *Plan Trustee's Omnibus Reply to Objections to the Motion of the Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan of Reorganization, Confirmation Order, Bankruptcy Code Sections 105(a) and Bankruptcy Rule 2004 (the "Trustee's Omnibus Reply") [D.I. 339].*

[17] *See* Rule 2004 Mot. Hr'g Tr., May 4, 2016 [D.I. 353].

[18] *Declaration of Marc S. Kirschner in Support of the Trustee's Motion to Take Targeted Discovery Pursuant to Bankruptcy Rule 2004 at ¶ 9 ("Kirschner Declaration") [D.I. 313].*

[19] *See* JP Morgan Supplemental Objection; Citigroup Supplemental Objection; KPMG Supplemental Objection; SunTrust Supplemental Objection; BMO Supplemental Objection; *Plan Trustee's Omnibus Supplemental Reply to Supplemental Objections of the Motion of the Plan Trustee for Authority to Take Targeted Discovery, Pursuant to the Debtors' Confirmed Plan of Reorganization, Confirmation Order, Bankruptcy Code Sections 105(a) and Bankruptcy Rule 2004 [D.I. 367].*

**Discussion**

      **I.**      **Subject Matter Jurisdiction**

      The Court has authority to determine whether it has subject matter jurisdiction over this Motion.[20]

      Bankruptcy courts derive subject matter jurisdiction from federal statute, rather than Article III of the constitution.[21]  Nevertheless, "[t]he bankruptcy court's jurisdictional mandate is quite broad."[22]  Pursuant to 28 U.S.C. §§ 1334 and 157, bankruptcy courts have subject matter jurisdiction over four types of matters, pending referral from the district court: "(1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11."[23]

      Cases falling under the first three categories are typically referred to as core proceedings, whereas proceedings "related to" a case under title 11 are designated as non-core proceedings.[24]  Regardless of whether a proceeding is designated core or non-core, the bankruptcy court has subject matter jurisdiction over the matter.

      "Cases under title 11" refers to the bankruptcy petition itself.[25]

---

[20] *See, e.g., In re BWI Liquidating Corp.*, 437 B.R. 160, 163 (Bankr. D. Del. 2010) (citation omitted) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

[21] *See, e.g., In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (citations omitted).

[22] *In re McMahon Books, Inc.*, 173 B.R. 868, 873 (Bankr. D. Del. 1994).

[23] 28 U.S.C. §§ 1334 and 157; *see also In re Resorts Int'l, Inc.*, 372 F.3d at 162.

[24] *See In re Resorts Int'l, Inc.*, 372 F.3d at 162 (citation omitted).

[25] *See In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 440 (Bankr. D. Del.), *appeal dismissed sub nom., In re New Century TRS Holdings Inc.*, 526 B.R. 562 (D. Del. 2014), *aff'd sub nom., In re New Century TRS Holdings, Inc.*, 619 F. App'x 46 (3d Cir. 2015) (citation omitted).

A proceeding 'arises under' title 11 if "the Bankruptcy Code creates the cause of action or provides the substantive right invoked."[26]  Examples of proceedings "arising under" title 11 include causes of action to recover fraudulent conveyances, avoidance actions brought under section 544(b), actions to recover postpetition transfers under section 549, actions against general partners under section 723, controversies regarding whether to appoint or elect a trustee under chapter 11, motions to obtain financing with priority over existing liens, and sales free and clear of liens.[27]

A proceeding 'arises in' title 11 if the proceeding "by its nature, and not the particular factual circumstance, could arise only in the context of a bankruptcy case."[28]  Examples of proceedings "arising in" title 11 includes "'administrative matters' such as allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, [and] orders permitting the assumption or rejection of contracts."[29]

Whether a proceeding 'relates to' a bankruptcy case varies depending on whether the proceeding is commenced pre or post confirmation.  Pre-confirmation, a proceeding 'relates to' a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[30]  Examples of "related to" jurisdiction pre-confirmation typically include "causes of action owned by the debtor that became property of a title 11 estate under section 541 (as distinguished from postpetition causes of

---

[26] *Id.* at 441 (citations omitted); *see also* 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e](i) (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016).
[27] *See* 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e](i) (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016).
[28] *In re New Century TRS Holdings, Inc.*, 505 B.R. at 441 (citation omitted).
[29] *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006), *as amended* (Mar. 17, 2006) (citation omitted).
[30] *Id.* at 164 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

action, i.e., those that come into existence during the pendency of the bankruptcy case)" and (2) "suits between third parties that in the absence of bankruptcy, could have been brought in a district court or a state court."[31]  Post-confirmation, a bankruptcy court's "related to" jurisdiction shrinks, and therefore, as first outlined by the Third Circuit in *In re Resorts International*, a proceeding 'relates to' a bankruptcy case post-confirmation only if "there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter."[32]  "Related to" jurisdiction post-confirmation includes proceedings to construe and enforce provisions of a plan, and matters affecting the interpretation, implementation, consummation, execution or administration of a confirmed plan.[33]

Both the Trustee, in his initial submission, and therefore the Objectors, in their Objections, argue that the Rule 2004 Motion should be analyzed in the context of the "related to" jurisdictional analysis laid out in *Resorts*.  The Objectors argue that the Rule 2004 Motion does not have the mandated close nexus to the bankruptcy plan or proceeding, and thus the Court does not have bankruptcy court jurisdiction over the matter.  The Court disagrees. [34]

The "related to" analysis proposed by the Objectors is unsuitable for a Rule 2004 motion.  Multiple courts have held that Rule 2004 is a rule of *bankruptcy* procedure that does

---

[31] 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e](ii) (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016).

[32] *In re Resorts Int'l, Inc.*, 372 F.3d at 166–67.

[33] *Id.* at 167, 168–69.

[34] *See, e.g.*, JP Morgan Objection at ¶¶ 9–16; KPMG Objection at ¶¶ 8–14; JP Morgan Supplemental Objection ¶¶ 6–8; KPMG Supplemental Objection at ¶¶ 6–16.

not exist "independent of a bankruptcy environment."[35] Put another way, Rule 2004 "by its

nature, and not the particular factual circumstance, could arise only in the context of a

bankruptcy case."[36] As such, Rule 2004 "arises in" title 11 of the Bankruptcy Code, and the

Court has subject matter jurisdiction to adjudicate this dispute.[37]

The fact that this Rule 2004 Motion was filed post-confirmation does not alter this

conclusion. Four years after *Resorts*, the Third Circuit in *Seven Fields* explored post-

confirmation jurisdiction in the context of "arising in" jurisdiction. In *Seven Fields*, the court

held that once the bankruptcy court determines that it has "arising in" jurisdiction over a

matter, the analysis is complete.[38] The court explained:

> After considering the parties' arguments, we will affirm the order of the
> district court and thus, in effect, the order of the bankruptcy court as we
> conclude that the bankruptcy court had core jurisdiction in this case. The
> bankruptcy and district courts were not required to address the "close nexus"
> test because the test was not applicable in this "arising in" proceeding. As we
> discussed in *Resorts*, the "close nexus" standard only applies for the purposes
> of determining whether a federal court has jurisdiction over a non-core
> "related to" proceeding in the post-confirmation context. Appellants seem to
> believe that any time a party files a case post-confirmation, the "close nexus"
> test is triggered. This is plainly not the case. While courts may choose to rely
> on "related to" jurisdiction because it is the broadest category of federal
> bankruptcy jurisdiction when examining their own jurisdiction, it certainly is
> not incumbent upon them to do so, because, as occurred here, a party may
> argue and a court may decide that a proceeding falls within one of the
> narrower categories of jurisdiction, such as "arising in" jurisdiction, in which
> case "related to" jurisdiction and the corresponding "close nexus" test are not
> implicated.[39]

---

[35] *In re Refco, Inc.*, No. 06 Civ. 1888 (GEL), 2006 WL 1379616, at *2 (S.D.N.Y. May 16, 2006)
(emphasis in original) (citation omitted); *see also In re Recoton Corp.*, No. 04 Civ. 2466 (DLC), 2004
WL 1497570, at *4 (S.D.N.Y. July 1, 2004) (citation omitted) (Rule 2004 is "an action that has as its
foundation the creation, recognition, or adjudication of rights which would not exist independent of
a bankruptcy environment.").

[36] *In re New Century TRS Holdings, Inc.*, 505 B.R. at 441.

[37] A determination that the Court has "arising under" rather than "arising in" jurisdiction would not
alter the conclusion that the Court has subject matter jurisdiction over the Motion.

[38] *See In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260 (3d Cir. 2007).

[39] *Id.* (citations omitted).

The court in *Seven Fields* further explained that in contrast to cases based on "related to" jurisdiction, "cases that 'aris[e] in' the bankruptcy case must satisfy a stringent standard in which the matter must have an intimate connection with the bankruptcy proceedings, and *thus the stage at which the complaint is filed is not determinative*."[40] Accordingly, unlike with "related to" jurisdiction, there is no comparable constriction on the Court's "arising in" jurisdiction post-confirmation, and the Court has subject matter jurisdiction over the Rule 2004 Motion.

Notwithstanding this straightforward analysis, the Objectors argue that the Court, in conducting its post-confirmation jurisdictional analysis, should not look at the Rule 2004 Motion itself, but rather should look through the Motion to the underlying causes of actions that the Trustee *may* bring based on information gathered from his investigations. The Objectors contend that because the causes of action that will follow an investigation are non-core and do not have the requisite "close nexus" to the bankruptcy proceeding, the Court does not have jurisdiction to adjudicate this Rule 2004 Motion.[41] Such a contention endows the Court with prophetic powers it does not, and cannot, have. As numerous courts have recognized when presented with a Rule 2004 motion, "there is no way to determine where the investigations will lead, what claims may be revealed, and what issues are core and non-core."[42]

---

[40] *Id.* at 265 n.26 (alteration in original) (emphasis added).

[41] *See, e.g.*, JP Morgan Objection at ¶¶ 9–16; KPMG Objection at ¶¶ 8–14; JP Morgan Supplemental Objection at ¶¶ 6–8; KPMG Supplemental Objection ¶¶ 4–5. While this argument was premised on "related to" jurisdiction, I will consider it nonetheless.

[42] *In re Friedman's, Inc.*, 356 B.R. 779, 784 (Bankr. S.D. Ga. 2005); *see also In re Refco, Inc.*, 2006 WL 1379616, at *2 (citation omitted) (finding that while the claims that the committee may later bring may be non-core, "the investigation into the possible existence of those yet-to-be-determined claims [via a Rule 2004 examination] is purely a bankruptcy matter"); *In re Table Talk, Inc.*, 51 B.R. 143, 146 (Bankr. D. Mass. 1985) (emphasis in original) (stating, in the mandatory withdrawal context,

The Court is not persuaded that the cases cited by the Objectors dictate a different outcome. First, almost all of the cases cited by the Objectors were decided prior to *Resorts* and *Seven Fields*, and thus do not perform the mandated analysis in the Third Circuit.

Second, while some of the decisions offered by the Objectors are couched in a jurisdictional framework, a careful reading demonstrates that their analyses truly turns on whether the requested examinations comport with the scope of Rule 2004, rather than whether the court has jurisdiction over the motions. So, for example, in *In re Express One International, Inc.*, the court evaluated whether the party requesting the Rule 2004 examinations had demonstrated good cause for the 2004 examinations, not whether the court had jurisdiction to decide the Rule 2004 motion.[43] And in *In re Good Hope Refineries, Inc.*, the court specifically held that it had jurisdiction over a post-confirmation request for a Rule 205 (now 2004) examination, but denied the requested relief because the examination did not fall within the scope of the rule.[44]

---

that even assuming *arguendo* that an antitrust suit, "when and if it is filed, would be subject to mandatory withdrawal" because it was non-core "it does not logically follow that a Rule 2004 examination would, at this time, be precluded by a future contingency."); *cf. In re SemCrude L.P.*, No. 11-1174 (SLR), 2012 WL 5554819, at *3 (D. Del. Nov. 15, 2012) (affirming the bankruptcy court's decision to look at the motion before it–a motion to enjoin–and not the subject matter of the underlying litigation pending in a different court when conducting its jurisdictional analysis); *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 254–55 (Bankr. S.D.N.Y. 2005) (citing Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL § 501.3, at 826 (2004 ed.)) (explaining that "[e]ven if the Trustee ultimately intends to pursue state law claims, federal law nonetheless controls the privilege" as an examination under Rule 2004 is "aimed at discovering evidence upon which future causes of action may be based and is therefore governed by bankruptcy law rather than state substantive law.").

[43] *See In re Express One Intern., Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998).

[44] *See In re Good Hope Refineries, Inc.*, 9 B.R. 421, 422-23 (Bankr. D. Mass 1981) (emphasis added) ("I am satisfied that this Court can properly exercise jurisdiction over actions brought by a Debtor after a Plan has been confirmed by the Court, even if such actions are against a post-filing creditor, with no claim against the estate…I now turn to the issue of whether or not, under the facts of this case, the Court *should* exercise its jurisdiction.").

Finally, in *In re Cinderella Clothing Industries*, the bankruptcy court did look through the Rule 2004 request to the potential causes of action that would stem from an investigation in order to determine whether the court should grant the Rule 2004 motion.[45] In that case, certain creditors sought to take investigations in order to bolster an effort to dismiss or convert the bankruptcy case, or modify a confirmed plan. Because dismissal, conversion or modification of the plan were time barred and/or because the movants would not have standing to seek that relief, the court denied the requested Rule 2004 examination (while permitting other examinations on specific topics).[46] The court further stated that whether a cause of action existed in another forum was not relevant. To the extent that this is a universal statement, the Court respectfully disagrees and notes that the case cited in support of that proposition was in a different legal context.[47]

None of these cases convince the Court that in order to determine whether it has subject matter jurisdiction, the Court must speculate over possible causes of action that may be pursued after the investigation is complete. When evaluating jurisdiction, the Court will look at the motion in front of it—the Rule 2004 Motion—and not at a future lawsuit that the Trustee may file.

---

[45] *See In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 378-79 (Bankr. E.D. Pa. 1998).

[46] *See Id.* The court did permit a Rule 2004 examination to the extent it was "limited in scope to the enforcement of the asset purchase agreement and the debtor's ability to comply with the terms of the confirmed plan." *Id.* at 379.

[47] Similarly, in *In re Barnes,* the court found that because it would not have jurisdiction over the breach of contract claim that was the subject of the Rule 2004 examination, the Rule 2004 examination would be inappropriate. *See In re Barnes*, 365 B.R. 1, 4-6 (Bankr. D.D.C. 2007). But, *Barnes* was not a post-confirmation chapter 11 case, rather, it was an individual chapter 7 case that had not yet been closed by the chapter 7 trustee. The *Barnes* court specifically stated that the requested examination did not relate to the administration of the bankruptcy estate or the rights, liabilities or obligations of the debtor. *Id.* at 3.

The Objectors' final challenge to subject matter jurisdiction also fails.  Certain of the Objectors argue that the Plan does not contain the requisite reservation of jurisdiction language to provide the Court with jurisdiction over the Motion.[48]  The cases cited by these Objectors are inapposite as they analyze plan provisions in the post-confirmation "related to" jurisdictional context.[49]  In the context of post-confirmation "related to" jurisdiction, courts have held that a plan needs to contain a specific retention of jurisdiction provision because such language helps ensure that "bankruptcy court jurisdiction would not raise the specter of 'unending jurisdiction'" post-confirmation.[50]  But, when the court's jurisdiction 'arises in' title 11, the cause of action has an "intimate connection to the bankruptcy proceedings" and therefore there is less of a risk of "unending jurisdiction."[51]

*In re Insilco* is instructive.[52]  In that case, Judge Carey found post-confirmation jurisdiction over core claims without analyzing the reservation of rights language in the relevant plan, but denied post-confirmation jurisdiction over non-core claims where the plan did not contain the requisite reservation of rights.[53]  Here too, the Court need not determine whether the Plan contains the requisite reservation of rights language to determine its subject matter jurisdiction over the Rule 2004 Motion.  The Court's subject matter

---

[48] *See, e.g.*, KPMG Objection at ¶ 13 n.3; KPMG Supplemental Objection at ¶¶ 6–16.

[49] *See, e.g., In re BWI Liquidating Corp.*, 437 B.R. at 166 (concluding that "a Plan must specifically describe a cause of action in order to retain 'related to' jurisdiction."); *see also In re AstroPower Liquidating Trust*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) (citation omitted) ("The Court concludes that where, as here, the Plan specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation.").

[50] *In re BWI Liquidating Corp.*, 437 B.R. at 165 (citation omitted); *see also In re AstroPower Liquidating Trust*, 335 B.R. at 325 (citation omitted).

[51] *In re Seven Fields Dev. Corp.*, 505 F.3d at 265 n.26.

[52] *See In re Insilco Techs., Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005), *aff'd*, 394 B.R. 747 (D. Del. 2008).

[53] *See Id.* at 519-26.

jurisdiction over the Rule 2004 Motion stems from the fact that it is a proceeding that 'arises in' title 11 of the Bankruptcy Code (i.e. it is a core proceeding).[54]

Having dealt with all of the objections to the Court's jurisdiction, the Court concludes that it has subject matter jurisdiction over the Rule 2004 Motion.

## II.    Scope of the Trustee's Rule 2004 Motion

Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity."[55]

Rule 2004 further provides that:

> [t]he examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.  In . . . a reorganization case under chapter 11 of the Code . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.[56]

The purpose of a Rule 2004 examination is to "discover the nature and extent of the bankruptcy estate" in order to distribute debtor's assets for the benefit of its creditors.[57] "Legitimate goals of Rule 2004 examinations include 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'"[58]

Potential examinees include "third parties that possess knowledge of the debtor's

---

[54] The Court takes no position on the need to review a plan for retention of jurisdiction language with respect to matters "related to" the bankruptcy case.

[55] Fed. R. Bankr. P. 2004(a).

[56] Fed. R. Bankr. P. 2004(b).

[57] *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (citation omitted); *see also In re Recoton Corp.*, 307 B.R. at 755 (citation omitted).

[58] *In re Washington Mut., Inc.*, 408 B.R. at 50 (quoting *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)).

acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate."[59]

A Rule 2004 examination is not a deposition; it serves a different purpose and is governed by different procedural rules.[60] "Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute," the scope of Rule 2004 is broad and unfettered, and has been likened to a "fishing expedition" and "an inquisition."[61] Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure.[62]

Nevertheless, parties do not have an absolute right to Rule 2004 examinations—the granting of a Rule 2004 examination is dependent on the discretion of the court.[63] The rule requires a balancing of "the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination."[64] Further, Rule 2004 is not available to creditors seeking "to use this section to deal with their special problems."[65]

---

[59] *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014) (citations omitted).

[60] *See Simon v. FIA Card Services*, 732 F.3d 259, 268 (3d Cir. 2013) (citing *In re J & R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010)).

[61] *In re J&R Trucking, Inc.*, 431 B.R. at 821; *In re Good Hope Refineries, Inc.*, 9 B.R. at 422 (citations omitted) (discussing Rule 205, the predecessor to Rule 2004); *In re Washington Mut., Inc.*, 408 B.R. at 50 (citation omitted).

[62] *See In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (citations omitted).

[63] *See* Fed. R. Bankr. P. 2004(a) (emphasis added) ("On motion of any party in interest, the court *may* order the examination…"); *see also In re Enron Corp.*, 281 B.R. at 840.

[64] *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

[65] *In re J&R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) (quoting Norton Bankruptcy Rules, 2009–10 ed., Rule 2004 ed. comment (c), at 136–37).

**The Rule 2004 Motion on behalf of the Corporate Trust**

The Trustee seeks to conduct an investigation on behalf of the Corporate Trust in order to explore prepetition causes of action the Debtors may have against the Third Parties. In particular, the Trustee states that he seeks document production bearing upon the Debtors' financial collapse and chapter 11 filing. He argues that the facts as he knows them to date create "a strong suspicion of wrongdoing" in connection with the 2014 Credit Agreement, which caused creditors substantial harm.[66] Proceeds from the claims (if any) the Trustee subsequently chooses to bring on behalf of the Corporate Trust based on the results of his Rule 2004 investigation will be distributed to all creditors holding claims in Class 2.[67] Thus, the Trustee's Rule 2004 Motion with respect to the Corporate Trust fits squarely within the purpose of Rule 2004, as he seeks to examine third parties for the purpose of "discovering assets, examining transactions, and determining whether wrongdoing has occurred" on behalf of the Debtors' estate.[68]

The Objectors argue that the Trustee has failed to demonstrate the requisite good cause to warrant the requested Rule 2004 examinations,[69] or that, at the very least, the discovery requests promulgated by the Trustee are overly burdensome and should be narrowed.[70]

---

[66] Rule 2004 Motion at ¶ 2.

[67] Claimants in Class 2 are holders of claims arising under or relating to the 2014 Credit Agreement. *See* Plan, Article III(C)(ii). Under the Plan, general unsecured claims are paid in full in case. *See* Plan, Article III(C).

[68] *In re Washington Mut., Inc.*, 408 B.R. at 50 (citation omitted).

[69] *See, e.g.*, JP Morgan Objection at ¶¶ 21–22; KPMG Objection at ¶¶ 15–21; SunTrust Objection at ¶ 2; BMO Objection at ¶¶ 36–41.

[70] *See, e.g.*, JP Morgan Objection at ¶¶ 23–31; KPMG Objection at ¶¶ 18–21; Citigroup Objection pp. 1–2; SunTrust Objection at ¶ 3; BMO Objection at ¶¶ 26–35, 42–51.

The party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.[71] "Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice."[72] The Trustee has testified that the examinations are necessary to "enable the Plan Trusts to determine the scope of viable claims that may exist on behalf of the Plan trusts against potential third parties that may be culpable for causing such harm to the Debtors."[73] The fact that the Trustee already has access to certain documents and information of the Debtors does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of the Trustee's viable claims.[74] As such, the Trustee has demonstrated good cause warranting granting of the Trustee's Rule 2004 Motion on behalf of the Corporate Trust.

The Court will defer on ruling on the breadth of the specific requests until the parties meet and confer to see whether the parties can resolve their differences. The Trustee is encouraged to avoid duplicative requests, both with respect to documents already in the Trustee's possession and in terms of targeting document requests to the most relevant Third Party(ies).[75] Any disputes that cannot be consensually resolved will be addressed pursuant to applicable rules.

---

[71] *See In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994), *as amended* No. 1-91-10100, 1994 WL 731628 (Bankr. S.D. Ohio Aug. 2, 1994); *see also In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (citation omitted); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

[72] *In re Metiom, Inc.*, 318 B.R. at 268 (alteration in original) (citation omitted).

[73] Kirschner Declaration at ¶ 8.

[74] *See Id.*

[75] *See, e.g.*, JP Morgan Objection at ¶¶ 25–29; KPMG Objection at ¶¶ 19–20; BMO Objection at ¶¶ 28–37, 39–51; *but see* Trustee's Omnibus Reply at ¶¶ 34–37; 42–44; 48–54.

**The Rule 2004 Motion on behalf of the Lender Trust**

The Trustee's request to use Rule 2004 to investigate claims held by the Lender Trust is not within the scope or purpose of Rule 2004. Although the Lender Trust was established pursuant to the Plan, it is not comprised of debtor claims. Rather, the Consenting Lenders voluntarily contributed their claims to the Lender Trust (presumably to more effectively prosecute the claims), and those Consenting Lenders, not all claimants in Class 2, will be the beneficiaries of any recovery from that trust.[76]

An investigation into the existence of the Consenting Lenders' claims against non-debtor Third Parties does not fall within the scope or purpose of Rule 2004 as it is not an investigation into the "property or to the liabilities and financial condition of the debtor,"[77] and will not further the recovery and distribution of the Debtors' assets or otherwise assist with the administration of this case. The Court is persuaded by the well-reasoned decision in *J & R Trucking*, in which the court concludes:

> As for movants' desire to identify third parties [in addition to the debtor] who may also be liable to them, that, quite simply is neither this court's concern nor the purpose of Rule 2004. No matter how artfully one tries to disguise the requested examinations, by dressing them up in the robes of bankruptcy administration, their real purpose is to identify another entity movants might be able to collect from, and whether those efforts would have any impact on the bankruptcy estate is of no real concern to them. Movants understandably want to [sic] their money, but that does not justify turning a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors. Movants have other tools and other fora which they can use to investigate their rights against third parties and to collect the amounts they are owed. They should use them and not Rule 2004."[78]

---

[76] *See* Plan, Article V(G)(iii). The Court recognizes that in this case the two sets of beneficiaries are largely the same.

[77] Fed. R. Bankr. P. 2004(b).

[78] *In re J & R Trucking, Inc.*, 431 B.R. at 822-23 (citation omitted); *see also In re Hilsen*, No. 87-11261 (JMP), 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008) ("Rule 2004 may be used to discover information about estate property, but it is not a proper means to inquire with respect to non-estate property."); *In re Good Hope Refineries, Inc.*, 9 B.R. at 423 (Rule 205 "is not intended to

In this case, the Trustee is entitled to Rule 2004 examinations on behalf of the Corporate Trust, as such an examination is a "legitimate post-confirmation inquiry" to ascertain potential causes of action, which success would benefit the Debtors' creditor body.[79] Any request for information regarding potential causes of action belonging to the Lenders' Trust, however, is denied, as Rule 2004 was not intended to provide private litigants [i.e. the Consenting Lenders] with "a strategic advantage in fishing for potential private litigation."[80] The fact that the Lender Trust was created by the Plan does not infuse the Lender Trust with bankruptcy tools that would not otherwise be available to third party creditors pursuing claims against non-debtor entities.

**Does the Trustee's role as trustees for both the Corporate Trust and the Lender Trust compel a different result?**

The Court recognizes that, as of now, the same individual serves as trustee for both Trusts. The Court further recognizes that, as currently stylized, the document requests proposed by the Trustee are propounded on behalf of both the Corporate Trust and the Lender Trust. Thus, even as the Court denies the Trustee's request for Rule 2004 examinations with respect to the Lender Trust, the granting of the Trustee's request for Rule 2004 examinations with respect to the Corporate Trust effectively provides the Trustee with the information sought in both of his capacities. While Objectors did not raise this concern in exactly this context, the Court has considered this issue.

Research did not reveal a reported case directly on point. But, multiple courts have held that the possible use of information obtained through a Rule 2004 examination in

---

give the rehabilitated debtor post confirmation a strategic advantage in fishing for potential private litigation.").
[79] *In re Express One Intern., Inc.*, 217 B.R. at 217.
[80] *In re Good Hope Refineries*, 9 B.R. at 423.

collateral litigation pending in a different forum is not sufficient reason to deny an

examination if it is not sought for the purpose of circumventing the federal rules of civil or

bankruptcy procedure.[81]  For example, the court in *In re Washington Mutual* granted the

requested Rule 2004 examination of a party involved in a pending proceeding, finding that

the examination was warranted as it sought to discover evidence unrelated to the pending

proceeding.[82]  The court further found that where there was no pending proceeding

involving the proposed examinee, but the possibility of such a future proceeding exists, the

Rule 2004 examination was also warranted.[83]  In both situations, the court found that there

was no concern that the movant was seeking to circumvent the Federal Rules of Civil

Procedure, and an "aggressive application of the 'pending proceeding' rule may prevent

legitimate Rule 2004 examinations …, thereby interfering with the trustee's fiduciary duty to

maximize estate assets."[84]  Accordingly, in the first instance, the potential use of

information obtained through the Corporate Trust's Rule 2004 examination *by another party*

(the Lender Trust) *in a proceeding that has yet to be commenced* (and may not ever be

commenced) cannot dictate denial of the Trustee's Rule 2004 Motion.

---

[81] *See In re Table Talk, Inc.*, 51 B.R. at 145 (alteration in original) (citation omitted) ("It is, however, 'clear that pending litigation … against the person sought to be examined and the possible use of 205 [now 2004] testimony in that collateral litigation is not sufficient reason for denying examination.'"); *see also* In *re Mittco, Inc.*, 44 B.R. 35, 37 (Bankr. E.D. Wis. 1984) (citation omitted) (same); *In re Mantolesky*, 14 B.R. 973, 979 (Bankr. D. Mass. 1981) (citations omitted) (same); *In re Buick*, 174 B.R. 299, 305 (Bankr. D. Colo. 1994) (permitting a creditor to take a Rule 2004 examination after the trustee had already filed an adversary proceeding); *In re Washington Mut., Inc.*, 408 B.R. at 51-53.
[82] *See In re Washington Mut., Inc.*, 408 B.R. at 52.
[83] *See Id.* at 53.
[84] *Id.* at 50 (citation omitted).

### III.    Arbitration Clause in the KPMG Engagement Agreement

Finally, KPMG argues that, as the prepetition Engagement Agreement between the Debtors and KPMG contains an arbitration clause, the Trustee's request to obtain information from KPMG should be governed by certain arbitration discovery rules, rather than by Rule 2004.[85]  The Trustee does not dispute the validity of the arbitration clause; rather the Trustee argues that the scope of the arbitration clause does not include the examinations and information sought pursuant to Rule 2004.

The Supreme Court has repeatedly stated that the Federal Arbitration Act requires courts to "rigorously enforce agreements to arbitrate."[86]  Nevertheless, the court must first determine whether the arbitration clause is applicable to the issue at hand.[87]

The arbitration clause in the KPMG Engagement Agreement provides that "[a]ny dispute or claim between the parties shall be submitted first to non-binding mediation and if mediation is not successful within 90 days after the issuance of one of the parties of a request for mediation then to binding arbitration."[88]  However, a Rule 2004 examination is not a "dispute or claim"; it is an investigatory tool used prior to a dispute.[89]  As discussed *supra*, the initiation of an adversary proceeding or a contested matter generally precludes the use of Rule 2004.[90]  Therefore, by its plain language, the arbitration clause in the Engagement Letter does not apply to this Rule 2004 Motion.

---

[85] *See* KPMG Objection at ¶¶ 22–23.

[86] *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citations omitted).

[87] *See In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 570 (Bankr. D. Del. 2009) ("before I can consider whether an arbitration clause is enforceable, I must determine whether the particular clause is applicable to the motions before me.").

[88] KPMG Objection Ex. 1 at p. 5.

[89] *See, e.g.*, *In re J & R Trucking, Inc.*, 431 B.R. at 821 (citation omitted).

[90] *See Id.*

*New Century TRS Holdings, Inc.*, decided by Judge Carey, is illustrative.[91] In *New Century*, KPMG sought to use an arbitration clause in its engagement letter to prevent the transfer of documents from a court-appointed examiner to a liquidating trustee. The court found that the arbitration clause did not govern the issue, as at "the time this relief was sought, no evidence was presented that any claim had been asserted or that any particular proceeding had been commenced against KPMG."[92] The court further noted that "[t]o the contrary, the relief requested in the motions do not prevent KPMG from asserting any right to arbitration (and attendant rights) if a proceeding is commenced."[93] Here too, the Rule 2004 Motion does not seek information related to any particular claim or proceeding; rather, the Rule 2004 Motion seeks information regarding prospective claims that the Trustee *may* bring in the future, whether against KPMG or another party. If and when the Trustee brings any claims, KPMG can then assert any right to arbitration it may have.

Similarly compelling is the decision in *In re Friedman's*.[94] In that case, the debtor's accounting firm moved for a protective order, arguing that the arbitration provision in its engagement letter prevented the debtor from compelling discovery via Rule 2004.[95] The court denied the motion, finding that although arbitration clauses are generally favored, the arbitration clause did not govern the matter. In reaching this conclusion, the court explained that:

> [the debtor] has not identified a specific cause of action that is the source of its request for Rule 2004 examination ... Although the investigations may reveal that there is a claim directly against E & Y [the accounting firm] that can be asserted by the estate, that determination has not yet been made and has not been submitted to

---

[91] *See In re New Century TRS Holdings, Inc.*, 407 B.R. 558 (Bankr. D. Del. 2009).
[92] *Id.* at 571.
[93] *Id.*
[94] *See In re Friedman's, Inc.*, 356 B.R. 779 (Bankr. S.D. Ga. 2005).
[95] *See Id.* at 782.

mediation or arbitration. Accordingly, the arbitration clause and dispute resolution procedures simply have not been triggered because there is no identifiable, discrete dispute between the parties that could be argued to control the scope of discovery.[96]

The court further explained that a finding that the arbitration clause prevented a Rule 2004 investigation "would defeat a fundamental purpose of Rule 2004, which is to grant debtors … a broad power to determine what causes of action they may possess."[97]

The rationale in *In re Daisytek, Inc.*, cited by KPMG, is unpersuasive in this instance.[98] In *Daisytek*, the court vacated a bankruptcy court order allowing a post-confirmation creditors' trust to take a Rule 2004 examination of the debtor's pre-bankruptcy accountants, finding that the bankruptcy court needed to look at the "underlying nature of the proceedings that could flow from the information obtained through the Rule 2004 examination" in order to determine whether the motion needed to be submitted to arbitration.[99] As discussed in section I *supra*, the Court will not speculate as to what causes of action the Trustee may unearth through the Rule 2004 investigations, and therefore the reasoning in *Daisytek* is not compelling.[100]

The Court finds that the arbitration clause in the KPMG Engagement Agreement does not apply to this Rule 2004 Motion.

---

[96] *Id.* at 783–84.

[97] *Id.* at 784.

[98] *See In re Daisytek, Inc.*, 323 B.R. 180 (N.D. Tex. 2005).

[99] *Id.* at 187.

[100] KPMG's argument with respect to arbitration highlights the dangers of speculating as to causes of action that the Trustee might bring in the future. Until a complaint is filed against KPMG, the Court cannot determine whether arbitration is required as to all counts of the complaint, several counts of the complaint, or none of the complaint. *See e.g. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989) (discussing arbitration in the context of debtor-derived claims as opposed to causes of action created under the Bankruptcy Code for the benefit of creditors of the estate).

**Conclusion**

The Court has subject matter jurisdiction to adjudicate this post-confirmation Rule 2004 Motion. The Trustee has demonstrated good cause with respect to the Rule 2004 examinations of the Third Parties requested on behalf of the Corporate Trust, and thus this Rule 2004 Motion is granted with respect to the Corporate Trust. For the reasons discussed above, the Rule 2004 Motion is denied with respect to the Lender Trust. An order will issue.

BY THE COURT:

Dated: December 2, 2016

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE