**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------- x
                                         :  Chapter 11
In re:                                   :
                                         :  Bankruptcy Case No. 15-12284 (LSS)
MILLENNIUM LAB HOLDINGS II, LLC, et al.,[1] :
                                         :  Jointly Administered
          Debtors.                       :
                                         :  **Ref. Docket Nos. 514, 520, and 521**
---------------------------------------- x

**REORGANIZED DEBTORS' OMNIBUS REPLY IN SUPPORT OF
REORGANIZED DEBTORS' MOTION FOR ENTRY OF A FINAL DECREE
AND ORDER CLOSING THE REORGANIZED DEBTORS' CHAPTER 11 CASES
*NUNC PRO TUNC* TO JANUARY 23, 2018 AND TERMINATING CERTAIN CLAIMS
AND NOTICING SERVICES**

The Reorganized Debtors[2] (and, before the effective date of the chapter 11 plan confirmed by the Court, the "Debtors"), hereby file this omnibus reply (this "Reply") in support of the *Reorganized Debtors' Motion for Entry of a Final Decree and Order Closing the Reorganized Debtors' Chapter 11 Cases* Nunc Pro Tunc *to January 23, 2018 and Terminating Certain Claims and Noticing Services* [Docket No. 514] (the "Motion"),[3] and in response to:

(I) *Opt-Out Lenders' Objection to Reorganized Debtors' Motion for Entry of a Final Decree and Order Closing the Chapter 11 Cases* [Docket No. 520] (the "Opt-Out Lenders' Objection") and

(II) *Limited Objection of the United States Trustee to Reorganized Debtors' Motion for Entry of

---

[1] The pre-confirmation and pre-effective date Debtors and the last four digits of their respective taxpayer identification numbers were as follows: Millennium Lab Holdings II, LLC (5299); Millennium Health, LLC (5558); and RxAnte, LLC (0219). The Debtors' address is 16981 Via Tazon, San Diego, California 92127.

[2] Pursuant to Millennium's Amended Prepackaged Joint Plan of Reorganization (the "Plan"), the reorganized debtors include New Millennium Holdco, Inc. ("New Holdco") and the reorganized prepetition debtors (collectively, the "Reorganized Debtors").

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1

*a Final Decree and Order Closing the Reorganized Debtors' Chapter 11 Cases* Nunc Pro Tunc *to January 23, 2018 and Terminating Certain Claims and Noticing Services* [Docket No. 521] (the "<u>UST's Objection</u>," and together with the Opt-Out Lenders' Objection, the "<u>Objections</u>"). In support of this Reply, the Reorganized Debtors state as follows:

## PRELIMINARY STATEMENT

The Chapter 11 Cases were fully administered within the meaning of section 350 of the Bankruptcy Code when the Motion was filed on January 23, 2018, and the equities of the Chapter 11 Cases, as well as the extraordinary circumstances particular to the Reorganized Debtors and the Chapter 11 Cases, justify granting the Motion *nunc pro tunc* to the date it was filed. Both objections to the Motion should be overruled.

First, the U.S. Trustee's only opposition to the Motion is that the Chapter 11 Cases must be closed effective as of the date of the entry of the order granting the Motion—the only impact of that delay is to tax the estates an additional $150,000 in U.S. Trustee fees. Notably, the U.S. Trustee does not oppose the closing of the Chapter 11 Cases. The instant dispute with the U.S. Trustee is precipitated by the amendment to 28 U.S.C. § 1930(a)(6), which provided for the possibility of a drastic increase in the maximum U.S. Trustee quarterly fees more than eight-fold (from $30,000 to $250,000). Upon learning the economic significance of leaving these fully administered Chapter 11 Cases open, the Reorganized Debtors acted expeditiously to ameliorate such harm by filing the Motion and requesting *nunc pro tunc* relief. Under these circumstances, the equities of the case weigh heavily in the favor of the Reorganized Debtors and warrant *nunc pro tunc* relief. Critical to the Court's consideration of the equities and circumstance here is that the increase in the U.S. Trustee fees was not an automatic increase but, instead, was triggered by the state of the U.S. Trustee Program's internal finances (*i.e.*, the balance of the UST Fund, as

defined below) as of September 30, 2017. The Office of the U.S. Trustee has represented to the Reorganized Debtors that it only sent notice that the increase had been triggered on December 20, 2017, almost three months after the applicable measurement time and about 60 days after the statute was amended. The only public notice regarding the balance of the UST Fund and corresponding increase in fees that would become effective as of January 1, 2018 to the bankruptcy bar or the public at large identified by the U.S. Trustee was a posting on its website that appears to only have been made on December 12, 2017. While the enactment of this legislation was public and generally available for review by debtors and bankruptcy practitioners alike, the trigger for the increase in the statutory fees—that the balance of the UST Fund was less than $200,000,000 as of September 30, 2017—was not a widely-known fact and was only disclosed (via its website) 20 days before it was to take effect and was purportedly communicated to debtors only 11 days before it was to take effect and more than 80 days after the trigger event occurred.

Second, the Opt-Out Lenders argue that the pendency of the Current Voya Appeal alone prevents the Court from closing the Chapter 11 Cases. The Opt-Out Lenders' argument is simply that *if they prevail* in the Current Voya Appeal, then the Court *may be* required to take further actions in the Chapter 11 Cases. They point to nothing certain that must be done in the Chapter 11 Cases today or ever. Keeping the Chapter 11 Cases open based only on the contingency that the outcome of the Current Voya Appeal may necessitate action from this Court would further compound the very issue for which the Reorganized Debtors are seeking *nunc pro tunc* relief—the imposition of U.S. Trustee fees at the rate of over $1 million per annum in a Chapter 11 Case in which this Court simply has nothing to administer. The Opt-Out Lenders, of course, concede that any harm to them could be mitigated if the Opt-Out Lenders do not bear the

3

burden of reopening the Chapter 11 Cases, which the Reorganized Debtors are willing to undertake if necessitated by the outcome of the Current Voya Appeal.

The Reorganized Debtors emerged from chapter 11 protection over two years ago, have transferred all property under the Plan, assumed management of the debtor's business, and have substantially consummated the Plan within the meaning of section 1101(2) of the Bankruptcy Code. There is no reason for the Chapter 11 Cases to remain open, as there is nothing left to do in the Chapter 11 Cases other than pay the U.S. Trustee fees, which accumulate at a rate of $1 million per annum.

To be clear, the Reorganized Debtors are not seeking to avoid paying U.S. Trustee fees for this quarter and stand ready to pay the more than $100,000 in fees that accrued through the filing date of the Motion. However, the Reorganized Debtors should not be subjected to the additional $145,000 or more in U.S. Trustee fees that have accrued since they requested the closure of their fully administered Chapter 11 Cases on January 23, 2018.

For all of the reasons set forth herein and in the Motion, the Court should overrule the Objections and enter a final decree, closing the Chapter 11 Cases *nunc pro tunc* to January 23, 2018. To do otherwise would be inequitable to the Debtors and their stakeholders.

## OMNIBUS REPLY

**I.    The UST's Objection Should be Overruled and the Chapter 11 Cases Should be Closed *Nunc Pro Tunc* to January 23, 2018**

    **A. The Balance of the Equities Weighs in Favor of the Reorganized Debtors' Request to Close the Chapter 11 Cases Retroactively**

1.    It is well-established in Delaware that "[a] bankruptcy court may 'when principles of equity so dictate … approve [a motion] retroactive to the motion filing date' …. The power to grant relief retroactively is derived from the bankruptcy's equitable powers to insure a fair outcome." *In re TW, Inc.*, 2004 WL 115521 at *2 (D. Del. 2004). This power is routinely

4

employed by bankruptcy courts in this District for various actions, such as rejection of leases, for the very same purposes attendant here – to avoid the burdensome accrual of administrative expense where no reorganization purpose exists and the equities favor granting the request *nunc pro tunc*. *See, e.g.*, *In re DBSI, Inc.*, 409 B.R. 720 (Bankr. D. Del. 2009); *see also In re Rupari Holding Corp.*, Case No. 17-10793 (KJC) (Bankr. D. Del. November 28, 2017).

2. "An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only after a balancing of the equities in a particular case." *In re TW, Inc.* at *2. The balance of equities in the Chapter 11 Cases weighs heavily in favor of the Reorganized Debtors. At present and since October 3, 2017, there remains nothing for the Court or for the U.S. Trustee to monitor and, unsurprisingly, no relief has been sought in the Chapter 11 Cases since that time other than the Motion.[4] The Reorganized Debtors acted diligently in filing the Motion upon discovering the circumstances surrounding the increased fee and its impact on the Debtors, and the Reorganized Debtors are not seeking to avoid the fees incurred from the implementation of the increased fees to the time of filing the Motion. Indeed, the Reorganized Debtors stand ready to pay the U.S. Trustee fees in the amount of approximately $103,000 for disbursements through January 23, 2018.[5] The inequity here is that if the Chapter 11 Cases are closed effective as of the February 14, 2018 hearing date, the U.S. Trustee would be entitled to receive additional fees of approximately $147,000 simply for having waited out the 22-day period until the Motion is scheduled to be heard.

---

[4] A complaint was filed on November 7, 2017. As indicated in the Motion, that adversary will not be impacted by the closing of the Chapter 11 Cases and the Reorganized Debtors have agreed with the plaintiff in that adversary to include the following language in the order granting the Motion: "This Final Decree and Order shall not effect this Court's jurisdiction over the Adversary Proceeding (No. 17-51840)."

[5] In fact, counsel for the Reorganized Debtors advised the Office of the United States Trustee on February 7, 2018 that it was prepared to submit a check for $103,534 to account for all fees arising pursuant to section 1930(a)(6)(B) through January 23, 2018.

5

3. The Reorganized Debtors could have sought the closure of the Chapter 11 Cases on an emergency basis, but instead opted to provide notice to all parties in interest. They should not be punished for allowing the Motion to be heard on full notice. Closing the Chapter 11 Cases *nunc pro tunc* to the date of the Motion is fair and justified based upon the aforementioned facts and to do otherwise would inequitably impose upon the Reorganized Debtors unnecessary administrative expenses and massive U.S. Trustee fees up to the new statutory cap. Tellingly, the U.S. Trustee has pointed to no reason why *nunc pro tunc* relief should be denied other than the fact that it would stand to benefit from collecting more fees.

4. The UST's Objection relies upon an unreported Indiana opinion to support its premise that *nunc pro tunc* relief is not statutorily available except "'to record that which was actually done, but omitted to be recorded.'" UST's Objection ¶ 7 (*citing Hopper v. Uniroyal Plastics Acquisition Corp. (In re Uniroyal Plastics Acquisition Corp.)*, Case No. 3:98cv500RM (N.D.Ind. Mar. 31, 1999)).[6]

5. The Court in *Uniroyal Plastics* found that it was constrained by the law in the Seventh Circuit that prohibited the grant of retroactive relief[7]—even where the Court found that the circumstances presented in that case would have militated that relief could the court have granted it. As the court in *Uniroyal Plastics* noted, the balance of the equities does "weigh heavily in favor" of retroactively closing a chapter 11 case where the only party to benefit from a delay in closing the case is the U.S. Trustee program which receives increased fees. *Uniroyal*

---

[6] The U.S. Trustee also cites to *In re Tripar Meadows ,Inc.* as an example of a court in the Third Circuit denying a request for *nunc pro tunc* relief. *See* UST's Objection 4, n.1. However, the U.S. Trustee did not attach the decision from that case.

[7] The U.S. Trustee goes on to concede that courts in the Third Circuit may grant *nunc pro tunc* relief. *See* UST's Objection ¶ 8.

*Plastics*, slip op.4. In any event, this Court is not so constrained; as discussed above, this Court can grant such retroactive relief where the equities of the case so dictate.

### B. The Extraordinary Circumstances Herein Justify the Retroactive Application of the Closure of the Chapter 11 Cases

6. The UST's Objection argues that the closure should not be retroactive to the date the Motion was filed because (i) there are no extraordinary circumstances here to justify *nunc pro tunc* relief, and (ii) *nunc pro tunc* relief is not available and runs counter to 28 U.S.C. § 1930(a)(6).

7. As the UST's Objection concedes, the Third Circuit may at least grant retroactive relief under the "extraordinary circumstances test." UST's Objection ¶ 10. When applying this test, a court will approve an application for retroactive relief if (i) it finds that the relief would have been granted initially and (ii) there exist extraordinary circumstances justifying the retroactive application of relief. *See, e.g.*, *In re ACandS, Inc.*, 297 B.R. 395, 403 (Bankr. D. Del. 2003); *In re F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir. 1988); *Matter of Arkansas Co., Inc.*, 798 F.2d 645, 650 (3d Cir. 1986). Here, the Chapter 11 Cases were fully administered at the time of filing the Motion and the Reorganized Debtors were entitled to the requested relief. Furthermore, under the exceptional circumstances herein, *nunc pro tunc* application of the requested relief should be granted.

8. *Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671 (2d Cir. 2003), a case cited in the UST's Objection, stands in stark contrast to the facts here and supports the relief requested by the Reorganized Debtors. In *Aquatic Dev. Group*, the Second Circuit overturned a bankruptcy court's order closing Aquatic Development Group's ("ADG") chapter 11 case *nunc pro tunc* to the date ADG's plan was substantially consummated, four years prior to the motion even being filed. Eight days after the confirmation hearing on

7

ADG's plan, 28 U.S.C. § 1930(a) was amended to provide for the continued payment of U.S. Trustee fees post-confirmation. *Id.* at 674. Only after ignoring 3 years of bills sent by the U.S. Trustee did ADG seek to close its chapter 11 case retroactive to the confirmation date. *Id.* at 675. The Second Circuit ruled that retroactive relief was not warranted in the case because ADG was responsible for the delay in seeking closure of its case. *See Id.* at 678-79.

9. Unlike ADG, the Reorganized Debtors do not seek to close the Chapter 11 Cases retroactive to a date 3 years ago. Instead, the Reorganized Debtors seek approval as of the date of the filing of the Motion, *a mere 3 weeks* before the date of the hearing on the Motion. However, while the time period is relatively short, the impact upon the Reorganized Debtors, approximately $147,000, is dramatic. Under these extraordinary circumstances, the Reorganized Debtors should not be punished for delays entirely outside of their control. As the Second Circuit held in *Aquatic Dev. Group*, "the relevant inquiry in deciding whether to grant *nunc pro tunc* relief is … whether [the debtor] exercised diligence in closing a case." *Id.* at 679. Contrary to the facts in *Aquatic Dev. Group*, the Reorganized Debtors did not sit idly by and ignore years of bills from the U.S. Trustee, but instead acted before even a single bill applying the increased statutory fees was issued. The Reorganized Debtors acted expeditiously under the circumstances, and the Chapter 11 Cases should be closed *nunc pro tunc* to the date the Motion was filed.

10. Moreover, unlike the changes to the U.S. Trustee fees in *Aquatic Dev. Group*, the instant increase in statutory fees was not automatic, but instead was triggered by the U.S. Trustee's internal finances, something the U.S. Trustee is uniquely positioned to know. Specifically, on October 26, 2017, 28 U.S.C. § 1930(a)(6) was amended to add subsection (B), which provides that "[d]uring each of fiscal years 2018 through 2022, if the balance of the

8

United States Trustee System Fund as of September 30 of the most recent fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000." As a result, if the balance of the United States Trustee System Fund (the "UST Fund") was less than $200,000,000 as of September 30, 2017, then all debtors in every chapter 11 cases, whether filed before or after January 1, 2018, would be responsible for paying up to $250,000 per quarter if their disbursements for such quarter exceed $25,000,000.

11.     Neither the public at large, nor bankruptcy professionals outside the U.S. Trustee program, have any way of assessing the balance of the UST Fund. Had such notice been timely provided to current debtors, the Bankruptcy bar, or the public at large, when the legislation was passed and the U.S. Trustee knew definitively that the balance in the UST Fund was less than $200,000,000, the Reorganized Debtors could have considered the implications of such increased fees and moved for the closure of the Chapter 11 Cases in December (and certainly by January 23, 2018), before the increased statutory fees would be imposed. However, having waited almost 2 months after the amendment was enacted to send a notice of the dramatic increase in fees payable to the U.S. Trustee (more than eight-fold for the Reorganized Debtors),[8] the U.S. Trustee cannot now argue that it is somehow prejudiced by the *nunc pro tunc* relief sought in the Motion. The Reorganized Debtors acted expediently in seeking the closure of the Chapter 11 Cases as soon as they became aware that the increased statutory fees would be applied.

12.     Finally, the UST's Objection's argument that *nunc pro tunc* relief is not available as it conflicts with the statutory fees provision is a red herring. 28 U.S.C. § 1930(a)(6) provides

---

[8]  This assumes that such notice was, in fact, sent on December 20, 2017, in the midst of the holiday season and at a time when no debtor could properly move to close their cases before the date for relief proposed by the Reorganized Debtors.

for the payment of U.S. Trustee fees "until the case is converted or dismissed."[9] Contrary to the suggestion in the UST's Objection, the Reorganized Debtors do not seek to cut off fees prior to the effective date of the case closure. The Reorganized Debtors will pay (and offered to pay) the statutory fees through the effective date of closure in any order of the Court and, pursuant to the Proposed Final Decree, seek closure of the Chapter 11 Cases effective as of January 23, 2018. There is no conflict between the statutory provisions and the Reorganized Debtors' request. The UST's Objection appears simply to be that Chapter 11 Cases must stay open until a hearing on the Motion, with the effect of U.S. Trustee fees more than doubling in that period.

## II. The Opt-Out Lenders' Objection Should be Overruled Because the Chapter 11 Cases Have Been Fully Administered and the Should be Closed

13. The term "fully administered" is not defined in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules. The Advisory Committee Note to Bankruptcy Rule 3022 (the "<u>Committee Note</u>"), however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

  a. whether the order confirming the plan has become final;

  b. whether deposits required by the plan have been distributed;

  c. whether the property proposed by the plan to be transferred has been transferred;

  d. whether the debtor or the successor of the debtor under the plan has assumed the business or management of the property dealt with by the plan;

  e. whether payments under the plan have commenced; and

  f. whether all motions, contested matters, and adversary proceedings have been finally resolved.

---

[9] This language has been interpreted by the Court of Appeals for the Third Circuit to cover the closing of a case as well. *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 554 n.1 (3d Cir. 1999).

13. Sect

10

14.     The Opt-Out Lenders' Objection does not deny that the majority of the Committee Note factors have been satisfied.  Instead it relies solely upon the pendency of the Current Voya Appeal for the assertion that the Chapter 11 Cases have not been fully administered because there exists a remote chance that the Court's attention may be required once again.  The Committee Note is explicit and instructive on this argument and states that "[t]he court should not keep [a] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022, Advisory Comm. Note (1991).

15.     The Opt-Out Lenders' Objection relies extensively, and almost exclusively, on *In re SLI, Inc.*, Case No. 02-12608 (WS), 2005 WL 1668396.  Indeed, the Opt-Out Lenders' Objection states that "[u]nder similar circumstances, courts have routinely held that a pending appeal from a confirmation order warrants keeping a chapter 11 case open," citing only to *SLI* in support of this claim.  Opt-Out Lenders' Objection ¶ 5.  In *SLI*, the court found that "the [Committee Note] factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before a case is closed." *Id.* at *2 (*citing In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr.N.D.Ill. 1991).

16.     In determining whether to close the chapter 11 case in *SLI*, the court weighed the interests of the parties and determined that "[however] one may evaluate the chances or likelihood that the Confirmation Order might yet be reversed or remanded as a result of that pending appeal," the chapter 11 case should not be closed, in part because "in the context of [the] Debtors' multimillion dollar business, the amount [of U.S. Trustee fees that would be incurred] (an estimated $5,000 per quarter) is relatively insignificant." *Id.* at *3.  Notably, the court found that "one can easily predict that the costs of reopening the case and dealing with any objections

11

thereto might easily exceed the amounts of UST fees that would be saved by closing the case now." *Id.*

17. The court in *SLI* did not hold that a chapter 11 case could never be closed while the appeal of a Confirmation Order remained pending, but instead denied such relief under the particular circumstances in that case. The fact that weighed most heavily against the debtor in *SLI*, namely the meager (if any) savings that could be obtained by closing the chapter 11 case, is simply not present here. Instead, the Opt-Out Lenders seek to cause undue hardship upon the Reorganized Debtors by forcing the Reorganized Debtors to incur upwards of $250,000 in U.S. Trustee fees each quarter, in addition to other unnecessary administrative expenses, while they prosecute an incredibly lengthy appellate process that the Opt-Out Lenders themselves concede may "very likely reach the Third Circuit." Opt-Out Lenders' Objection ¶ 5.

18. However, in order to moot the Opt-Out Lenders' concerns regarding the cost of maintaining these cases and the cost of reopening them, the Reorganized Debtors have agreed to seek an order reopening the Chapter 11 Cases should the outcome of the Current Voya Appeal make that necessary. This concession obviates any potential concern that the closure of the Chapter 11 Cases could impact the Current Voya Appeal or that it could place a burden upon the Opt-Out Lenders.

19. The Effective Date of the Plan occurred over two years ago. Since then, as described in more detail in the Motion, the Reorganized Debtors have transferred all property under the Plan, assumed management of the debtor's business, have fully paid all creditors under the Plan, and have substantially consummated the Plan within the meaning of section 1101(2) of the Bankruptcy Code. The only matters that remain pending are (i) the Current Voya Appeal, which is being administered in the United States District Court for the District of Delaware, and

(ii) the Adversary Proceeding, which is being administered separately from the Chapter 11 Cases under its own case number.

20.     There is simply no need to leave the Chapter 11 Cases open, incurring administrative expenses while awaiting a resolution of the Current Voya Appeal.  Closing the Chapter 11 Cases does not risk any harm to parties in interest, including the Opt-Out Lenders, when such closure is without prejudice to reopening the Chapter 11 Cases pursuant to section 350(b) and when the Reorganized Debtors have agreed they will move to reopen the Chapter 11 Cases, should it be necessary.  The Chapter 11 Cases should be closed accordingly, effective as of January 23, 2018.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

6. For the foregoing reasons, and the reasons provided in the Motion, the Reorganized Debtors respectfully request that the Objections be overruled and that the Court enter a final decree closing the Chapter 11 Cases *nunc pro tunc* to January 23, 2018.

Dated: Wilmington, Delaware */s/ Michael R. Nestor*
 February 9, 2018 **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
 Michael R. Nestor (No. 3526)
 John T. Dorsey (No. 2988)
 Ryan M. Bartley (No. 4985)
 Rodney Square
 1000 North King Street
 Wilmington, Delaware 19801
 Tel: (302) 571-6600
 Fax: (302) 571-1253
 Email: mnestor@ycst.com
 jdorsey@ycst.com
 rbartley@ycst.com

 -and-

 LATHAM & WATKINS, LLP
 Peter M. Gilhuly (admitted *pro hac vice*)
 Wayne S. Flick (admitted *pro hac vice*)
 Amy C. Quartarolo (admitted *pro hac vice*)
 355 South Grand Avenue, Suite 100
 Los Angeles, California 90071-1560
 Tel: (213) 485-1234
 Fax: (213) 891-8763
 Email: Peter.Gilhuly@lw.com
 Wayne.S.Flick@lw.com
 Amy.Quartarolo@lw.com

 *Counsel for the Reorganized Debtors*